UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YEMISI AKINYEMI,

Plaintiff,

v.

MICHAEL CHERTOFF, Secretary,
Department of Homeland Security,

Defendant.

07 Civ. 4048 (AJP)

ECF CASE

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
Attorney for Defendant
86 Chambers Street, 5th Floor
New York, New York 10007
Tel.: (212) 637-2716

JOHN D. CLOPPER
Assistant United States Attorney
--Of Counsel--

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................................1

STATEMENT OF FACTS .....................................................................................................2

    A.  Plaintiff's Allegations ..............................................................................................2

    B.  Plaintiff's Employment With CBP ...........................................................................3

        1.  Akinyemi's Probationary Term of Employment .......................................3

        2.  Akinyemi's Job Duties.................................................................................4

        3.  CBP's Supervisory Chain of Command .....................................................5

    C.  Plaintiff's Misconduct ..............................................................................................6

    D.  Plaintiff's Alleged Comparators ..............................................................................7

        1.  Officer Patrick Murphy...............................................................................8

        2.  Officer Sharmila Zaman .............................................................................9

        3.  Officer Elba Riley .....................................................................................10

        4.  Officer Jolanta Gluba ...............................................................................11

ARGUMENT .......................................................................................................................12

    I.   PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF
        DISCRIMINATORY DISCHARGE UNDER TITLE VII...........................................12

    A.  Summary Judgment Standards.................................................................................12

    B.  Plaintiff Fails to State a *Prima Facie* Title VII Claim................................................13

        1.  Akinyemi Cannot Establish That Her Discharge Occurred Under
            Cirsumstances Giving Rise to an Inference of Discrimination Because
            None of the Alleged Comparators Was Similarly Situated ...................................14

            a.  Officer Patrick Murphy...........................................................................16

            b.  Officer Sharmila Zaman .........................................................................18

            c.  Officer Elba Riley ...................................................................................19

            d.  Officer Jolanta Gluba..............................................................................20

II.   CBP HAS ARTICULATED A LEGITIMATE NON-
      DISCRIMINATORY REASON FOR TERMINATING AKINYEMI
      THAT SHE CANNOT REBUT...................................................................................21

      A.  CBP Has Articulated a Legitimate Non-Discriminatory Reason for
          Terminating Akinyemi's Probationary Employment....................................................21

      B.  Akinyemi Cannot Identify Any Admissible Evidence To Rebut the Legitimate
          Non-Discriminatory Reason CBP Has Articulated ....................................................23

CONCLUSION.......................................................................................................................25

## PRELIMINARY STATEMENT

Defendant Michael E. Chertoff, Secretary of Homeland Security (the "Defendant" or the "Government"), respectfully submits this memorandum of law in support of his motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

In 2003, the plaintiff, Yemisi Akinyemi ("plaintiff" or "Akinyemi"), was hired by Customs and Border Protection ("CBP"), a part of the Department of Homeland Security, as a customs inspector on a probationary basis.  In 2005, prior to the expiration of her two-year probationary period, CBP terminated Akinyemi's probationary employment after Akinyemi used the trappings of her office, including her credentials, to gain access to a restricted area of Newark Liberty International Airport ("Newark Airport") while she was off duty.  Specifically, while off duty, and for solely personal reasons, Akinyemi bypassed Transportation Security Administration ("TSA") screening so that she could accompany her husband to a restricted departure gate area of an outbound international flight.

Akinyemi, who is Nigerian, alleges that her termination was based on her race, color and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII").  In particular, Akinyemi alleges that her termination was on account of discrimination because other non-Nigerian employees committed similar or worse misconduct and were not terminated.  The Government is entitled to summary judgment for a number of reasons.

As a threshold matter, Akinyemi cannot establish a *prima facie* case under Title VII because she cannot demonstrate that her discharge occurred under circumstances giving rise to an inference of discrimination.  Akinyemi's claim rests entirely upon her attempt to compare herself to four co-employees whom she claims committed similar or worse misconduct but were

not terminated.  The uncontested evidence demonstrates, however, that Akinyemi is not similarly situated to any of these co-employees.  *See infra* at 14-21.

Alternatively, the Government is entitled to summary judgment because CBP has articulated a legitimate non-discriminatory reason for discharging Akinyemi, which Akinyemi cannot rebut with admissible evidence.  CBP terminated Akinyemi's probationary employment because she misused her position for personal reasons.  Akinyemi cannot identify admissible evidence upon which a reasonable fact finder could conclude that this proffered reason is false and that the "true" reason for Akinyemi's discharge is race, color, or national origin.  *See infra* at 21-25.

## STATEMENT OF FACTS

### A.    Plaintiff's Allegations

Akinyemi alleges that CBP terminated her employment based upon her race, color, or national origin.  *See* Complaint ("Compl."), filed May 23, 2007, at ¶ 2.  On December 20, 2005, Akinyemi's employment was terminated by CBP Director of Field Operations Susan Mitchell.  *Id*. ¶¶ 24-25.  Akinyemi alleges that her termination was the result of discrimination "on the basis of her race (African American), color (Black), and national origin (Nigerian)."  *Id*. ¶ 35.  Akinyemi admits, however, that she was fired by Director Mitchell shortly after using her credentials while off duty to gain access to the restricted gate area of Newark Airport.  *Id*. ¶ 17.

**B.     Plaintiff's Employment with CBP**

**1.     Akinyemi's Probationary Term of Employment**

Akinyemi entered federal service as a probationary Customs Inspector on December 29, 2003 as part of the Federal Career Intern Program.  Compl. ¶ 9.[1]  The Federal Career Intern Program is a two-year probationary program.  The "Employment Agreement" signed by Akinyemi provides:

> Career interns serve a trial period of 2 years.  During this time, the intern's performance, development, conduct, and general suitability for continued employment will be assessed.  Employment may be terminated during this time due to work performance or conduct reasons.

