UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
YEMISI AKINYEMI,

              Plaintiff,

v.

                                            07 CV 4048 (AJP)

MICHAEL CHERTOFF, SECRETARY,
DEPARTMENT OF HOMELAND
SECURITY,

              Defendant.

------------------------------------------------------------x

## DECLARATION OF SUSAN MITCHELL

I, Susan Mitchell, do hereby state and declare as follows in accordance with the provisions of 28 U.S.C. § 1746:

1. In January 2008, I became the Acting Executive Director, Operations, Office of Field Operations, for U.S. Customs and Border Protection ("CBP"), U.S. Department of Homeland Security ("DHS"), in Washington, D.C.

2. From July 2002 to January 2008, and at all times relevant to this litigation, I was the Director of Field Operations, New York, Office of Field Operations, for CBP or its predecessor agency, the U.S. Customs Service.

3. As the CBP Director of Field Operations, New York, I had operational and administrative oversight over the approximately three thousand employees assigned to CBP Field Operations in New York and New Jersey, including all CBP Officers.

4. As the Director of Field Operations for New York, I was six supervisory levels above the position of CBP Officer. The CBP chain of command in the New York area contains several levels. Immediately below my position are two Area Directors, one assigned to the

Newark/New York Area, and one assigned to John F. Kennedy International Airport ("JFK Airport"). During Ms. Akinyemi's employment with CBP, the Area Director for the Newark/New York Area was Kathleen Haage-Gaynor, and the Area Director for JFK Airport was Camille Polimeni. The next supervisory level below the Area Director is the Assistant Area Director. There are six Assistant Area Directors, three for Newark/New York and three for JFK Airport. The next supervisory level below the Assistant Area Director is Chief. There are numerous Chiefs assigned to the Newark/New York and JFK Airport Areas, each assigned to a substantive area of work, such as baggage or passenger operations. The next supervisory level below Chief is Deputy Chief. There are numerous Deputy Chiefs assigned to the Newark/New York and JFK Airport Areas. Like the Chiefs, the Deputy Chiefs are assigned to supervise different operational areas. The next supervisory level below Deputy Chief is Supervisory Customs Border Protection Officer ("SCBPO"). Numerous SCBPOs directly supervise CBP Officers at both the Newark/New York and JFK Airport Areas.

5. In March of 2003, Congress created CBP as a new agency within the newly created DHS. Several predecessor agencies, including the former U.S. Customs Service and the former U.S. Immigration and Naturalization Service, were merged into CBP. In July 2004, the position of U.S. Customs and Border Protection Officer was created and, as of that date, all former Customs Inspectors and Immigration and Naturalization Service Inspectors became known as Customs and Border Protection Officers.

6. As the Director of Field Operations, New York, CBP had delegated to me the authority to decide certain employee disciplinary matters, including (1) suspensions, reductions in pay or grade, and removals for misconduct, (2) indefinite suspensions, (3) removal for felony convictions, and (4) probationary terminations for unsatisfactory performance or conduct.

7.  CBP also authorized me to redelegate for decision, certain disciplinary actions (suspensions of 14 days or less) to a management official one level below mine. On February 5, 2005, I delegated to the Area Directors of the New York and Newark/New York ports the authority to decide proposed suspensions of 14 days or less.

8.  Plaintiff Yemisi Akinyemi was hired under the Federal Career Intern Program ("FCIP"), pursuant to Schedule B, 5 C.F.R. § 213.3202(o). Employees hired pursuant to the FCIP serve a two-year trial, or "probationary" period. During the probationary period, CBP assesses the performance, development, conduct and general suitability of the employee for continued employment. Only after successful completion of this two-year trial period will a FCIP employee be converted to non-probationary career or career-conditional appointment.

9.  For probationary employees, misconduct demonstrating lack of judgment or misuse of position, frequently results in termination. Probationary employees are expected to perform their jobs at an optimal level during their probationary period. Probationary employees are under increased scrutiny by CBP management officials, who use the probationary period to assess whether employees can perform their jobs successfully and professionally, and whether they can exercise sound judgment. If an employee demonstrates that she cannot exercise sound professional judgment during the probationary trial period, when that employee is under managerial scrutiny, CBP management believes that is its better to terminate the employee during the trial period, rather than take the risk that additional and/or more serious performance or judgment issues may arise in the future.

10. During the probationary period, a CBP employee possesses limited appeal rights if she is terminated. For example, a probationary employee who has been terminated by CBP may only appeal that termination to the Merit Systems Protection Board ("MSPB") under the limited

circumstances enumerated in 5 C.F.R. § 315.806, whereas a permanent employee may appeal a termination to the MSPB for much broader reasons. In addition, the National Treasury Employees Union ("NTEU"), the bargaining unit which represents CBP officers, may challenge the termination of a permanent employee at an arbitration proceeding on that employee's behalf. The NTEU cannot, however, challenge the termination of a probationary employee at an arbitration proceeding.

11. In light of these differences between probationary and non-probationary employees, misconduct by a probationary employee is more likely to result in termination than similar misconduct by a permanent employee who has already successfully completed a probationary period.

