UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X          Case No. 07 CV 4048
YEMISI AKINYEMI,                                                              (AJP)
                                        Plaintiff


-against-


MICHAEL CHERTOFF,
SECRETARY, DEPARTMENT OF HOMELAND
SECURITY,

                                        Defendant
--------------------------------------------------------X


# PLAINTIFF'S LOCAL CIVIL RULE 56.1 STATEMENT

Pursuant to Rule 56.1 of the Local Civil Rules, Plaintiff, YEMISI AKINYEMI, by and through her attorney, K.C. OKOLI, ESQ., submits this statement of material facts about which plaintiff contends there exists a genuine issue to be tried.

1. Admitted.

2. Admitted. The Federal career intern program allows to conversion to a career or career conditional appointment at the end of a successful two years.

3. Admitted. The Access to Operations Area (AOA) card was not issued by CBP, but by the Port Authority of New York and New Jersey ("PA"), to anyone who needed to access restricted areas under the jurisdiction of the PA.

4. Admitted.

    a) In the early morning hours of December 5, 2006, Akinyemi and her

1

    husband received a telephone call from Nigeria informing them that her who had been sick with cancer had passed away, and her husband was to take a trip to who had earlier planned to go see his sick father, was making a trip that day to Nigeria.  Okoli Decl., Exhibit 36: Akinyemi Dep., at 43-45.

  b)    At work that day, Akinyemi brought this sad loss to the attention of co-workers and sought and obtained permission from Mitchell Landau to leave work early that day to goto Newark Airport to see off her husband who was traveling to Nigeria.  *Id.*, at 46-48.

  c)    At Newark International Airport, Akinyemi's husband cleared security, like any other passenger, while Akinyemi who came to the airport straight from work in her CBP uniform went by the TSA security to meet up with him at the gate area prior to departure.  *Id.*, at 52-54; Deposition of Akinyemi's husband (Okoli Dec., Exhibit 33)("Seweje Dep."), at 22-24.

  d)    Prior to December 5, 2005, Akinyemi had observed many CBP officers go to restricted areas at the airport while off-duty, and did not see a problem with her action.  Akinyemi Dep, at 59, 61; Akinyemi Decl., ¶24.

5.    Akinyemi admits that she was terminated effective December 20, 2005, but otherwise disputes the reasons stated in the termination letter for her termination.

  a)    Akinyemi's conduct did not and does not violate the cited CBP Standards of Conduct, Section 6.3.5.  Okoli Decl, Exhibit 18.  While she admits that

2

        she gained access to the departure gate area by virtue of her Port Authority issued AOA card, she denies that she did so by using "CBP identification" in the manner described therein;

    b)    Elba Riley, another probationary CBP employee, who is non Black, non African American and non-Nigerian was questioned and denied that she had ever escorted her parents to an airport departure area. Riley Dep., 14;

    c)    When Ms. Riley was asked a similar question relative to relations (other than parents), whe invoked her 5th Amendment rights. *Id.*,

    e)    Riley who was not born in Nigeria, is not African American and is not Black, is still employed by CBP. *Id.*, 7.

6. Admitted.

7. Admitted.

8. Admitted. This is not a case which is based upon the use of racial epithets. The case is based on the contention that other CBP officers who are similarly situated were treated differently from Akinyemi. Okoli Decl., Exhibits 2, 3, 4, 6-18.

9. Admitted. While not a probationary employee, as a non-probationary employee Murphy is not immune from investigation for misconduct. After his misconduct allegation came to the attention of Mitchell, she did make any inquiry of Murphy or cause any such inquiry to be made. Okoli Decl., Exhibit 34; Mitchell Dep. 54-56; Okoli Decl., Exhibits 2, 3, and 4; Murphy Dep., at 17-18.

10. Denied.

    a)    There is no credible evidence that Mitchell ever made such a referral as

        she claimed. While she claimed to have made a verbal referral which she never followed up on, there is written referrals for Gluba and Zaman. Okoli Decl., Exhibit 34; Mitchell Dep. 54-56; Okoli Decl., Exhibits 2, 3, and 4; Murphy Dep., at 17-18.

