# U.S. Customs Service, Labor and Employee Relations

## Standard Operating Procedures
## Separation of Probationary and Trial Period Employees

### Introduction

The following guidance is for use by the U.S. Customs Service's Labor and Employee Relations Specialists (LERS) when separating employees serving a probationary or trial period and hired under authority delegated in 5 CFR 315 or 5 CFR 213.

1. **Initial Notification of Performance or Conduct Problems**

    A.  Action to separate a probationary or trial period employee due to performance or conduct problems is usually initiated by one of the following methods:

    The LERS receives a formal Office of Internal Affairs (IA), Report of Investigation (ROI); Administrative Inquiry Report (AIR); or Management Referral/Inquiry containing evidence that misconduct by a probationary/trial period employee has occurred; or

    Management contacts the LERS for advice and counsel and provides examples of misconduct and/or performance deficiencies by the probationary/trial period employee.

    **NOTE**: There may also be situations where management informs the LERS of a pending IA investigation concerning alleged misconduct by the probationary/trial period employee, e.g. employee's arrest. In these types of situations, the LERS must alert his/her supervisor of the pending IA investigation. This is essential if the employee is nearing the end of his/her probationary/trial period. Based on this information, LER management may coordinate with IA to expedite the production of a ROI/AIR/Mgmt. Referral, and/or receive IA approval to proceed with an action based on available information.

    B.  The LERS should obtain the employee's Official Personnel Folder (OPF) in order to verify employment status and appointment date. This is critically important because the termination must take place before the end of the probationary or trial period.

    **NOTE**:  If the probationary or trial period has ended, the LERS will advise management of the appropriate process under 5 CFR 752 or 432.



C. Based on a review of the information and consideration of the amount of time left in the probationary or trial period, the LERS provides advice and counsel to the manager as to the immediate action that should be taken, e.g., counsel the employee; on-the-job training; letter of expectations; initiate separation action for serious performance or misconduct issues. Attachment 1, *Performance or Conduct Problems Involving Probationary or Trial Period Employees,* contains a series of questions that may prove useful in discussing conduct or performance problems with a supervisor.

D. If intermediate steps were advised to correct the problems, the LERS maintains contact with management to inquire about the progress of probationary/trial period employees.

If no improvement is recognized, the LERS will review the documentation and advise management of their findings and recommend appropriate action. Recommendations may include providing additional supervisory counseling, on-the-job training, or separating the employee from employment with the Service.

NOTE: The LERS recommends a course of action to the supervisor and the PFO/PHO, who make the final decision about what action will be taken. Customs Delegation Order Number 02-001, dated April 5, 2002, delegates the authority to PFO/PHO's to terminate the appointments of probationary/trial period employees.

E. If management makes the decision to remove the employee, the LERS will prepare the separation letter.

2. **Preparation of Separation Letter**

A. The attached sample letters provide the standard format and wording for separation letters. Two samples are provided as follows: (1) Competitive Service employees (Attachment 2); (2) Excepted Service employees with veterans preference who have not served more than 1-year of their trial period and non-preference eligibles who have no MSPB appeal rights (Attachment 3). The letters contain the following information: (1) the authority for taking the termination action; (2) paragraph outlining the specific performance or conduct deficiencies which led to the decision to terminate; (3) paragraph specifying the effective date of the action, or, in lieu of a specific date, a statement that the termination will be "effective upon receipt;" and (4) the letter will outline any limited MSPB and/or EEO appeal rights that may apply.


285

B.	The case file, i.e., documentation and evidence supporting the separation action, and the termination letter will be reviewed by the LERS' supervisor prior to being forwarded to the deciding official for signature.

C.	After the case has been reviewed by the LERS' supervisor, the LERS will finalize the letter and present it to the deciding official for signature. A copy of the information used to support the decision will also be sent to the deciding official. The LERS will keep a copy of the letter and any attachments.

3.	**Issuance of the Separation Letter**

A.	After the deciding official has signed the separation letter, the LERS will coordinate delivery of the letter through the appropriate supervisor/manager(s) in the employee's chain-of-command.

B.	The LERS will advise management that the original letter is given to the employee and that the employee should sign a receipt copy of the letter. Managers should be counseled that the employee's signature on the receipt copy is documentation that they received the letter NOT that the employee agrees with the contents of the letter. The manager retains the signed receipt copy.

NOTE: If the employee refuses to sign the receipt copy of the letter, the manager should write/certify on the receipt copy the date and time the letter was given to the employee and that the employee "refused to sign" the receipt copy.

C.	The LERS will ensure that management provides the employee with a copy of the MSPB regulations and appeal form at the time the separation letter is issued.

4.	**Issuance of Letter if Employee is Not at Work**

A.	There may be situations where the probationary/trial period employee may not be present at the work site to receive the termination letter. In such cases, the Merit Systems Protection Board (MSPB) has held that the probationary separation notice does *not* have to be received by the employee prior to the termination as long as the agency has made **diligent and reasonable** attempts to give *prior* notification to the employee.



B.  In order to ensure constructive delivery of the termination letter in the absence of the employee, all three of the following methods of delivery to the employee are to be used, **prior to the effective date of the separation**:  (1) express mail; (2) certified mail; (3) regular mail.

C.  If circumstances warrant, and as a last resort, personal delivery of the letter to the employee by an appropriate Service employee may be attempted at least one day **prior to the expiration of the probationary period**.

D.  In the event that the employee is not at home, constructive delivery will have been accomplished if the letter is left at the employee's residence (In one MSPB case, taping a copy of the letter to the employee's front door was considered appropriate service.).

5.  **Processing Actions and Maintaining Records**

A.  After the separation letter has been issued, the LERS will coordinate the processing of the action, including the SF 52, Request for Personnel Action, in the same manner as the processing of disciplinary and adverse actions.

B.  LERS located in Washington, D.C. will coordinate the processing of the action with HRM Employee Services.

C.  In field locations, the LERS will coordinate the processing of the action with the PFO staff who normally processes disciplinary/adverse actions.

D.  The case file will be maintained in the same manner as case files for disciplinary/adverse actions.

6.  **Appeals, Complaints, or Third Party Actions**

A.  If a third party action results from the termination of the probationary/trial period employee, e.g., MSPB appeal; EEO complaint; or other third party action, the LERS will function as the technical advisor, as with disciplinary/adverse actions.

# Performance or Conduct Problems Involving Probationary or Trial Period Employees

**\*\*Things to consider in determining appropriate action to correct performance or misconduct problems.\*\***

1. Does the problem(s) with this employee involve performance or conduct?

2. What are the specific performance/conduct deficiencies?

3. How did the supervisor communicate expectations to the employee, e.g., written performance standards; discussed ethics/conduct rules and regulations?

4. What are some specific examples of the poor performance/misconduct?

5. Was the employee aware he/she was not meeting job expectations?

6. Did the employee fail to improve/change their behavior to an acceptable level?

7. Did the supervisor document discussions with the employee, e.g., dates; times of meetings; places; results of discussions?

8. Is the employee suitable for long-term employment with the Federal government or is there sufficient cause to remove this employee from their position with the Service?

Attachment 1

