UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------X

YEMISI AKINYEMI,

PLAINTIFF,

-against-

MICHAEL CHERTOFF, Secretary,
Department of Homeland Security,

DEFENDANT.

---------------------------------------------X

DATE: October 29, 2007

TIME: 10:24 a.m.

EXAMINATION BEFORE TRIAL of the Defendant, MICHAEL CHERTOFF, Secretary, Department of Homeland Security, by GILBERT PATRICK MURPHY, taken by the Plaintiff, pursuant to Notice, held at the U.S. Attorney's Office Southern District of New York, 86 Chambers Street, New York, New York 10007, before a Notary Public of the State of New York.

A P P E A R A N C E S:

LAW OFFICES OF K.C. OKOLI, PC
Attorney for Plaintiff
330 Seventh Avenue, 15th Floor
New York, New York 10001
BY: K.C. OKOLI, ESQ.

MICHAEL J. GARCIA, ESQ.
United States Attorney for the
Southern District of New York
U.S. Department of Justice
Attorney for the Defendant
86 Chambers Street
New York, New York 10007
BY: JOHN D. CLOPPER, ESQ.
Assistant U.S. Attorney

ALSO PRESENT:
MELANIE ACEVEDO, ESQ.
U.S. Customs and Border Protection
RALPH TALARICO, ESQ.
The National Treasury Employees Union

* * *

G I L B E R T P A T R I C K M U R P H Y, called as a witness, having been first duly sworn by a Notary Public of the State of New York, was examined and testified as follows:

EXAMINATION BY
MR. OKOLI:

Q. Please state your name for the record.

A. Gilbert Patrick Murphy.

Q. Where do you reside?

A. 174 Brighton Avenue, Staten Island, New York 10301.

Q. Good morning.

A. Good morning.

Q. My name is K.C. Okoli. I represent the plaintiff in this lawsuit. I will be asking you a couple of questions and what I ask of you is your best recollection.

A. Right.

Q. If I ask you a question and you don't understand, please let me know and I will repeat the question and or rephrase it in such a way that you do understand.

MURPHY

If I ask you a question and you respond, I will assume that you fully understood the question; is that fair enough?

A. Fine.

Q. Where is your place of birth?

A. Jersey City, New Jersey.

Q. And for the record, what is your race?

A. White. Caucasian.

Q. And are you currently employed?

A. Yes.

Q. Who is your employer?

A. Department of Homeland Security.

Q. Any division of the Department of Homeland Security, any particular unit?

A. Customs. Customs and Border Protection.

Q. Thank you.

What's your highest level of education?

A. High school.

Q. When did you first become employed by the Customs and Border Protection, or its predecessor agency?

MURPHY

A. Uh, February 26, 1971.

Q. And what was your title when you were hired?

A. Sky marshal. Customs security officer.

Q. And what's your current title?

A. They keep changing it so often.

The Department of Homeland Security officer.

Q. And what are your duties in your current title?

A. I'm the firearms instructor for Newark, New Jersey. And collateral duties is -- I'm try to, to -- property control officer.

Q. And when you say, "property control officer," what does that mean, what does it entail?

A. Control of high-value merchandise belonging to the government. Automobiles, radios, radiation detectors, scopes, things like that.

Q. And does firearms instructor mean what it says?

MURPHY

A. Yes.

Q. And where is your current job posting, what is your current job location?

A. 1200 Corbin Street -- 1210 Corbin Street, in New -- Port Elizabeth.

Q. And that's in New Jersey?

A. That's correct.

Q. For how long have you been operating out of 1210 Corbin Street?

A. Ten years.

Q. When did you become a Department of Homeland Security officer?

A. I don't know what you mean.

The Department of Homeland Security officer, the predecessor to that was customs inspector. They were just absorbed into the Department of Homeland Security after 9/11. Now, it's the same position, same job, just a different title.

Do you want Homeland Security when it was created or when I had the job?

