ORIGINAL

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------X
YEMISI AKINYEMI,

                            PLAINTIFF,
                                              Index No.
            - against -                       07CV4048

MICHAEL CHERTOFF, Secretary,
Department of Homeland Security,

                            DEFENDANT.
-------------------------------------------X
```

DATE: October 26, 2007

TIME: 1:31 P.M.

EXAMINATION BEFORE TRIAL of the Defendant, MICHAEL CHERTOFF, Secretary, Department of Homeland Security, by a witness, ELBA J. RILEY, taken by the Plaintiff, pursuant to Notice, held at the U.S. Department of Justice, U.S. Attorney's Office, Southern District of New York, 86 Chambers Street, New York, New York 10007, before Sharon Dirzis, a Stenotype Reporter and Notary Public of the State of New York.

```
 1

 2

 3    A P P E A R A N C E S:

 4
      K.C. OKOLI, ESQ.
 5         Attorney for the Plaintiff
           330 Seventh Avenue
 6         15th Floor
           New York, New York 10001
 7

 8
      U.S. DEPARTMENT OF HOMELAND SECURITY
 9    U.S. CUSTOMS AND BORDER PROTECTION
           Attorneys for the Defendant
10         One Pennsylvania Plaza
           11th Floor
11         New York, New York 10119
           BY:  CYNTHIA J. PREE, ESQ.
12              Assistant Counsel

13

14    MAURY R. WINKLER, ESQ.
           Attorney for ELBA J. RILEY
15         Military Park Building
           60 Park Place
16         Suite 1104
           Newark, New Jersey 07102

17

18
      U.S. DEPARTMENT OF JUSTICE
19    U.S. ATTORNEY'S OFFICE
      SOUTHERN DISTRICT OF NEW YORK
20         86 Chambers Street
           New York, New York 10007
21         BY:  JOHN D. CLOPPER, ESQ.
                Assistant United States Attorney
22

23

24

25
```

```
 1
 2    E L B A   J.   R I L E Y, called as a witness, having
 3    been first duly sworn by a Notary Public of the State
 4    of New York, was examined and testified as follows:
 5    EXAMINATION BY
 6    MR. OKOLI:
 7         Q    Please state your name for the record.
 8         A    My name is Elba J. Riley.
 9         Q    Please state your address for the record.
10         A    My address is c/o U.S. Customs and Border
11    Protection, 1100 Raymond Boulevard, Newark,
12    New Jersey 07102.
13         Q    Good afternoon. My name is K.C. Okoli, and
14    I represent the plaintiff in this lawsuit which is
15    brought against the treasury secretary. I'll be
16    asking you a couple of questions at this hearing on
17    this lawsuit.
18              What I ask of you is for your best
19    recollection. If I ask you a question and you don't
20    understand it, please let me know, and I'll either
21    repeat the question or ask it in a way that you do
22    understand.
23              I believe that other than, perhaps, any
24    objections that may be made, this should be a very
25    short deposition, but in the event that you wish to
```

