1

```
                UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF NEW YORK
                ---------------------------------------X
                YEMISI AKINYEMI,

                                                PLAINTIFF,

                            -against-


                MICHAEL CHERTOFF, SECRETARY, DEPARTMENT
                OF HOMELAND SECURITY,

                                                DEFENDANT.
                ---------------------------------------X


                                DATE: October 25, 2007

                                TIME: 10:30 a.m.



                    EXAMINATION BEFORE TRIAL of the

                Defendant, MICHAEL CHERTOFF, SECRETARY DEPARTMENT

                OF HOMELAND SECURITY, by a witness, EDWARD FOX,

                taken by the Plaintiff, pursuant to a Court Order

                and to the Federal Rules of Civil Procedure, held

                at the office of MICHAEL J. GARCIA, ESQ., 86

                Chambers Street, New York, New York 10007, before

                KATE FRANCOMACARO, a Notary Public of the State of

                New York.
```

```
 1

 2     A P P E A R A N C E S:

 3

 4           K.C. OKOLI, ESQ.
                  Attorney for the Plaintiff
 5                330 Seventh Avenue, 15th floor
                  New York, New York 10001

 6

 7
             MICHAEL J. GARCIA, ESQ.
 8           UNITED STATES ATTORNEY
             FOR THE SOUTHERN DISTRICT
 9                Attorneys for the Defendant
                  86 Chambers Street
10                New York, New York 10007
             BY: JOHN DALTON CLOPPER, ESQ.
11

12
           ALSO PRESENT:
13              CYNTHIA J. PREE

14            *              *              *

15

16

17

18

19

20

21

22

23

24

25
```

1
2   E D W A R D     F O X, called as a witness, having
3   been first duly sworn by a Notary Public of the
4   State of New York, was examined and testified as
5   follows:
6   EXAMINATION BY
7   MR. OKOLI:
8       Q.   Please state your name for the record.
9       A.   Edward Fox.
10      Q.   Where do you reside?
11      A.   At 1210 Corbin Street, Elizabeth, New
12   Jersey 07201.
13      Q.   Good morning.  My name is K.C. Okoli.
14   I represent the Plaintiff in this lawsuit and I
15   will asking you a couple of questions in connection
16   with the lawsuit.  What I ask is your best
17   recollection when I ask you a question and if you
18   don't understand, let me know and I will either
19   rephrase the question or ask the question in a way
20   that you understand and if you anticipate what my
21   question is going to be, wait until I finish asking
22   the question.  The reason for that is the court
23   reporter lady here can't take down two people
24   speaking at the same time and if during the course
25   of the deposition, if you need to take a break, you

```
                              FOX
 1
 2    may do so we just have it on record that we are
 3    taking a break.  If I ask you a question and you
 4    respond, I will assume that you understood the
 5    question.  Fair?
 6         A.    Fair enough.
 7         Q.    And verbalize all of your answers
 8    instead of a shake or nod of the head because she
 9    can't take down gestures.
10               What is your full name?
11         A.    Edward Thomas Fox.
12         Q.    And the address that you just gave, is
13    that your work address?
14         A.    Yes.
15         Q.    Since when have you been working out of
16    that location?
17         A.    I think I have been there since 1997.
18         Q.    And who is your employer?
19         A.    U.S. Customs and Border Protection.
20         Q.    And what's your current job title?
21         A.    Deputy chief officer.
22         Q.    Since when did you become Deputy chief
23    officer?
24         A.    In 2005.
25         Q.    Do you know what month in 2005?
```

```
 1                         FOX
 2      A.      I am afraid I don't recall.
 3      Q.      Was that before December of 2005?
 4      A.      Yes, it was before December of 2005.
 5      Q.      Prior to you becoming Deputy chief
 6  officer, what title did you hold?
 7      A.      A supervisor of CBP.  Short for customs
 8  and border protection.
 9      Q.      While supervisor of CBP, which location
10  did you function?
11      A.      The same location.
12      Q.      And at the time that you were --
13      A.      Actually I should correct that.  I did
14  have, as a supervisory officer, I did work in a few
15  different locations around the border.
16      Q.      Do you recall which locations you
17  worked in 2005?
18      A.      Yes, 1210 Corbin Street.
19      Q.      Where is your place of birth?
20      A.      Brooklyn, New York.
21      Q.      And just for the record, what's your
22  race?
23      A.      White.
24      Q.      What is your highest level of
25  education?
```

```
                            FOX
 1
 2      A.      I have some college.  I did not
 3  complete my college degree.
 4      Q.      Which college is that?
 5      A.      Rutgers University, Cook College.
 6      Q.      As deputy chief officer, what are your
 7  duties?
 8      A.      My duties, my current duties?
 9      Q.      Yes.
10      A.      To implement programs that come from
11  headquarters into the Newark seaport.
12      Q.      What you just described as your duties,
13  has that been the case since you became deputy
14  chief officer?
15      A.      Yes.
16      Q.      In your position as senior CBP officer,
17  what were your duties?
18      A.      My duties were to supervise the
19  bargaining unit over performing bargaining units of
20  first line supervisors.
21      Q.      Who would the officers be?
22      A.      CBP officers.
23      Q.      When did you first start working for
24  the customs and its predecessor?
25      A.      In September of 1986.
```

```
                              FOX
 1
 2      A.     A customs and border protection officer
 3  in Newark seaport.
 4      Q.     Do you know Mr. Matella is a union
 5  representative?
 6      A.     He is.  I am not certain exactly what
 7  position he holds.
 8      Q.     Have you ever met with Mr. Matella in
 9  his capacity as an union representative?
10      A.     I have.
11      Q.     And can you give us an estimate of how
12  many times you met with him in his capacity as a
13  union representative?
14      A.     I would be speculating.  More than
15  once.
16      Q.     Let me break it down this way.  Prior
17  to 1995, had you met him in his capacity as a union
18  representative?
19      A.     I did not.
20      Q.     In 1995, did you meet with him in his
21  capacity as a union representative?
22      A.     No.
23      Q.     Let me go back.  Prior to 2005, had you
24  met Mr. Matella in his capacity as a union
25  representative?
```