Federal Career Intern Program, Employment Agreement, at 1 (attached as Exhibit 1 to Declaration of John D. Clopper, dated January 25, 2008 ("Clopper Decl.")).

For probationary employees, misconduct demonstrating lack of judgment or misuse of position, frequently results in termination.  *See* Declaration of Susan T. Mitchell, Director of Field Operations, Customs and Border Protection, dated January 24, 2008 ("Mitchell Decl."), at ¶ 9.  Misconduct that might not ordinarily result in termination for permanent employees frequently results in termination for probationary employees.  *Id.* ¶ 11.  Probationary employees are under increased scrutiny by CBP management officials, who use the probationary period to assess whether employees perform their jobs successfully, and whether they can exercise sound judgment.  *Id.* ¶ 9.  If an employee demonstrates that she lacks sound judgment during the probationary trial period, CBP management believes that it is better to terminate the employee during the trial period, rather than take the risk that additional and/or more serious performance or judgment issues may arise in the future.  *Id.* ¶ 9.

---

[1] In 2004, Akinyemi's position title was changed from "Customs Inspector" to "Customs and Border Protection Officer."

3

In addition, civil service rules regarding employee discipline differ between probationary and permanent employees.  For example, during the probationary period, a CBP employee possesses limited appeal rights if she is terminated.  Mitchell Decl. ¶ 10.  A probationary employee who has been terminated by CBP may only appeal that termination to the Merit Systems Protection Board ("MSPB") under the limited circumstances enumerated in 5 C.F.R. § 315.806, whereas a permanent employee may appeal a termination to the MSPB for much broader reasons.  Mitchell Decl. ¶ 10.  Also, the National Treasury Employees Union ("NTEU"), the bargaining unit which represents CBP officers, may challenge the termination of a permanent employee at an arbitration proceeding on that employee's behalf.  *Id.*  The NTEU cannot, however, challenge the termination of a probationary employee at an arbitration proceeding.  *Id.*

## 2.     Akinyemi's Job Duties

Akinyemi was detailed to CBP's facility at 1100 Raymond Boulevard, Newark, New Jersey (the "Raymond Boulevard facility") during her probationary period.  *See* Transcript of Deposition of Yemisi Akinyemi ("Akinyemi Dep."), at page 37, line 24 ("37:24") (relevant excerpts attached as Exhibit 2 to Clopper Decl.).  The Raymond Boulevard facility is located off the grounds of Newark Liberty International Airport.  Mitchell Decl. ¶ 15.  The facility is used for a variety of purposes by CBP.  *Id.*

As a probationary CBP officer at the Raymond Boulevard facility, Akinyemi was assigned import clearance responsibilities.  Akinyemi Dep. 37:24-38:19.  On the weekends, Akinyemi would sometimes work at Newark Airport, conducting either immigration inspection of incoming passengers or customs baggage inspection.  Akinyemi Dep. 40:23-42:14.  Akinyemi would also work at the Newark seaport cruise terminal on occasion.  Akinyemi Dep. 132:10-12.

4

For use in her official duties, she was provided a uniform, a badge, a firearm, and an "Access to Operations Area" card ("AOA card"). Akinyemi Dep. 38:20-39:24. Her AOA card afforded Akinyemi access to restricted areas not open to the general public. Mitchell Decl. ¶ 13. For example, an AOA card allows CBP officers to access secure areas of Newark Airport, such as departure gate areas. *See id.* Only persons with AOA cards with a legitimate official reason, or ticketed passengers that have gone through TSA security screening, are allowed to access the departure gate areas of the airport. *See id.*

### 3.      CBP's Supervisory Chain of Command

The CBP chain of command in the New York area, which includes the Newark facilities, contains several levels. Akinyemi's immediate supervisors were Supervisory Customs and Border Protection Officers ("SCBPO"). Mitchell Decl. ¶ 4. Immediately above the SCBPO level are the Deputy Chiefs. *Id.* Above the Deputy Chiefs are the Chiefs. There are numerous Chiefs in the Newark/New York and JFK Airport areas. Each Chief, like the levels below them, are assigned to work in different operational areas, such as baggage or passenger operations. *Id.* Above the Chiefs are the Assistant Area Directors. *Id.* There are six Assistant Area Directors, three for Newark/New York and three for JFK Airport. *Id.* At the next level above the Assistant Area Directors are the Area Directors. *Id.* There are two Area Directors, one for Newark/New York and one for JFK Airport. *Id.* Finally, above the Area Directors is the Director of Field Operations. *Id.* As noted above, the Director of Field Operations – and the person who made the decision to terminate Akinyemi – is Susan Mitchell. *Id.* ¶ 2. The Director of Field Operations has operational and administrative responsibility for approximately three thousand CBP employees in New York and New Jersey. *Id.* ¶ 3. The Director of Field Operations makes some,

5

but not all, disciplinary decisions.  For example, Director Mitchell delegated to the Area

Directors the authority to decide proposed suspensions of 14 days or less.  Mitchell Decl. ¶ 7.

**C.      Plaintiff's Misconduct**

On the morning of December 5, 2005, Akinyemi arrived at the Raymond Boulevard

facility and requested permission to leave work early to accompany her husband to Newark

Airport.  He was scheduled to fly to Nigeria that day.  Akinyemi Dep. 43:19-45:7.  Her direct

supervisor, Mitchell Landau, granted her request, rendering her off-duty.  Akinyemi Dep. 44:8-

45:7  Akinyemi then met her husband in the main public terminal at Newark Airport.  Akinyemi

Dep. 66:13-15.  Rather than separating from her husband in the main public terminal, Akinyemi

decided to accompany him to the restricted departure gate area.  Akinyemi Dep. 52:6-54:11.