12. Whether an employee is treated as a probationary employee or a permanent employee for purposes of discipline is determined at the time the discipline is imposed. In other words, if a probationary employee commits misconduct, but such misconduct does not come to light until after the probationary employee has converted to a permanent employee, the employee is treated as a permanent employee for the purposes of the imposed discipline. In disciplining an employee, I will consider his or her status at the time of the incident, but once an employee has converted to permanent status, he or she are entitled to all the rights associated with permanent status in disciplinary proceedings.

13. The Port Authority of New York and New Jersey, a bi-state agency, issues an "Access to Operations Area" card or "AOA card" to CBP officers and other individuals who work at John F. Kennedy International Airport and Newark Liberty International Airport, in order that such individuals may access secure areas of those airports. An AOA card allows on-duty CBP officers to access restricted areas of the airports not generally open to the public. For

example, an AOA card allows CBP officers to access departure gate areas of these airports. AOA cards are intended to be used only for official business purposes. Only persons with AOA cards on official business, or ticketed passengers who have gone through Transportation Security Administration security screening, are allowed to access the departure gate areas.

14.   CBP Officers are not permitted to access a secure area of Newark Liberty International Airport using an AOA card, such as the departure gate area, unless they are on duty with a legitimate work reason to be there.

15.   During her employment with CBP, plaintiff was assigned to CBP's Raymond Boulevard facility at 1100 Raymond Boulevard, Newark, New Jersey. The Raymond Boulevard facility is located off the grounds of Newark Liberty International Airport. The facility is used for a variety of purposes by CBP. For example, management offices for the Newark/New York Area, including the office of the Area Director for Newark/New York, are located at the Raymond Boulevard facility. In addition, the Raymond Boulevard facility also houses CBP's Newark Area trade operations, including the Document Analysis Unit ("DAU"). CBP Officers assigned to the DAU examine documents related to the import and export of merchandise, and work with CBP import and entry specialists to ensure that all necessary trade laws and regulations are being enforced by CBP.

16.   During the course of this litigation, I became aware of Ms. Akinyemi's allegation that CBP Officer Patrick Murphy committed misconduct by allegedly meeting a relative in a restricted area while off-duty. I had no knowledge of this incident until it was brought to my attention after Ms. Akinyemi had made the allegation. Lenard Angevine, an EEO Officer at CBP, informed me of the allegation shortly after plaintiff filed her claim of discrimination. After

I became aware of the allegation, I referred the matter to the CBP Area Director of Port Newark/New York at the time, Kathleen Haage-Gaynor, for appropriate investigation.

17. During the course of this litigation, I became aware of Ms. Akinyemi's allegation that CBP Officer Sharmila Zaman (formerly Sharmila Haq) had allegedly misplaced her CBP issued firearm in a bathroom at Newark Airport in April 2004. I had no knowledge of this alleged incident until it was brought to my attention after Ms. Akinyemi had made the allegation. EEO Officer Angevine informed me of the allegation shortly after Ms. Akinyemi filed her claim of discrimination. After I became aware of the allegation, I referred the matter to Area Director Haage-Gaynor for appropriate investigation.

18. The investigation into the Zaman incident revealed that CBP Officer Zaman had, in fact, temporarily misplaced her CBP issued firearm in an airport bathroom. As a result of the investigation, CBP Officer Zaman, two other CBP Officers, and a supervisory CBP Officer were disciplined. The supervisory CBP Officer was disciplined for failing to promptly report the incident up the chain of command. CBP Officer Zaman was suspended for two days. In disciplining CBP Officer Zaman, I took into account, among other factors, the nature and circumstances of the offense, CBP Officer Zaman's work and disciplinary history, her status as a probationary employee at the time of the incident, as well as her status as a non-probationary employee at the time the discipline was imposed. I also considered the fact that Officer Zaman's conduct was inadvertent, and that she had otherwise successfully completed her probationary period.

19. During the course of this litigation, I became aware of Ms. Akinyemi's allegation that CBP Officer Elba Riley (formerly Elba Mendez) committed misconduct by allegedly meeting a relative in a restricted area while off-duty. I had no knowledge of this incident until it

was brought to my attention after Ms. Akinyemi had made the allegation. EEO Officer Angevine informed me of the allegation on or about January 3, 2006, shortly after plaintiff filed her claim of discrimination. After I became aware of the allegation, I referred the matter to Area Director Haage-Gaynor for appropriate investigation.

20. Upon information and belief, CBP Officer Riley completed her two-year probationary period on or about January 11, 2006, and was converted to a career-conditional appointment as of that date.

21. In April 2005, after an investigation was conducted at the request of Area Director Haage-Gaynor, Area Director Haage-Gaynor issued a written counseling letter to CBP Officer Jolanta Gluba, as a result of an incident in January 2005 where Officer Gluba tried but failed to lock her computer screen, which resulted in a passenger being able to see information about himself on the screen. I was informed of the incident and the investigation around the time it occurred by Area Director Haage-Gaynor. I did not, however, participate in Area Director Haage-Gaynor's decision to issue the above-referenced counseling letter. At some point after the counseling letter was issued, I inquired of Area Director Haage-Gaynor whether any law enforcement sensitive information was revealed to the public as a result of CBP Officer Gluba's actions, and she replied that no law enforcement sensitive information was revealed to the public.

I declare under penalty of perjury that the foregoing is true and correct based on information, knowledge, and belief.

Executed on January 24, 2008

SUSAN MITCHELL