11. Denied in part..

    a) The toilet where Zaman left her weapon was a <u>public</u> restroom  Okoli Decl., Exhibit 4: USA0275, USA0278,. The restroom is was a "women's public restroom" located directly outside the CBP Adminstrative on the second floor at Terminal C. *Id*, at USA0278.

    b) The firearm, which was loaded, was discovered by an *unidentified* Continental Airlines ground agent. *Id*..

    c) Joseph Cardinale who investigated the Zaman incident stated that had the firearm "fallen into the hands of the wrong individual the results would have been devastating". *Id*, at USA0281.

12. Admitted.

    a) There is no record evidence that Mitchell who was aware that Zaman's probationary period was fast approaching and further knew of the difference which her status would make in the kind of discipline which may be imposed, obtained any written statement from Zaman during her probationary period, as they did Akinyemi.

13. Not disputed.

14. Akinyemi admits that she alleges that Riley committed similar misconduct.

a) Akinyemi does not know when Mitchell became aware of Riley's situation.

b) The record does not contain any document in support of Mitchell's claim that she referred Riley's situation to Haage-Gaynor, who has since retired from CBP. By contrast, there is record evidence of references involving Gluba and Zaman. Okoli Decl., Exhibits 2, 3 and 4.

c) There is no evidence of what statement Mitchell obtained or caused to be obtained from Riley from when she admittely knew of her situation on January 3, 2006, to January 11, 2006, whenRiley became a non-probationary.

d) A written statement was obtained from Akinyemi on December 9, 2005, five days after the incident involving her. See Exhibit 1.

15. Admitted.

a) Gluba was still on her initial probationary period as an Officer-in-Training when she was short of $297 on June 26, 2002, and failed to show up for work the next day being June 27, 2002. See Exhibit 2: USA0320.

b) Gluba was on her probationary period as a CBP officer when she exposed sensitive government information to a member of the public. See Exhibit 3: USA0323-USA0324.

c) Gluba's two-year probationary period as a CBP officer began on April 18, 2004. Id., USA0344.

16. Not disputed.

17. Akinyemi disputes claim that any discipline was imposed on Gluba for her misconduct. Haage-Gaynor, who handled both Gluba incidents, made clear in her counseling letter to Gluba that "no action will be taken against [her]". Exhibit 3: USA0323.

18. Admitted. On February 5, 2005, Mitchell admittedly delegated authority to Area Directors, including Haage-Gaynor, to decide proposed suspensions of 14 days or less. Mitchell Decl., ¶7. By that delegation, Mitchell predetermined that any CBP officer whose matter she referred to an Area Adminstrator would not suffer discipline of more than 14 days.

19. The CBP Table of Offenses and Penalties applies to all CBP employees. Okoli Decl., Exhibits 17 and 21:142. Mitchell did not apply the Table of Offense and Penalties to Akinyemi even though she could have done so. Exhibit 20: 134-135

20. There is an applicable Standard Operating Procedure Separation of Probationary and Trial Period Employees ("Standard) which CBP uses in terminating a probationary employee. See Exhibit 19. There is no record evidence that CBP or Mitchell followed this Standard in Akinyemi's case.

    a) There is nothing in the record to indicate that LERS did any of the things required of it in the Standard, or that LERS ever provided advice and counsel to Mitchell as to what to do with Akinyemi. Id, at "202".

    b) the Standard states: "If management makes the decision to remove an employee, the LERS will prepare the separation letter". Id., at "202".

    c) Nothing in the record indicates that LERS, as distinct from Mitchell,

    prepared Akinyemi's separation letter: Indeed, on the face of it, the termination letter was prepared and signed by Mitchell. Exhibit 16.

 c) The Standards also provide: "The LERS will ensure that management provides the employee with a copy of the MSPB regulations and appeal form at the time of the separation letter is issued". <u>Id</u>., at "203".

 d) Akinyemi was only given the termination letter by the officers who delivered same at her home. Akinyemi Dep., at 91-94. No MSPB regulations and appeal form were provided at the time the letter was delivered.

  By submitting this statement, Akinyemi does not waive her right to contend that any of the above-referenced facts are not material to the present action and, in fact, specifically reserves the right to do so.

Dated: New York, New York
   February 28, 2008

            /s/ K.C. Okoli
            K.C. OKOLI, ESQ.
            (KO 7222)
            Attorney for Plaintiff
            YEMISI AKINYEMI
            330 Seventh Avenue
            15th Floor
            New York, N.Y. 10001
            (212) 564-8152