Q. I was actually just following up on the title that you gave. I asked you what your current title was.

MURPHY

A. Yes.

Q. And you said Department of Homeland Security officer.

A. Yes.

Q. That is your current title?

A. That's correct.

Q. When did you start using that title?

A. Okay, 2002.

Q. Is there such a title, that you are aware of, that is known as senior customs and border protection officer?

A. Not officially.

There were senior inspectors that were absorbed into Homeland Security, they still call them senior, but it no longer applies.

Q. Is there any title, official title, that you are aware of, that is known as customs and border protection officer?

A. Yes.

Q. And did you ever occupy that title?

A. Yes.

Q. For what time period were you in

that title?

A. 2001, 2002.

Q. Did you ever use the title senior customs and border protection officer at any time?

A. Yes.

Q. For what time period did you use that title?

A. 2001, 2002.

Q. 2001, 2002?

A. That's correct.

Q. In the year 2005, what title did you use?

A. Department of Homeland Security officer.

Q. And what grade level title is that?

A. GS 11.

Q. Are you still a GS 11?

A. Yes.

Q. Who is your current supervisor?

A. Deputy Edward Fox.

Q. For how long has Deputy Fox been your supervisor?

A. Two years.

Q. That would be starting from what year?

A. 2005.

Q. Do you remember what month in 2005?

A. No, I don't.

Q. Was it fall, summer --

A. In fall.

Q. Prior to Deputy Fox, who was your supervisor?

A. Uh, Deputy Robert Oscard, O-S-C-A-R-D.

Q. And do you know for what time period Deputy Oscard was your supervisor?

A. Well, eight years prior to 2001, so '93, '94.

Q. From '93 -- from are you saying --

A. 1993 to 2001 or 2002, whenever I went to work for Mr. Fox.

Q. Okay, let me just clear this up.

Is it 1992, 1993?

A. '93, '94, in there.

Q. Okay, between '93 and '94, you started working for Oscard?

A. That's correct.

Q. And you continued working for him --

A. Until Mr. Fox took over for him?

Q. And I believe you testified that you worked for Mr. Fox in 2005?

A. Okay, that would be it then. Yeah.

Q. I just wanted to be sure that there's nobody in between Oscard and Fox.

A. No.

Q. Do you know Yemisi Akinyemi --

A. Yes.

Q. -- the plaintiff in this case?

A. Yes.

Q. How did you come to know her?

A. On the gun range and her office was across the hall from the gun range in 1100 Raymond Boulevard.

Q. Have you ever been assigned to work out of any of the airports?

A. No.

Q. Do you know where Cape Liberty customs is located?

A. Yes.

Q. Where is it located?

MURPHY

A. Bayonne, New Jersey, the old MOTB center.

Q. Sorry?

A. Bayonne, New Jersey. It was a military base in Bayonne.

Military Ocean Terminal of Bayonne is called MOTB.

Q. Have you ever been to the Liberty Cruise terminal?

A. Yes.

Q. How often have you been there?

MR. CLOPPER: Objection. Compound.

Q. Have you been there more than one occasion?

A. Yes.

Q. Have you been there this year?

A. No.

Q. Were you there in 2006?

A. No.

Q. Were you there in 2005?

A. Yes.

Q. What was the occasion for your being there in 2005?

A. To clear passengers coming off a

MURPHY

cruise ship.

Q. To clear passengers coming off a cruise ship?

A. That's correct.

Q. Who assigned you to clear passengers coming off a cruise ship when you went there?

A. Mr. Oscard's office.

Q. Do you recall whether this occasion was fall, summer or something else?

A. Mostly the cruise ships come in in the summer, from say May to October.

Q. Do you know who Dominic Calise is?

A. Yes.

Q. On the day that you went to clear passengers, did you see Dominic Calise at the location?

A. I don't know which day you are speaking of.

We would go there maybe two or three times a month. It's not that I went there once. And each time you would go, it would be a different supervisor. Calise is a grade 12 supervisor.

Q. So, how many times would you say that you went to clear passengers at the Cape Liberty Cruise Terminal in the summer of 2005?

A. Okay, June, July, August, September. Three times a month for the six months. Eighteen.

Q. About eighteen times?

A. Yes.

Approximately.