```
1                     RILEY
2      can serve it upon me.  I'll accept service.
3           MS. PREE:  You can also serve it on
4      CBP, too.
5           MR. OKOLI:  Let the record reflect
6      that both the CBP and private attorney for
7      Ms. Riley would accept service of any
8      subpoena on her behalf.
9    Q  What's your place of birth?
10   A  San Sebastian, Puerto Rico.
11   Q  For the record, what is your race?
12   A  Hispanic.
13   Q  Who is your employer?
14   A  CBP.
15   Q  What?
16   A  Customs and Border Protection.
17   Q  What's your current job title?
18   A  My current title is import specialist.
19   Q  What's your highest level of education?
20   A  Bachelor's degree.
21   Q  What's your major?
22   A  Foreign languages.
23   Q  When did you graduate with a Bachelor's
24   degree, what year?
25   A  1993.
```

| | | |
|---|---|---|
| 1 | | RILEY |
| 2 | A | Eleven. |
| 3 | Q | When you were initially hired by the CBP, were you required to complete a probationary period as part of the employment? |
| 6 | A | Yes. |
| 7 | Q | When did that probationary period start? |
| 8 | A | January 2004. |
| 9 | Q | When did it end? |
| 10 | A | January 2006. |
| 11 | Q | During the time of probation, who was your supervisor? |
| 13 | A | I don't recall. We have so many. We have different supervisors. |
| 15 | Q | Do you recall any of your supervisors? |
| 16 | A | Brian Talrymple, T-A-L-R-Y-M-P-L-E. |
| 17 | Q | Do you know Mr. Talrymple's title? |
| 18 | A | He's a supervisor for inspectors. |
| 19 | Q | Any other supervisors of yours that you recall during the time of your probation? |
| 21 | A | Joseph Mannucci. |
| 22 | Q | Could you please spell that? |
| 23 | A | M-A-N-N-U-C-C-I. |
| 24 | Q | He was also your supervisor? |
| 25 | A | Supervisor, also. |

14

1       RILEY
2  you ever see off your parents at the airport or
3  traveling from Port Elizabeth Seaport?
4           MR. WINKLER:  I'll object.  Asked and
5       answered.
6   Q    You can go ahead and answer.
7        Is it your testimony that at no time did
8  you ever see off your parents, between 2003 and 2005,
9  see them off travel from the airport?
10          MR. WINKLER:  Are you saying seeing
11      them off for travel?
12          MR. OKOLI:  Yes.
13  A    Yes, that's right.  They have never been
14  here since I have been here.
15  Q    Have you ever seen any relation off at the
16  gate area of an airport?
17  A    I would like to invoke my Fifth Amendment
18  not to answer that question.
19          MR. OKOLI:  Shall we call the judge?
20          MR. CLOPPER:  Are you going to invoke
21      that?
22          MR. WINKLER:  Yes.
23          MR. CLOPPER:  Hold on.
24          Just as a suggestion, do you think it
25      would be fruitful, at all, to have you go

19

1              RILEY
2        Counsel's Office of U.S. Customs and Border
3        Protection, Cynthia Pree.
4              We also have a stenographer here, and
5        we are currently on the record, and the
6        stenographer is taking down a transcript.
7              THE COURT: Good. So, what is the
8        problem?
9              MR. OKOLI: Good afternoon, Judge. My
10       name is K.C. Okoli.
11             I posed a question which I will have
12       the stenographer read out and then the
13       objection of counsel and the witness
14       invoking Fifth Amendment privilege.
15             Judge, do you hear me?
16             THE COURT: Yes.
17             MR. OKOLI: Should I ask the
18       stenographer to read the question that I
19       posed and the objection of counsel?
20             THE COURT: Yes, let's do that.
21             (Whereupon, the referred to portion of
22       the record was read back.)
23             THE COURT: Who wants to go first in
24       arguing about whether there is a proper
25       invocation of the Fifth Amendment

20

1         RILEY
2    privilege?
3         Mr. Clopper, do you have a statement
4    to make here or do you want to let
5    Mr. Okoli make the objection here?
6         MR. CLOPPER: Your Honor, I think I'm
7    going to allow Mr. Okoli state the basis
8    for the reasons seeking a ruling, and then
9    perhaps Mr. Winkler might have something to
10   say.
11        Actually, I have no view one way or
12   the other on the invocation of the
13   privilege.
14        THE COURT: Okay.
15        MR. OKOLI: Your Honor, just by way of
16   background briefly, the lawsuit is a suit
17   that is brought by my client, a black
18   woman, who claimed that she was treated
19   differently and terminated from her
20   employment when, in fact, other people had
21   done similar things or more egregious
22   things and are still working for the
23   Customs.
24        That's the general thing, and then the
25   question is -- one of the things is as that

21

1       RILEY
2       particular matter goes, what they had
3       against her was that she was found in a
4       restricted gate area seeing her husband off
5       who was then in bereavement and traveling
6       to go take care of burial arrangements in
7       Nigeria.
8            That is the reason why she lost her
9       job with the Customs.  At the time she was
10      on probation and during the investigation
11      of this, she mentioned other people who
12      were also on probation and did similar
13      things or worse things, and they are still
14      working for the U.S. Customs, and she
15      claims that the reason she was let go and
16      not these people is she's a black woman of
17      Nigerian national origin, and my question
18      to the witness essentially is to help
19      determine whether, in fact, she was also at
20      a restricted area at the airport seeing off
21      relations, and she's claiming the Fifth
22      Amendment.
23           My understanding of the Fifth
24      Amendment -- in fact, the wording of it
25      clearly makes it applicable to a criminal

22

1  RILEY
2  case.
3  If I may, the Fifth Amendment, that
4  particular portion says "nor shall be
5  compelled in any criminal case to be a
6  witness against himself."
7  This is the exact wording of the Fifth
8  Amendment, so I contest -- first of all, I
9  don't think there's anything in that
10 question that would generate the invocation
11 of the Fifth Amendment, and even if there
12 was, being that this is a civil case and
13 not a criminal case, I don't believe the
14 Fifth Amendment applies.
15         THE COURT:  Well, I disagree with you
16 on your legal premise.
17         The Fifth Amendment can be invoked in
18 a civil lawsuit and indeed in certain other
19 contexts, if the witness has a well-founded
20 fear that her answer might tend to
21 incriminate her, perhaps if combined
22 with other information, and I gather that
23 Mr. Winkler, her personal attorney, has
24 discussed this matter with her and has
25 advised her to invoke the Fifth Amendment

23

1              RILEY
2      privilege, and she has done so.
3              That might conceivably give some
4      advantage to plaintiff in this lawsuit
5      because in a civil lawsuit, unlike a
6      criminal prosecution, sometimes a negative
7      inference is drawn when someone asserts
8      their privilege against self-incrimination,
9      so this is not something that people do
10     lightly, but generally they are allowed to
11     invoke their Fifth Amendment privilege in a
12     civil deposition, and sometimes there is a
13     claim that the witness could not possibly
14     have any worry about any sort of criminal
15     prosecution by giving an answer to this
16     question.
17             I gather that this is a type of
18     conduct which some people may think of as
19     criminal.  I don't know if we're talking
20     about a felony here, but some sort of crime
21     may flow if people do what the plaintiff is
22     apparently accused of doing which is to
23     bypass Homeland Security to see a relative
24     at an airport.  I don't know whether that's
25     any big crime.  Maybe it's serious enough