                                  FOX

1
2     A.    I don't recall.
3     Q.    Do you recall whether in 2005 you met
4  with him in his capacity as a union representative?
5     A.    Yes.
6     Q.    Other than Mr. Matella, had you met
7  with other union representatives that you know as
8  CBP?
9     A.    Do I know any other union
10 representatives who are CBP officers?
11    Q.    Yes, had you met with these other CBP
12 officers in their capacity as union
13 representatives?
14    A.    Yes.
15    Q.    And did you meet with these union
16 representatives as part of an investigation of an
17 employee?
18    A.    I have met with union reps as part of
19 the investigations of employees, yes.
20    Q.    Do you know how many times you have met
21 with union reps as part of the investigations of an
22 employee?
23    A.    I can't tell you.  I would have to
24 check my records.
25    Q.    When you were a union member, did you

```
                          FOX
1
2       Q.      Did you meet with Mr. Matella in
3   connection with an investigation of the Plaintiff's
4   conduct on December 5, 2005?
5       A.      I am not certain of the date, but I did
6   meet with Mr. Matella in connection with the
7   Plaintiff.
8       Q.      How many times did you meet with
9   Mr. Matella and the Plaintiff in connection with
10  this investigation?
11      A.      I am not certain.  I believe it was
12  twice, but I am not certain.
13      Q.      Do you recall how the first meeting
14  came about?
15      A.      I was asked to sit in on a meeting with
16  the employee, union rep and the employee
17  supervisor.
18      Q.      Who asked to you sit in at this
19  meeting?
20      A.      The employee's department deputy chief.
21      Q.      Who is the employee's department deputy
22  chief?
23      A.      Robert Hoscou.
24      Q.      Were you told this verbally or was this
25  a memo to this effect?
```

```
 1                         FOX
 2      A.      Verbally.
 3      Q.      The first meeting, who was present at
 4   this meeting?
 5      A.      I know for certain -- I believe it was
 6   the Plaintiff, Mr. Matella and Dominick Calise who
 7   I believe at the time was a first line supervisor.
 8      Q.      What happened at this meeting?
 9      A.      To the best of my recollection, there
10   was a was a question about some behavior in which
11   the Plaintiff had engaged that the first line
12   supervisor was looking to get a statement from the
13   employee on.  When we met Mr. Matella, he asked if
14   we had done a general notice and Winegarden rights
15   and Kenny's rights.  I did not know prior to the
16   meeting what the nature was.  I think we stopped
17   there, broke, went back and I consulted with LER
18   about the general nature and we proceeded to give
19   the general notice Winegarden rights and Kenny's
20   rights.
21      Q.      I am trying to focus on the first
22   meeting.  Do you recall whether the Plaintiff was
23   asked to give a written statement at that meeting?
24      A.      I don't recall.
25      Q.      Do you recall Lorraine Spina being at
```