Like other ticketed passengers, Akinyemi's husband went through TSA security screening to

access the departure gate area.  *See id.*

Akinyemi, however, bypassed TSA security.  *See id.*  She walked through a side lane

reserved for individuals on official business and who possess an AOA card.  *See id.*  She was in

uniform, and her weapon and AOA card were visible at the time.  Akinyemi Dep. 56:25-58:10.

After bypassing TSA security and gaining access to the restricted departure gate area, Akinyemi

accompanied her husband to the departure gate.  Akinyemi Dep. 72:14-73:12.  Two CBP officers

observed Akinyemi at the gate area and reported their observations to their direct supervisor.  *See*

Letter of Termination ("Termination Letter"), dated December 20, 2005, at 1 (attached as Exhibit

3 to Clopper Decl.).  The incident was investigated, and on December 19, 2005, Akinyemi

admitted that she used her AOA card to gain access to the restricted departure area while off

duty.  *See* Termination Letter, at 1, Clopper Decl., Exh. 3.

6

Director Mitchell terminated Akinyemi's employment by letter dated December 20, 2005. As specified in the letter, Akinyemi was terminated because of the December 5, 2005 incident in which, while she was off duty and not conducting official business, she used her position and authority to gain entrance to a restricted area at Newark Airport. *See* Termination Letter, at 1, Clopper Decl., Exh. 3. In the letter, Director Mitchell explained:

> Your status as a CBP Officer as well as your credentials and/or Airport Operations Area (AOA) Card permit you to enter past the Transportation Security Administration (TSA) screeners only when you are on official duty. Since you were on excused time, you were not on official duty. Being in a restricted area and using your position as a CBP Officer to obtain access with authorization is a serious violation and cannot be tolerated. . . .
>
> In making my decision, I have considered the nature and seriousness of the charge and its relationship to your employment with CBP. CBP must be able to place complete trust in its employees. This includes adhering to policies regarding restricted area entrances as well as using your official credentials, badge and AOA Card for personal gain. These policies are detailed in the Standards of Conduct, Section 6.3.5. Your misuse of position and authority jeopardized and tarnished how the public views CBP and its employees. As a CBP Officer, you are responsible for enforcing a wide variety of laws. As such, you hold a position of trust and responsibility and you must conform to a higher standard of conduct than employees who are not responsible for law enforcement. Furthermore, in order to accomplish its mission, CBP must be able to trust and depend on its employees to conduct themselves in an appropriate manner at all times. Your actions cannot be tolerated by CBP.

Termination Letter, Clopper Decl., Exh. 3. CBP Standard of Conduct 6.3.5 states:

> Employees will not use any CBP identification in a manner which may reasonably give the perception that they are using the identification for personal benefit, attempting to exert undue influence, or to obtain, directly or indirectly, a favor, reward, or preferential treatment for themselves or others, or to improperly enhance their own image.

CBP Standards of Conduct, § 6.3.5 (attached as Exhibit 4 to Clopper Decl.).

**D.    Plaintiff's Alleged Comparators**

Akinyemi alleges that other CBP officers committed similar or worse misconduct and were not terminated. The following four CBP officers are alleged by Akinyemi to have

7

committed similar misconduct: CBP Officers Patrick Murphy, Sharmila Zaman, Elba Riley, and Jolanta Gluba.

### 1. Officer Patrick Murphy

Officer Patrick Murphy began working for CBP's predecessor agency in 1971. *See* Transcript of Deposition of Patrick Murphy ("Murphy Dep.") at 7:2 (relevant excerpts attached as Exhibit 5 to Clopper Decl.). Officer Murphy is not a probationary employee. *See id.* He is white. *See id.* at 6:10. Currently, he is a firearms instructor for CBP in Newark, New Jersey. *See id.* at 7:13-16. He is also the property control officer for CBP's Newark location. *See id.*

Akinyemi stated in her deposition that, at some unknown time during her employment with CBP, Officer Murphy went to the Newark seaport, a location where CBP conducts operations, while off duty to greet his wife's sister who was returning from a cruise. Akinyemi Dep. 132.[2] Akinyemi has not presented any evidence that Director Mitchell, the supervisor that terminated plaintiff's employment, knew about, or made any disciplinary decision regarding, the alleged misconduct by Officer Murphy. The undisputed evidence is that Director Mitchell was not aware of the allegations of misconduct by Officer Murphy until brought to her attention during the course of this litigation. Mitchell Decl. ¶ 16. Upon learning of the charge from EEO Officer Lenard Angevine, she referred the matter to the CBP Area Director of Port Newark/New York at the time, Kathleen Haage-Gaynor, for appropriate investigation. *See* Transcript of

---

[2] There is no corroboration for Akinyemi's allegation that Officer Murphy was off duty and came to the seaport to pick up his wife's sister or that he committed any misconduct. In his deposition, Officer Murphy explained that, on the day that his wife's sister arrived at the seaport cruise terminal, he was on duty and assigned to work at the seaport cruise terminal. Murphy Dep. 15-17.

Deposition of Susan ("Mitchell Dep."), at 55 (relevant excerpts attached as Exhibit 9 to Clopper Decl.); Mitchell Decl. ¶ 16.

### 2. Officer Sharmila Zaman

Officer Sharmila Zaman was hired by CBP on January 5, 2004, as a two-year probationary employee. *See* Transcript of Deposition of Sharmila Zaman ("Zaman Dep."), at 6. Officer Zaman was born in Bangladesh, and she identifies herself as Asian. Zaman Dep. 5. In April 2004, while she was a probationary employee, Officer Zaman inadvertently left her firearm in a non-public restroom at Newark Airport. Zaman Dep. 11-12:13. The restroom was accessible only to persons conducting official business, such as other CBP officers and airline personnel. Zaman Dep. 13:8-14:4. Members of the general public did not have access to the restroom. *See id.* Later that same day, CBP Trainer Bruce Wescott called Officer Zaman and informed her that her firearm had been found in the restroom and was being held for safekeeping. Zaman Dep. 13:19-16:24. Subsequently, a supervisor who learned of the incident did not report the incident up the chain of command to Director Mitchell. Zaman Dep. 12-24; Mitchell Dep. 18, 55; Mitchell Decl. ¶ 18.