Q. And on the occasions when you went to clear passengers, were you in uniform?

A. Yes.

Q. Did you ever go to the cruise terminal on the days that you were not on duty?

A. No.

Q. In the summer of 2005, did you ever pick up any passenger from the cruise terminal?

A. Pick up, as such?

MR. CLOPPER: Objection.

Vague and ambiguous.

MR. OKOLI: Okay.

MR. CLOPPER: Go ahead.

Q. Do you recall whether in the summer of 2005 any relation of yours traveled on a

cruise ship?

A. Yes.

Q. And who would that be?

A. My brother's widow, Eunice Murphy.

Q. Do you recall whether on any of the occasions that you were present at the Liberty Cruise Terminal whether Eunice Murphy came back from a cruise?

A. Yes.

Q. Do you remember whether on any of the other occasions that you went to the Cape Liberty Cruise Terminal you ever saw Yemisi Akinyemi at that location?

A. Yes.

Q. Do you recall how many times it was that you saw Yemisi Akinyemi at the Cape Liberty Cruise Terminal?

A. No, I don't.

Q. Do you recall ever seeing Yemisi Akinyemi at the Liberty Cruise Terminal at the same time that Dominic Calise was at that location?

A. I don't recall.

Q. Do you recall ever having a

conversation with Dominic Calise in which he indicated that he did not see your name on the roster for the day and asked what you were there for?

A. No.

Q. On the day that you Eunice Murphy returned from a cruise, were you on duty on that day?

A. Yes.

Q. Have you ever been to the Cape Liberty Cruise Terminal in uniform on a day you were not on duty?

A. No.

Q. Has anyone at customs CBP -- I will use CBP for short.

A. Yes.

Q. Has anyone at CBP from 2005 to the present time that you are sitting here before me, has anyone from CBP questioned you concerning whether or not you have been at Cape Liberty Cruise Terminal in the summer of 2005 when you were not on duty?

A. No.

Q. Just to be clear, is it your

testimony that nobody in CBP management up until this day has ever questioned you as to whether or not you went to Cape Liberty Cruise Terminal in uniform on a day that you were not on duty?

MR. CLOPPER: Objection. Asked and answered.

You can go ahead and answer, to the best of your ability.

A. The question was?

MR. OKOLI: Could you read back the question.

(Whereupon, the referred to question was read back by the Reporter.)

A. That is correct, no one has questioned me about it.

Q. Okay.

Do you know what restricted areas at customs facilities are?

A. Yes.

Q. And give us an example of some restricted areas that you are aware of.

A. Uh, the area I'm in, the high value area. The, uh, seized merchandise room. The

MR. CLOPPER: You can answer, to the best of your ability, yes.

A. As I stated, extended period of time. I didn't say fifteen minutes or a half of hour.

If you are waiting for a friend to get off, you can wait there. But it's up to the supervisor to let you stay there.

Normally, after a half and hour, they will ask you to leave.

Q. As you sit here today, you have been working for the customs since 1971, correct?

A. Correct.

Q. As you sit here today, do you have knowledge of anyone who was terminated from service at CBP solely on account of being present at a restricted area?

A. I have heard that Yemisi was, but not to my knowledge, this was a rumor.

That was the only time I heard of it.

Q. So, other than the plaintiff, rumor or fact, whatever it is, other than what you

MURPHY

heard concerning the plaintiff, is it fair to say that you have not heard any other rumor or story of someone being terminated for the sole purpose of accessing a restricted area?

A. That's correct.

MR. OKOLI: Okay that will be it. Thank you.

MR. CLOPPER: Thank you Officer Murphy.

If you don't mind, I'm going to step out for just a moment and speak with AC counsel and counsel from the NTEU.

I will ask Mr. Murphy to stay here for a moment?

THE WITNESS: Sure.

MR. CLOPPER: We will just discuss whether or not -- I have a right to ask questions to you, we are just going to quickly discuss whether or not there are any questions I'm going to ask, and I will be back in just a moment.

(Whereupon, an off-the-record discussion was held.).