```
 1                    RILEY
 2   have you ever seen any relative off at the
 3   gate area of any airport, and I think
 4   Mr. Winkler is thinking along the same
 5   lines that I have been, but, Mr. Winkler,
 6   if you want to say something on the record,
 7   you can.
 8        MR. WINKLER:  You have articulated my
 9   position very accurately.
10        THE COURT:  All right.  I don't have a
11   clear idea what other connection, if any,
12   Ms. Riley has with this particular case.
13        Is it that she is just a similarly
14   situated person who was employed in a job
15   similar to the plaintiff?
16        MR. OKOLI:  Yes, Your Honor.  I think,
17   in fact, they were hired the same day or a
18   day apart from each other.
19        THE COURT:  Well, you may be able to
20   explore more this line of questioning with
21   other witnesses, but this witness has to
22   consider her own interests; her interests
23   in her job and even the possibility of
24   criminal prosecution, so she does have her
25   right, and she can invoke that right in a
```

28

```
 1                    RILEY
 2     civil deposition, and, as I say, sometimes
 3     somebody such as Judge Peck in a trial
 4     situation may give some sort of instruction
 5     to the jury that they can draw some
 6     negative inference from the fact that the
 7     witness chose not to answer that question
 8     prior to trial, but I'm not going to order
 9     her to answer it.
10              MR. OKOLI:  Thank you, Your Honor.
11              I just wish to note my exception on
12     the record.
13              THE COURT:  That's fine.  If everyone
14     is satisfied, I'm going to hang up, and I'm
15     available the rest of this afternoon.
16              If there's another problem, place
17     another conference call.
18              MR. CLOPPER:  Thank You, Your Honor.
19              (Whereupon, the conference telephone
20     call was ended.)
21              MR. OKOLI:  I just have one question
22     to clarify.
23   Q   When you began employment, you started at
24     level seven, and you're now at level eleven.
25              Is it fair to say you received a promotion?
```

DIAMOND REPORTING, INC.        (718) 624-7200

29

```
 1                    RILEY
 2      A    Yes.
 3             MR. OKOLI:  That is it.  No further
 4      questions.
 5             MR. CLOPPER:  Let's take a brief
 6      recess.
 7             (Whereupon, a brief recess was taken.)
 8             MR. CLOPPER:  I have no questions at
 9      this time.  We can conclude the deposition.
10             Thank you very much.
11             (Whereupon, at 2:23 p.m., the
12      Examination of this Witness was concluded.)
13
14
15                              _____
16                              ELBA J. RILEY
17
18
19   Subscribed and sworn to before me
20   this _____ day of _____, 2007
21   _____
22          NOTARY PUBLIC
23
24
25
```