1                           FOX
2  that meeting?
3       A.    I do know her.
4       Q.    The very first meeting, do you recall
5  her being at that very first meeting?
6       A.    I don't recall.
7       Q.    Did you ask any questions at the very
8  first meeting?
9       A.    I don't recall.
10      Q.    Did you make any notes at that first
11 meeting?  Did you take any notes?
12      A.    I don't recall.  I apologize, but I
13 don't recall.
14      Q.    Did you observe anyone taking notes at
15 the very first meeting we are talking about?
16      A.    Not that I am aware of.
17      Q.    Was that first meeting audio-taped?
18      A.    No.
19      Q.    Was it video-recorded?
20      A.    No.
21      Q.    Was it recorded mechanically by a
22 stenographer?
23      A.    No.
24      Q.    Is there a document that you are aware
25 of that would have the people who were present at

```
 1                           FOX
 2     that very first meeting?
 3          A.    I am not aware if one exists or not.
 4          Q.    Where did this meeting take place?
 5          A.    1210 Corbin Street.
 6          Q.    Do you recall whether it took place in
 7     someone's office or in the hall or in a conference
 8     room?
 9          A.    In someone's office.
10          Q.    Do you recall whose office it was?
11          A.    I thought it was the office of Dominick
12     Calise, but I am not certain.
13          Q.    What was your understanding of the
14     purpose of the meeting when you were asked to sit
15     in?
16          A.    That there had been some question about
17     some actions were taken by the Plaintiff and that
18     the supervisor was going to ask the Plaintiff to
19     give a statement as to what exactly happened.
20          Q.    So there was going to be some
21     investigation of the conduct of the Plaintiff?
22          A.    At the point I went into the meeting, I
23     wasn't certain whether there was an investigation
24     or some sort of routine operational questions.
25          Q.    But you understood that the Plaintiff
```

1                          FOX

2      of Winegarden rights during any previous

3      investigation.

4           Q.      As of the time, did you know that prior

5      to the investigation of an employee who is a union

6      member that that employee is entitled to Winegarden

7      rights?

8           A.      Say that to me again.

9           Q.      Prior to this meeting with an employee,

10     did you know that for an employee, a union member

11     to be questioned in any way, shape or form, that

12     person has to be given a statement of certain

13     rights?

14              MR. CLOPPER: Objection.  Vague and

15     ambiguous as to any shape or form.

16          Q.      Prior to your meeting with Mr. Matella

17     and the Plaintiff, did you know that for an

18     employee to be questioned, an employee who is a

19     union member, that that employee had to be given a

20     statement of certain rights including Winegarden

21     rights?

22              MR. CLOPPER: Objection.  It assumes

23     that it had to be done for every case.  Go ahead

24     and answer.