Director Mitchell was informed of the incident regarding Officer Zaman's misplaced weapon by EEO Officer Angevine after Akinyemi made the allegation during the course of her EEOC investigation. When Director Mitchell was informed of the incident, she referred the matter to Area Director Haage-Gaynor, for appropriate investigation. Mitchell Decl. ¶ 17. By the time that the charge was substantiated and discipline was imposed, Officer Zaman was a permanent, non-probationary employee. Mitchell Decl. ¶ 18. As a result of the incident, Officer Zaman, two other CBP officers, and a SCBPO officer were disciplined. Officer Zaman received a two day suspension. *Id.* The SCBPO officer was disciplined for failing to promptly report the

incident up the chain of command. *Id.* In disciplining Officer Zaman, Director Mitchell took into account, among other factors, the nature and circumstances of the offense, as well as Officer Zaman's status as a non-probationary employee at the time the discipline was imposed, in reaching her conclusion. *Id.* Director Mitchell also considered the fact that Officer Zaman's conduct was inadvertent, and that she had otherwise successfully completed her probationary period. *Id.*

### 3. Officer Elba Riley

Officer Elba Riley was hired by CBP in January 2004. *See* Transcript of Deposition of Elba Riley ("Riley Dep."), at 8:3. She was hired as probationary employee in January 2004, and her two-year probationary period ended in January 2006. Riley Dep. 9:7-10. She is Hispanic. *Id.* 7:12. Akinyemi alleges that, at some point during Officer Riley's probationary period, Officer Riley accompanied her parents to a restricted gate area at Newark Airport. Akinyemi Dep. 120. Akinyemi did not state in her deposition testimony that she had personal knowledge of the alleged incident. *Id.*[3]

Director Mitchell did not know of the alleged incident involving Officer Riley until it was brought to her attention by EEO Officer Angevine after Akinyemi brought her discrimination claim. Mitchell Dep. 48:15; Mitchell Decl. ¶ 19; Akinyemi Dep. 120. Director Mitchell referred the matter to Area Director Haage-Gaynor for further investigation. Mitchell Decl. ¶ 19. Shortly

---

[3] In her deposition, Officer Riley was asked by plaintiff's counsel, "Have you ever seen any relation off at the gate area of the airport?" Riley Dep. 14. In response, Officer Riley invoked her Fifth Amendment privilege against self-incrimination. *See id.* Plaintiff's counsel asked no follow-up questions after Officer Riley's invocation of her Fifth Amendment right. In particular, plaintiff's counsel did not ask Officer Riley whether she ever used her official credentials in order to bypass TSA security.

after Director Mitchell learned of Akinyemi's allegations against Officer Riley, and referred the matter for investigation, Officer Riley completed her probationary period.  Mitchell Decl. ¶ 20.

### 4.  Officer Jolanta Gluba

Officer Jolanta Gluba, a white woman, was hired by CBP's predecessor agency, the U.S. Customs Service, on March 2002 as an Officer-in-Training, and finished her initial probationary period in March 2004.  *See* Transcript of Deposition of Jolanta Gluba ("Gluba Dep."), at 5-6. Immediately upon completing her initial two-year probationary period, Officer Gluba was promoted to Officer.  Gluba Dep. 6:16-21.

On January 2, 2005, Officer Gluba was interviewing an international passenger in the in-bound screening area at Newark Airport.  Gluba Dep. 7-8.  The passenger was sent to Officer Gluba's location after exiting an inbound aircraft because he was the subject of a "lookout" – an electronic notification that the passenger was involved in some manner with a pending law enforcement investigation.  *See id.* at 10-11.  Officer Gluba requested that the passenger wait in the screening area while she walked a few feet to her supervisor's office to discuss the matter and obtain further instructions.  *See id.* at 15:9-16:8.  Before leaving her station, which contained a computer terminal, Officer Gluba attempted to follow standard operating procedures and lock the computer by pressing the control-alt-delete key combination.  *See id.* at 9:6-7; 45:17-22; 46:16-19.  Unbeknownst to Officer Gluba, the computer that she was using malfunctioned – the control-alt-delete key combination was apparently ineffective in locking the computer.  *See id.* at 45:23-46:11.  While Officer Gluba was conferring with her supervisor, the passenger walked around the desk on which the computer was located and looked at some information on the computer screen.  *See id.* 9:14-22.  Another supervisor saw the passenger behind the computer terminal and instructed him to leave the area.  *See id.*

11

Director Mitchell did not personally discipline Officer Gluba for the incident; rather, Officer Gluba's discipline was handled by Area Director Haage-Gaynor.  Mitchell Dep. 40:24-41:12, 47:15-21; Mitchell Decl. ¶ 21.  Officer Gluba was reassigned to a different work location for four and one-half months.  Gluba Dep. 33:20-22.  A disciplinary letter was also placed in her file, which indicated that if any further incident of misconduct occurred within a year, she would be terminated.  *See id.* 32-34.