25          A.      My understanding was that if an

```
 1                            FOX
 2   employee was being questioned and the employee
 3   believed it might lead to discipline, that they
 4   were entitled to Winegarden rights.
 5        Q.    As you sit here today, do you know if
 6   the questioning of Ms. Akinyemi led to a
 7   discipline?
 8        A.    I assume since we are sitting in a
 9   deposition that it did.
10        Q.    At the meeting that in which you were
11   present, who was the most senior member.  When I
12   say the most senior member, the most senior
13   employee of CBP at the meeting at which you recall?
14        A.    It was probably me.
15        Q.    Were you representing management at
16   that meeting?
17        A.    I was serving as a witness.  I was not
18   the supervisor who was conducting the discussion
19   with the Plaintiff so I was serving as a witness.
20        Q.    When you say you were serving as a
21   witness, were you serving as a witness on behalf of
22   management?
23        A.    Yes.
24        Q.    As you sit here today, do you have
25   personal knowledge of anyone who was separated from
```

```
 1                         FOX
 2   service at CBP solely for accessing a restricted
 3   area?
 4        A.    I do not.
 5        Q.    Do you know Jolanta Gluba?
 6        A.    I know the name.  I don't know the
 7   individual.
 8        Q.    Do you know Alba Mandez?
 9        A.    No.
10        Q.    Do you know Shamilla Hock?
11        A.    No.
12        Q.    Or Asharef Asad?
13        A.    I know the name, but not the
14   individual.
15        Q.    Do you know whether she is an employee
16   of the CBP?
17        A.    That's how I recognize the name, yes.
18        Q.    What else do you know about Asharef
19   Asad?
20        A.    I am sorry.  I didn't hear you.
21        Q.    Other than Asharef Asad being a CBP
22   employee, what else do you know about Asharef
23   Asad?
24        A.    Nothing.
25        Q.    How do you know that she is a CBP
```

| | | |
|---|---|---|
| 1 | | FOX |
| 2 | this statement was submitted on 12/19/05 by | |
| 3 | Ms. Akinyemi? | |
| 4 | A. | No, I am afraid it doesn't. Would you |
| 5 | like me to read the whole document? | |
| 6 | Q. | Yes, you can. It does not refresh your |
| 7 | recollection? Were you present when Plaintiff's | |
| 8 | Exhibit 1 at today's deposition was given to | |
| 9 | Ms. Akinyemi? | |
| 10 | A. | This document? |
| 11 | Q. | Yes. |
| 12 | A. | Yes. |
| 13 | Q. | And were you at that meeting of |
| 14 | 12/19/05 when it was given to her? | |
| 15 | A. | Yes, again I don't recall the specific |
| 16 | date. | |
| 17 | Q. | Do you have any reason to believe that |
| 18 | the date 12/19/05 on the top of the document is | |
| 19 | incorrect? | |
| 20 | A. | I do not. |
| 21 | Q. | The second sentence says, "The written |
| 22 | statement and subsequent interview were in regards | |
| 23 | to an allegation that Officer Akinyemi misused her | |
| 24 | position as a CBP officer." Do you see that? | |
| 25 | A. | Yes. |

```
 1                           FOX
 2        Q.     Does that refresh your recollection as
 3   to an interview following the submission of a
 4   written statement prior to 12/19/05?
 5               MR. CLOPPER: Objection.  Asked and
 6   answered.  You can answer.
 7        A.     It does not.
 8               MR. OKOLI: Thank you.
 9               MR. CLOPPER: I have no questions for
10   Officer Fox.  I take it the deposition is
11   concluded.
12               (Whereupon, at 11:00 a.m., the
13   Examination of this Witness was concluded.)
14
15
16                                   _____
                                         EDWARD FOX
17
18   Subscribed and sworn to before me
19   this _____ day of _____, 2007.
20
     _____
21         NOTARY PUBLIC
22
23
24
25
```