## ARGUMENT

## I.    PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF DISCRIMINATORY DISCHARGE UNDER TITLE VII

### A.    Summary Judgment Standards

The Court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material fact exists, a court must view all facts, and draw all reasonable inferences, in the light most favorable to the non-moving party.  *See Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 57 (2d Cir. 2004).  The party opposing summary judgment, however, "may not rely merely on allegations or denials in its own pleadings; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).  "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

12

"[T]he salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation." *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (citation omitted); *see also Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).[4]

### B.    Plaintiff Fails to State a Prima Facie Title VII Claim

Summary judgment is particularly appropriate where, as here, the plaintiff cannot establish a *prima facie* case. Indeed, "[f]or a plaintiff in a discrimination case to survive a motion for summary judgment, he must do more than present conclusory allegations of discrimination, he must offer concrete particulars to substantiate his claim." *Rivera v. Potter*, No. 03 Civ. 1991 (LAP), 2005 WL 236490, at *2 (S.D.N.Y. Jan. 31, 2005) (citations and quotations omitted).

Discrimination claims brought under Title VII are analyzed under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under that scheme, plaintiff bears the initial burden of proving a *prima facie* discrimination claim by a preponderance of the evidence. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). "In order to establish a *prima facie* case of discriminatory discharge in violation of Title VII . . . , a plaintiff must show (1) that he belongs to a protected class, (2) that he was performing his duties satisfactorily, (3) that he was discharged, and (4) that his discharge occurred in

---

[4] Noting "the ease with which these suits may be brought and the energy and expense required to defend such actions," the Second Circuit has further cautioned that "[t]he summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).

circumstances giving rise to an inference of discrimination on the basis of membership in that class." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997).

Akinyemi has not – and on the undisputed record cannot – make out a *prima facie* case of discrimination. Specifically, there is no evidence to demonstrate that Akinyemi's discharge occurred under circumstances giving rise to an inference that she was fired on account of her race, color or national origin.

   1.    **Akinyemi Cannot Establish That Her Discharge Occurred Under Circumstances Giving Rise to an Inference of Discrimination Because None of the Alleged Comparators Was Similarly Situated**

The principal facts on which Akinyemi relies to establish that her discharge occurred under circumstances giving rise to an inference of discrimination is that CBP did not discharge four other CBP employees for alleged misconduct that Akinyemi believes was similar to the misconduct for which she was terminated. It is well established, however, that when a discharged employee seeks to compare herself with another employee outside her protected class, the plaintiff and the individual identified as a comparable employee "must be similarly situated *in all material respects*." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) (emphasis added). "[T]he standard of comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000).

Further, a plaintiff must show that the *actual decisionmaker* was motivated by discrimination. "[D]isparate treatment employment discrimination claim[s] [are] properly reviewed in light of the actual knowledge and actions of the decision-maker." *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 82 (2d Cir. 2005) (internal quotation marks omitted). *See, e.g., Ledbetter v. Goodyear Tire & Rubber Co.*, __ U.S. __, 127 S. Ct. 2162, 2167-69 (2007) (holding

14

that relevant issue was whether "the relevant Goodyear decisionmakers" had discriminated, and that a plaintiff may not "rel[y] on the intent associated with other decisions made by other persons at other times"); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 152 (2000) (focusing on the conduct of the "actual decisionmaker"); *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006) (per curiam); *Dawson v. Bumble & Bumble*, 398 F.3d 211, 224-25 (2d Cir. 2005); *McLee v. Chrysler Corp.*, 109 F.3d 130, 137 (2d Cir. 1997).

Thus, in disparate treatment cases involving employee discipline or termination, in determining whether two employees are similarly situated, a court must consider whether the actual decisionmaker was the same for both the plaintiff and the alleged comparator. If two employees were disciplined (or exempted from discipline) by different supervisors, then there ordinarily can be no inference that the decisionmaker who disciplined plaintiff was acting out of unlawful bias. *See Shumway*, 118 F.3d at 64 (affirming grant of summary judgment in part because alleged comparators were not supervised by employee that terminated plaintiff); *Conway v. Microsoft Corp.*, 414 F. Supp.2d 450, 466 (S.D.N.Y. 2006) (finding that plaintiff had not established a *prima facie* case, in part, because "[a] different decisionmaker was responsible for investigating and determining how to discipline [alleged comparator]"); *Gambrell v. National Railroad Passenger Corporation*, No. 01 Civ. 6433 (NRB), 2003 WL 282182, at *7 (S.D.N.Y. Feb. 3, 2003) (granting summary judgment in part because comparators were not disciplined by same decisionmaker); *Khan v. Costco Wholesale, Inc.*, No. 99 Civ. 3944, 2001 WL 1602168, at *7 (E.D.NY. Dec. 13, 2001) (granting summary judgment because "there is no evidence that [actual decisionmaker], who purportedly terminated Plaintiff, also supervised [the comparators]).

In addition, plaintiff cannot establish that, as a probationary employee, she was similarly situated to co-workers whose alleged misconduct came to light only after they had completed

15

their respective probationary periods. Probationary employees and permanent employees are simply not similarly situated. Indeed, probationary employees are frequently terminated for reasons that would not result in termination for non-probationary employees. Mitchell Decl. ¶ 11. Probationary employees are under increased scrutiny by CBP management officials, who use the probationary period to assess whether employees can perform their jobs successfully, and whether they exercise sound judgment. *Id.* ¶ 9. If an employee does not exercise sound judgment during the probationary trial period, CBP management believes that it is better to terminate the employee during the trial period, rather than take the risk that additional and/or more serious performance or judgment issues may arise in the future. *Id.* In addition, as explained above, the civil service rules regarding employee discipline differ between probationary and permanent employees. *See Feingold v. New York*, 366 F.3d 138, 153 (2d Cir. 2004) (holding that "probationary [employee] was not similarly situated to the other [non-probationary employees] with respect to the conditions under which he could be terminated, and thus the mere fact that he was fired [for certain conduct], while they were not, would not by itself support an inference of discrimination"); *Jones v. Yonkers Public Schools*, 326 F. Supp. 2d 536, 545 (S.D.N.Y. 2004) ("[A] probationary civil service employee generally is not situated similarly to a non-probationary employee as a matter of law."). Accordingly, differential treatment of probationary and permanent employees cannot support a *prima facie* case.

Here, the undisputed evidence establishes that Akinyemi and her alleged comparators are not similarly situated.

### a)    Officer Patrick Murphy

Officer Murphy and Akinyemi are not similarly situated. Even assuming Akinyemi's vague allegations regarding Officer Murphy's purported misconduct to be true, it is undisputed

that Officer Murphy's and Akinyemi's cases are dissimilar in at least two material respects.

First, Officer Murphy is a 37-year veteran of CBP and its predecessor agency.  Unlike Akinyemi,

at the time Director Mitchell learned of his alleged misconduct, Officer Murphy was not a

probationary employee.  Murphy Dep. 7:2; *see Feingold*, 366 F.3d at 153; *Jones*, 326 F. Supp.

2d at 545.

Second, Akinyemi and Officer Murphy are dissimilar because Director Mitchell was

unaware that Officer Murphy was alleged to have committed any misconduct until it was brought

to her attention by the plaintiff during the course of this litigation.  Mitchell Dep. 55; Mitchell

Decl. ¶ 16.  Prior to Akinyemi's allegation of misconduct by Officer Murphy, Director Mitchell

– the decisionmaker in Akinyemi's case – was completely uninvolved in any decision to

discipline, or forgo discipline of, Officer Murphy.  *Id*.  Indeed, Akinyemi does not claim that

Director Mitchell was aware of Officer Murphy's alleged misconduct until after she raised it

during the course of her EEO discrimination claim.  Rather, Akinyemi claims that a different

supervisor, Domenic Calise, witnessed the misconduct and failed to discipline Officer Murphy.

Akinyemi Dep. 132.  In these circumstances, it is beyond cavil that Akinyemi and Officer

Murphy were not similarly situated prior to Akinyemi bringing her claim of discrimination.  *See*

*Shumway*, 118 F.3d at 64; *Conway*, 414 F. Supp. 2d at 466; *Gambrell*, 2003 WL 282182, at *7;

*Khan*, 2001 WL 1602168, at *7.[5]

---

[5] Nor is there any evidence the Director Mitchell has subsequently been involved in any decision
whether to discipline Officer Murphy.  Director Mitchell referred the matter for investigation.
Mitchell Decl. ¶ 16.  Depending on the results of this investigation, she could, theoretically, be
involved in the future in any discipline decision.  But even that is uncertain.  Director Mitchell
has delegated to Area Directors the authority to make some disciplinary decisions.  Mitchell
Decl. ¶ 7.  Thus, an Area Director may be the relevant decisionmaker for Officer Murphy's case,
should any misconduct on his part ever come to light.  Moreover, an investigation is necessary,

b)    **Officer Sharmila Zaman**

Akinyemi and Officer Zaman are also not similarly situated.  Although the incident whereby Officer Zaman left her firearm in a Newark Airport restroom occurred in 2004, Director Mitchell did not learn of it until plaintiff raised an allegation of misconduct by Officer Zaman during this litigation.  Mitchell Decl. ¶ 17.  At the time of the incident, other CBP employees and supervisors, including Officer Bruce Wescott, made the decision – without input or approval from Director Mitchell – to not report Officer Zaman's misconduct up the chain of command. Mitchell Dep. 19:4-9.  Since none of the officers did so, they effectively decided that Officer Zaman should not be disciplined in 2004.  Thus, at the time of the Zaman incident, Akinyemi and Officer Zaman were not similarly situated because different supervisors made the ultimate disciplinary decision.  *See Shumway*, 118 F.3d at 64; *Conway*, 414 F. Supp. 2d at 466; *Gambrell*, 2003 WL 282182, at *7; *Khan*, 2001 WL 1602168, at *7.

Once Director Mitchell was informed of the incident, she referred it for investigation. Mitchell Decl. ¶ 17.  The investigation revealed that Officer Zaman had, in fact, inadvertently left her firearm unattended in a non-public airport restroom in 2004.  Mitchell Decl. ¶ 18.  As a result of these findings, Officer Zaman, two other CBP officers, and a supervisory CBP officer who had failed to report the firearm incident at the time, were disciplined.  *Id*.  In addition, although Officer Zaman was apparently a probationary employee at the time of the alleged incident, she was a permanent employee by the time the discipline was imposed.  *Id*.  Because Officer Zaman was a non-probationary employee at the time she was eventually disciplined by

in part, because Officer Murphy – unlike Akinyemi – denied that the misconduct took place. Murphy Dep. 15-17.  For these reasons as well, Akinyemi and Officer Murphy are not similarly situated.

Director Mitchell, she is not similarly situated with Akinyemi.  *See Feingold*, 366 F.3d at 153;

*Jones*, 326 F. Supp. 2d at 545.

### c)    Officer Elba Riley

Akinyemi is also not similarly situated to Officer Riley.  Akinyemi claims that Officer

Riley accompanied her parents to the gate area of Newark Airport at some unknown time.

Akinyemi Dep. 120.  Director Mitchell only became aware of Akinyemi's allegation of

misconduct by Officer Riley during the course of this litigation.  Mitchell Dep. 48:14-20;

Mitchell Decl. ¶ 19.  When she did become aware of the allegation, Director Mitchell referred

the matter for investigation and possible discipline.  Mitchell Dep. 49:6-21; Mitchell Decl. ¶ 19.

There is no evidence that Director Mitchell has subsequently been involved in any decision

whether to discipline Officer Riley.  Thus, because Director Mitchell was not the decision-maker

as to whether to discipline Officer Riley, Akinyemi and Officer Riley are not similarly situated.

*See Shumway*, 118 F.3d at 64; *Khan*, 2001 WL 1602168, at \*7; *Conway*, 414 F. Supp. 2d at 466;

*Gambrell*, 2003 WL 282182, at \*7.

In addition, shortly after Director Mitchell learned of Akinyemi's allegations against

Officer Riley and referred the matter for investigation, Officer Riley finished her probationary

period and became a permanent employee.[6]  Mitchell Decl. ¶ 20.  For this reason as well, Officer

---

[6] No inference of discrimination can be drawn from Director Mitchell's decision to refer the
Officer Riley matter for investigation.  At the time of the referral, Director Mitchell had no
reason to believe, other than Akinyemi's bald allegation, that Officer Riley actually committed
any misconduct.  Officer Riley has not admitted to any misconduct.  Riley Dep. 14 (invoking
Fifth Amendment privilege against self-incrimination).  Akinyemi, in contrast, admitted to her
misconduct within a few days of the incident.  Termination Letter, at 1, Clopper Decl., Exh. 3.
Thus, it should come as no surprise – and no discriminatory inference should be drawn from –
the fact that Director Mitchell referred the matter for investigation.

Riley and Akinyemi are not similarly situated.  *See Feingold*, 366 F.3d at 153; *Jones*, 326 F. Supp. 2d at 545.

### d)    Officer Jolanta Gluba

Finally, Akinyemi is not similarly situated to Officer Gluba.  Director Mitchell was not the supervisor who disciplined Officer Gluba.  Officer Gluba was disciplined by Area Director Haage-Gaynor.  Mitchell Dep. 40:24-41:12, 47:15-21; Mitchell Decl. ¶ 21.  Because Officer Gluba and Akinyemi were disciplined by different supervisors, they are not similarly situated. *See Shumway*, 118 F.3d at 64; *Conway*, 414 F. Supp. 2d at 466; *Gambrell*, 2003 WL 282182, at *7; *Khan*, 2001 WL 1602168, at *7.[7]

In addition, the facts of the two cases are not substantially similar.  "[T]he issue of whether fellow employees are similarly situated is somewhat strict," and, where "differentiating or mitigating circumstances" between two employees exist, the employees are not similarly situated.  *Brown v. Middaugh*, 41 F. Supp. 2d 172, 184 (N.D.N.Y. 1999); *Wang*, 1999 WL 529550, at *14; *McKinney v. Lanier Worldwide, Inc.*, 1998 WL 677544, at **4-5 (S.D.N.Y. Sept. 29, 1998).  The facts of Officer Gluba's and Akinyemi's cases are markedly different.  Akinyemi's misconduct involved an intentional misuse of her authority.  In contrast, Officer

---

[7] Officer Gluba had already completed an initial two-year probationary period when the incident occurred.  Gluba Dep. 5-6.  Immediately upon completing her initial two-year probationary period as Officer-in-Training, Officer Gluba was promoted to CBP Officer.  *See id.* at 6:16-21. The promotion required an additional one-year period of probation.  By the time of the incident involving the computer terminal, however, Officer Gluba had been working for CBP or its legacy agency for nearly three years.  The fact that Officer Gluba had more seniority than Akinyemi at the time of the computer incident, having worked for CBP or its predecessor agency for about three years as opposed to Akinyemi's two years, also suggests that they are not similarly situated.  *See Graham,* 230 F.3d at 40; *Feingold*, 366 F.3d at 153; *Jones,* 326 F. Supp. 2d at 545.

Gluba was merely negligent in locking a computer screen.  Moreover, the unrebutted evidence is that Officer Gluba made an honest effort to lock the computer screen, and failed to do so only because the computer was not functioning properly.  Gluba Dep. 45:17-46:23.  For all of these reasons, there is not "a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases."  *Graham,* 230 F.3d at 40.

Accordingly, none of the alleged comparators and Akinyemi are similarly situated, and Akinyemi thus has failed to meet her *prima facie* burden of establishing that CBP discharged her under circumstances giving rise to an inference of discrimination.

## II.    CBP HAS ARTICULATED A LEGITIMATE NON-DISCRIMINATORY REASON FOR TERMINATING AKINYEMI THAT SHE CANNOT REBUT

Even assuming *arguendo* that Akinyemi could demonstrate a *prima facie* case, the Court should grant defendant summary judgment because Akinyemi cannot come forward with admissible evidence proving that CBP's legitimate non-discriminatory reason for terminating her probationary employment was false and that the "true" reason was intentional discrimination based upon race, color or national origin.

### A.    CBP Has Articulated a Legitimate Non-Discriminatory Reason for Terminating Akinyemi's Probationary Employment

Even if Akinyemi were able to meet her burden of establishing a *prima facie* employment discrimination case – which she cannot – summary judgment should still be granted in favor of defendant because CBP has articulated a legitimate non-discriminatory reason for terminating her employment.  Once a plaintiff satisfies her *prima facie* burden, a presumption of discrimination arises and the burden then shifts to the defendant to proffer a non-discriminatory reason for its action.  *See Dawson*, 398 F.3d at 216.  The defendant need only articulate, not prove, a legitimate non-discriminatory or non-retaliatory reason for the challenged action.  *See*

*Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001) ("The defendant is not required

to prove that the articulated reason actually motivated its action.").  Moreover, "the issue is not

the correctness or desirability of the reasons offered . . . [but] whether the employer honestly

believes the reasons it offers."  *Bucknell v. Refined Sugars, Inc.*, 82 F. Supp. 2d 151, 157

(S.D.N.Y. 2002).  If the defendant satisfies this burden of production, the framework of burdens

and presumptions completely "drops out of the picture." *St. Mary's Honor Ctr.*, 509 U.S. at 511.

At that point, the defendant is entitled to summary judgment "unless the plaintiff can point to

evidence that reasonably supports a finding of prohibited discrimination" and prove, by a

preponderance of the evidence, that the proferred reasons were a pretext for discrimination.

*Dawson*, 398 F.3d at 216.

Here, CBP has articulated a legitimate non-discriminatory reason for terminating

Akinyemi's probationary employment – *i.e.,* Akinyemi's use of her position and authority to

bypass TSA security at Newark Airport while off duty for personal reasons.  As discussed above,

it is undisputed that on December 5, 2005, Akinyemi obtained permission to leave work early

and go off duty to so that she could accompany her husband to Newark Airport.  While at the

airport, Akinyemi – in full uniform, showing a badge, wearing a firearm, and using her AOA

card – intentionally bypassed TSA security for the purpose of entering the restricted departure

gate area.  Akinyemi Dep. 52:6-58:10.  It is undisputed that she did not have any professional

reason for bypassing security and entering the restricted departure gate area that day, and that she

did it for purely personal reasons.  *See id.*  In doing so, Akinyemi violated CBP Standard of

Conduct 6.3.5, which prohibits CBP officers from using any CBP identification for personal

reasons.  Termination Letter, Clopper Decl., Exh. 3; CBP Standards of Conduct 6.3.5, Clopper

Decl. Exh. 4.

**B.      Akinyemi Cannot Identify Any Admissible Evidence To Rebut the Legitimate Non-Discriminatory Reason CBP Has Articulated**

"To defeat summary judgment, plaintiff must produce sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false." *Viola v. Philip Med. Sys. of N. Am.*, 42 F.3d 712, 717 (2d Cir. 1994); *Pignato v. Am. Trans. Air, Inc.*, 14 F.3d 342, 349 (7th Cir. 1994) ("It is not enough for the plaintiff to show that a reason given for job action is not just, or fair, or sensible.  He must show that the explanation given is a phony reason.").  Summary judgment is warranted where "the plaintiff has failed to show that there is evidence that would permit a rational factfinder to infer that the employer's proferred rationale is pretext." *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004); *see also Reeves*, 530 U.S. at 147 ("It is not enough to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination" (quotations omitted) (emphasis in original)).  Thus, "the final burden rests on the plaintiff to prove not only that the proferred nondiscriminatory reason was pretextual but also that the defendant discriminated against the plaintiff." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91 (2d Cir. 2001) (citing *Reeves*, 530 U.S. at 143); *see also Reeves*, 530 U.S. at 148; *St. Mary's Honor Ctr.*, 509 U.S. at 507.

Further, in attempting to rebut an employer's legitimate non-discriminatory reason and avoid summary judgment, a plaintiff must present *admissible* evidence.  *See Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003); *Garrett v. Mazza*, No. 97 Civ. 9148 (BSJ), 2005 WL 2276983, at *3 (S.D.N.Y. Sept. 19, 2005).  Here, Akinyemi cannot come forward with admissible evidence from which a reasonable factfinder could conclude that CBP has offered a false reason for Akinyemi's discharge and that the true reason was discrimination on the basis of Akinyemi's

23

race, color, or national origin.  Akinyemi does not claim that there is any direct evidence in the record of discrimination by Director Mitchell.  For example, Akinyemi admits that Mitchell has never said anything to her that she perceived to be racially derogatory.  Akinyemi Dep. 117:24-118:2, 129:9-3.  Instead, Akinyemi seeks to infer discrimination from her allegations that four other CBP officers engaged in misconduct and were not terminated.

No reasonable factfinder, however, could draw an inference of discrimination solely from Akinyemi's allegations of misconduct by the four CBP officers.  As discussed above, when Director Mitchell learned of the allegations against CBP Officers Murphy, Zaman, and Riley, she ordered that those matters be investigated.  When one of the resulting investigations found that the allegations against (by then, non-probationary) Officer Zaman were sustained, Director Mitchell disciplined Officer Zaman.  No reasonable factfinder could conclude that Director Mitchell's stated reason for terminating Akinyemi was false based on these circumstances.

Other than comparing herself to these other CBP officers, Akinyemi cannot present any admissible evidence of pretext.  It is well established that "[c]onclusory statements, mere conjecture, hearsay or speculation by the party resisting summary judgment cannot defeat the motion."  *Lanier v. IBM Corp.*, 319 F. Supp.2d 374, 380 (S.D.N.Y. 2004) (*citing Bickerstaff v. Vassar College*, 196 F.3d 435, 452 (2d Cir. 1999)); *see also Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001); *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) ("The non-moving party may not rely on mere conclusory allegations nor speculation[.]") (citations omitted); *Singh v. New York City Off-Track Betting Corp.*, No. 03 Civ. 5238 (JGK), 2005 WL 1354038, at *10 (S.D.N.Y. June 8, 2005) ("conclusory allegations that the defendant's stated reasons for the allegedly discriminatory action are pretext for discrimination, without any supporting evidence, cannot defeat a motion for summary judgment").

Conclusory allegations and speculation, however, is precisely the kind of "evidence" that Akinyemi seeks to rely upon to escape summary judgment.  For example, in her deposition, Akinyemi repeatedly offered the conclusory assertion that she was treated differently because of her race and national origin.  *See, e.g.,* Akinyemi Dep. 94:16-25, 96:24-25, 126:10.  Such assertions are plainly insufficient to create a genuine issue of fact regarding the reason for her termination.

Accordingly, defendant is entitled to summary judgment because Akinyemi cannot identify any admissible evidence to rebut the legitimate non-discriminatory reason CBP has articulated for her discharge.

## **CONCLUSION**

For the foregoing reasons, the Court should grant defendant's motion for summary judgment.

Dated: New York, New York
          January 25, 2008

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

By:      /s/ John D. Clopper
          JOHN D. CLOPPER
          Assistant United States Attorney
          86 Chambers Street
          New York, New York 10007
          Telephone: (212) 637-2716
          Facsimile: (212) 637-0033
          john.clopper@usdoj.gov