2    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
3    ----------------------------------------X
     YEMISI AKINYEMI,
4
                              PLAINTIFF,
5
                         Case No:
6                        07CV 4048 (CM) (AJP)

7              -against-

8    MICHAEL CHERTOFF, Secretary,
     Department of Homeland Security,
9
                         DEFENDANT.
10   ----------------------------------------X
                    DATE:  October 29, 2007
11                  TIME:  10:55 a.m.

12

13        EXAMINATION BEFORE TRIAL of the

14   Defendant, MICHAEL CHERTOFF, Secretary,

15   Department of Homeland Security, by BRENDAN

16   McPHAIL, taken by the Plaintiff, pursuant to

17   Notice, held at the U.S. Attorney's Office

18   Southern District of New York, 86 Chambers

19   Street, New York, New York 10007, before a

20   Notary Public of the State of New York.

21

22

23

24

25

2    A P P E A R A N C E S:

3

4

5    LAW OFFICES OF K.C. OKOLI, PC
         Attorney for Plaintiff
6        330 Seventh Avenue, 15th Floor
         New York, New York 10001
7        BY:  K.C. OKOLI, ESQ.

8

9    MICHAEL J. GARCIA, ESQ.
         United States Attorney for the
10       Southern District of New York
         U.S. Department of Justice
11       Attorney for the Defendant
         86 Chambers Street
12       New York, New York 10007
         BY:  JOHN D. CLOPPER, ESQ.
13           Assistant U.S. Attorney

14

15

     ALSO PRESENT:
16       MELANIE ACEVEDO, ESQ.
         U.S. Customs and Border Protection
17       RALPH TALARICO, ESQ.
         The National Treasury Employees Union

18

19

20
             *         *         *
21

22

23

24

25

2      B R E N D A N    M c P H A I L, called as a

3      witness, having been first duly sworn by a

4      Notary Public of the State of New York, was

5      examined and testified as follows:

6

7      EXAMINATION BY

8      MR. OKOLI:

9           Q.    Please state your name for the

10     record.

11          A.    Brendan McPhail.

12          Q.    Where do you reside?

13          A.    177 Edgewood Drive, Orangeburg, New

14     York 10962.

15          Q.    Good morning.

16          A.    Hello.

17          Q.    My name is K.C. Okoli.  I represent

18     Yemisi Akinyemi in this lawsuit.

19               And I will be asking you a couple

20     of questions in connection with the lawsuit.

21     What I ask of you is your best recollection.

22     If I ask a question and you don't understand

23     the question, please let me know and I will

24     either rephrase the question or ask it in such

25     a way that you do understand.

```
 1                      McPHAIL

 2        A.   Not really.  Not on the job.

 3        Q.   Do you have a middle initial?

 4        A.   I do.

 5        Q.   And what's your middle initial?

 6        A.   L.

 7        Q.   And what does it stand for?

 8        A.   Luke.

 9        Q.   And where is your place of birth?

10        A.   What hospital?

11        Q.   No, no, no --

12        A.   Bronx.

13        Q.   Okay.

14        A.   Bronx, New York.

15        Q.   And just for the record, what is

16   your race?

17        A.   What's my race?

18        Q.   Yes.

19        A.   Irish-American.

20        Q.   I wasn't trying to be facetious,

21   the thing is this document, somebody will see

22   it and I know, of course I know, everybody here

23   can look at you and see what it is, at least

24   guess, but the people who read this are not

25   able to do that.
```

1                            McPHAIL

2          A.    Okay.

3          Q.    So, sometimes I will ask these

4     questions, it's just that we are making a

5     record.

6          A.    Okay.

7          Q.    And are you currently employed?

8          A.    Yes.

9          Q.    And who's your employer?

10         A.    Customs and Border Protection.

11         Q.    What's your highest of level of

12    education?

13         A.    Four year degree from college.

14         Q.    Sorry?

15         A.    Four year degree from college.

16         Q.    And which college was that?

17         A.    Okay, the first two years at Iona,

18    and two years at FAU, at Florida Atlantic

19    University, down in Boca Raton, Florida.

20         Q.    Since when did you become employed

21    by the Customs and Border Protection?

22         A.    What year?

23         Q.    Yes.

24         A.    1984.

25         Q.    When you became first employed,

```
 1                        McPHAIL
 2        A.    I think it was Loraine Spina.
 3        Q.    Do you know what Ms. Spina's title
 4  was at the time?
 5        A.    She was my supervisor.
 6        Q.    I'm talking of her official title,
 7  do you know what her official title was?
 8        A.    Official meaning what, sir?
 9        Q.    CBP title.
10        A.    I guess SCI Lorraine Spina.
11  Supervisor Customs Inspector Loraine Spina.
12        Q.    Do you know Yemisi Akinyemi?
13        A.    Yes, I do.
14        Q.    How did you come to know Yemisi
15  Akinyemi?
16        A.    She worked at DAU with me.
17        Q.    When you say DAU --
18        A.    Well, I'm sorry, DAU or BSC.
19              It is used to be the Document
20  Analysis Unit and then they switched it to
21  Business Service Center.  But they both the
22  same.
23        Q.    So, DAU is the same thing as BSC?
24        A.    BSC.
25        Q.    Did you and Ms. Akinyemi share the
```

McPHAIL

1

2    Border Protection officers profile Nigerians at

3    Newark International Airport?

4              MR. CLOPPER:  Objection.

5              That question calls for information

6         covered by the law enforcement privilege

7         and I'm going to instruct the witness

8         not to answer.

9         Q.    Do you recall being questioned by

10   an EEO officer in connection with

11   Ms. Akinyemi's complaint?

12        A.    Yes.

13        Q.    Do you recall providing an unsworn

14   statement to the person who questioned you?

15        A.    Excuse me?

16        Q.    Do you recall providing a statement

17   to the person who questioned you?

18        A.    Over the phone.

19        Q.    Did you ever have occasion to

20   review the statement which you provided?

21        A.    Yes.

22        Q.    Did you ever sign any statement,

23   unsworn statement, that you provided?

24        A.    I signed at the bottom copy, I

25   think so.

```
1                          McPHAIL
2          Q.    Okay, before you signed, did you
3     read the questions and answers on the document
4     that you signed?
5          A.    Yes.
6               MR. OKOLI:  I would like to have
7               marked for identification for today's
8               deposition a three-page document, I
9               believe Bate numbered 73 to 75.
10              (Whereupon, the aforementioned Copy
11              of Unsworn Declaration of Brendan L.
12              McPhail, Three Pages was marked as
13              Plaintiff's Exhibit 1 for identification
14              as of this date by the Reporter.)
15         Q.    I'm placing before you what is
16    marked Plaintiff's Exhibit 1 for identification
17    at this deposition (handing), I will ask you to
18    review the document and tell me if you
19    recognize what it is.
20         A.    (Witness perusing document.)
21         Q.    What do you recognize it to be?
22         A.    These are the questions she asked
23    me over the phone.
24         Q.    Is it your initials on the first
25    page of the document; is that your initials?
```

1                          McPHAIL
2          A.    That's correct.
3          Q.    And did you make the correction
4    "Customs and Border Protection officer" on that
5    first page, is that your handwriting -- at the
6    bottom of it, something is written in hand,
7    something is crossed out --
8          A.    You know, I don't know where that
9    came from.  I didn't do it.
10               It looks like my writing, though,
11   but I don't remember doing that.  It looks like
12   my writing.
13         Q.    Now, on the second page, do you
14   have your initials as well?
15         A.    Yes (indicating).
16         Q.    And on the last page, is that your
17   signature?
18         A.    Yes (indicating).
19         Q.    Okay, thank you.
20               MR. OKOLI:  I would like us to call
21         the judge on this.
22               MR. CLOPPER:  Okay, I'm sorry, on
23         what; on my objections?
24               MR. OKOLI:  Yes.
25               MR. CLOPPER:  Well, let's take a

1                          McPHAIL

2          break and see if we can talk about it

3          for a moment.  Let me speak with my

4          co-counsel and we will come back to it.

5                    MR. OKOLI:  Okay.

6                    MR. CLOPPER:  Off the record.

7                    (Whereupon, an off-the-record

8          discussion was held.)

9                    MR. CLOPPER:  Could we read back

10         the last pending question, the question

11         that was objected to.

12                   (Whereupon, the referred to

13         question was read back by the Reporter.)

14                   MR. CLOPPER:  I objected to that

15         question, and I continue to object to

16         that question.

17                   And then Mr. Okoli, you raised the

18         issue of Officer McPhail's declaration

19         here, I will allow you to ask him a

20         question about what he meant by his

21         statements in his declaration, you

22         wanted to do that.

23                   MR. OKOLI:  No, that's not what I

24         wanted.

25                   I wanted an answer to my question.

```
 1                         McPHAIL
 2      If you are still objecting, then we need
 3      to call the judge.  If you want to
 4      withdraw your objection, then you are
 5      entitled to do so, but if you are
 6      insisting on your objection, then I want
 7      a judge's ruling on the objection.
 8           MR. CLOPPER:  Let me think about
 9      this.  Give me a minute.
10           Let's go off the record.
11           (Whereupon, an off-the-record
12      discussion was held.)
13           MR. CLOPPER:  Let's go back on the
14      record.
15           I'm going to allow the witness to
16      answer this question, subject to what he
17      personally knows about.
18           And I would direct the witness in
19      his answer not to reveal any
20      investigative techniques or other
21      sensitive law enforcement information.
22           Other than that, I will allow him
23      to answer the question.
24           MR. OKOLI:  Could you read back the
25      question to the witness.
```

```
 1                         McPHAIL
 2            (Whereupon, the referred to
 3        question was read back by the Reporter.)
 4        A.    And what did I say in that?
 5        Q.    It's not what you said here, it's
 6   the question that you have been asked.
 7        A.    Well, assuming -- I would assume
 8   they profile.  But I have no knowledge of that.
 9   I am not in targeting.  I never was into
10   targeting.  I would just assume they would
11   profile.
12        Q.    What is your basis for your
13   assumption?
14        A.    Well, being Nigeria is a source
15   country.
16        Q.    When you say --
17        A.    There's drugs coming out of the
18   Nigeria.
19        Q.    So, your assumption is based solely
20   on the fact that drugs come out Nigeria?
21        A.    From the country.
22            MR. CLOPPER:  Objection.
23            It mischaracterizes the witness's
24        testimony.
25        Q.    Is there anything else that you
```

```
 1                        McPHAIL

 2    base your assumption on?

 3         A.    No.

 4         Q.    As a CBP officer, have you

 5    participated in the profiling of Nigerian

 6    passengers?

 7              MR. CLOPPER:  Objection.

 8         A.    No.

 9         Q.    I am placing back before you in

10    Plaintiff's Exhibit 1 (handing).

11              In your answer at 074, when you

12    say, "We profile Nigerians," just that

13    statement, "We profile Nigerians," what do you

14    mean?

15              MR. CLOPPER:  Objection.

16              As I said before, I'm going to

17         allow the witness to answer the

18         question, to the extent he has personal

19         knowledge.

20              I would caution the witness --

21              MR. OKOLI:  No, you can't make a

22         speaking objection, please.  You can't.

23              I mean, if you want, we can call

24         the judge.

25              I'm asking a very clear question.
```

```
  1                        McPHAIL
  2              He reviewed the document and he
  3         signed it, he corrected something, he
  4         didn't strike that, and that's what I'm
  5         following up on.
  6              So, if you are going to make a
  7         speaking objection, we are going to call
  8         the judge.
  9              MR. CLOPPER:  I am not making a
 10         speaking objection.  I am simply
 11         cautioning the witness not to reveal any
 12         law enforcement privileged information.
 13              MR. OKOLI:  Shall we just call the
 14         judge.
 15              MR. CLOPPER:  I will allow him to
 16         answer.
 17              MR. OKOLI:  We will go head.
 18         Q.    What do you mean when you say, "We
 19    profile Nigerians"?
 20         A.    I don't remember saying that, sir,
 21    that we...
 22         Q.    Is that your initial at the bottom
 23    of the --
 24         A.    Okay, okay.  Let me see.
 25              Okay, well, maybe I shouldn't have
```

```
                              McPHAIL
 1
 2    said that, because I have no knowledge of how
 3    to target, I never worked in a targeting unit.
 4               I'm just assuming.  It's all an
 5    assumption on my part when the question was
 6    asked to me over the phone.
 7          Q.    But after the question as was posed
 8    to you over the phone, you had an opportunity
 9    to review --
10          A.    Yes.
11          Q.    -- this document before you signed
12    it?
13          A.    Right.
14          Q.    And you also had an opportunity to
15    correct what may have been incorrect?
16          A.    Okay.
17          Q.    And you, in fact, did correct
18    something on page one?
19          A.    Well, that, I don't remember
20    correcting, but it looks like my handwriting.
21          Q.    Very well.
22          A.    Okay.
23          Q.    So, here, in your answer, you did
24    not say you were assuming, correct; in your
25    answer to question --
```

```
 1                      McPHAIL

 2        A.    Yes, but, sir, I have no knowledge

 3    of who they target.  I don't work in the

 4    targeting unit.

 5        Q.    Now --

 6              Are you done with your answer?

 7        A.    Yes.

 8        Q.    Okay.

 9              So, again, to come back to the

10    point, what is the basis for your assumption

11    that Nigerians are profiled?

12        A.    Because --

13              MR. CLOPPER:  Objection.

14              Asked and answered.

15              Sorry about that, you can go ahead

16         and answer, to the best of your ability.

17        A.    Because it's a source country.

18        Q.    And when you say, "it's a source

19    country," what does that mean?

20        A.    For drugs.

21        Q.    What does that mean?

22        A.    Well, drugs come from Nigeria.

23        Q.    Okay.

24              So, do you assume that because

25    drugs come from Nigeria, every Nigerian is
```

```
 1                    McPHAIL
 2   connected in the drug trade?
 3        A.    Not at all.
 4              MR. CLOPPER:  Objection.
 5        Q.    Sorry?
 6        A.    No, I don't think that at all.
 7        Q.    You do not know whether
 8   Ms. Akinyemi's husband was profiled?
 9        A.    No, I have no idea.
10        Q.    On the occasions that you worked at
11   the airport, did you ever overhear any
12   conversation by any customs officer concerning
13   Nigerians and drug smuggling?
14              MR. CLOPPER:  Objection.
15              That question calls for information
16        covered by the law enforcement privilege
17        and I'm instructing the witness not to
18        answer.
19              MR. OKOLI:  Shall we call the
20        judge, please.
21              MR. CLOPPER:  Sure.
22              MR. OKOLI:  Get the phone and then
23        we will call the judge.
24              MR. CLOPPER:  Before we do, could
25        you read back the question for me.
```

```
 1                          McPHAIL
 2                (Whereupon, the referred to
 3           question was read back by the Reporter.)
 4                MR. CLOPPER:  Actually, I'm going
 5           to allow the witness to answer this
 6           question.
 7           A.    Can you repeat it?
 8                MR. OKOLI:  Can you read back the
 9           question, please.
10                (Whereupon, the referred to
11           question was read back by the Reporter.)
12           A.    No.
13           Q.    How did you learn that Nigeria was
14      a source country?
15                MR. CLOPPER:  Objection.
16                This answer calls for information
17           covered by the law enforcement privilege
18           and I'm instructing the witness not to
19           answer.
20                And I apologize, Mr. Okoli, for
21           going back and forth.
22                MR. OKOLI:  That's okay.
23                MR. CLOPPER:  On this one, I will
24           instruct the witness not to answer.
25                If I could have this question
```

```
 1                        McPHAIL

 2      repeated back to me.

 3              (Whereupon, the referred to

 4      question was read back by the Reporter.)

 5              MR. CLOPPER:  Let's just go off the

 6      record for a moment, in order to call

 7      the judge.

 8              (Whereupon, an off-the-record

 9      discussion was held.)

10              JUSTICE PECK:  This is Judge Peck.

11              MR. OKOLI:  Good morning, Judge.

12      This is K.C. Okoli.

13              John, do you want to introduce

14      yourself.

15              MR. CLOPPER:  And this is John

16      Clopper, Assistant United States

17      Attorney.

18              JUSTICE PECK:  All right, and I

19      understand that you have got a court

20      reporter taking this down.

21              MR. OKOLI:  Yes, Your Honor.

22              JUSTICE PECK:  First, why don't you

23      fill me in on what happened last week,

24      when I was out of town.

25              I know that Judge Eaton ruled on
```

43

```
 1                          McPHAIL
 2       question read back and the answer.
 3              MR. OKOLI:  Your Honor, just to
 4       clarify, Officer Mr. McPhail had been in
 5       the room all through us having this
 6       conversation.
 7              JUSTICE PECK:  Okay, I didn't know
 8       that, but that's fine.
 9              MR. CLOPPER:  That was an error,
10       Your Honor.  I apologize.
11              Can we have the question read back,
12       please.
13              (Whereupon, the referred to
14       question was read back by the Reporter.)
15       A.    Okay, it was probably from a memo
16   that came down from my supervisor.
17              MR. OKOLI:  Your Honor, the witness
18       responded, but I have a follow-up
19       question.
20              JUSTICE PECK:  Go ahead.
21   BY MR. OKOLI:
22       Q.    When you say a memo from a
23   supervisor, a supervisor at the airport or a
24   supervisor somewhere else?
25       A.    It would probably be a supervisor
```

```
 1                          McPHAIL
 2    at the airport.
 3                  MR. OKOLI:   Thank you.
 4                  MR. CLOPPER:   Thank you, Your
 5            Honor.   That appears to be the end of
 6            this line of questions.
 7                  JUSTICE PECK:   Okay, very good.
 8                  Hopefully, no offense, folks, but I
 9            hope I don't hear from you until I see
10            you on November 5th.
11                  But if any other issues come up,
12            you are free to call.   But know that you
13            are using up your time with the court,
14            so to speak.
15                  All right, thank you both.
16                  MR. CLOPPER:   Thank you, Your
17            Honor.
18                  (At 12:02 p.m. the examination
19            resumed.)
20    BY MR. OKOLI:
21            Q.    To the best of your recollection,
22    the memo that you talked about, does it deal
23    with profiling?
24                  MR. CLOPPER:   Objection.
25                  The question calls for information
```

```
 1                        McPHAIL

 2           covered by the law enforcement privilege

 3           and I'm directing the witness not to

 4           answer.

 5                I thought we just talked about

 6           that.

 7                MR. OKOLI:  Mark that for a ruling.

 8                I will go ahead with my deposition

 9           and have it marked for a ruling.

10           Q.    Do you have a recollection of which

11      supervisor sent down this memo?

12                MR. CLOPPER:  Objection.

13                The information calls for

14           information covered by the law

15           enforcement privilege and I'm

16           instructing the witness not to answer.

17                MR. OKOLI:  Mark that for a ruling.

18                MR. CLOPPER:  Actually, read back

19           that the last question.

20                (Whereupon, the referred to

21           question was read back by the Reporter.)

22                MR. CLOPPER:  Okay, thank you.

23                MR. OKOLI:  Your objection remains

24           the same?

25                MR. CLOPPER:  Yes.
```

1                          McPHAIL

2                (Whereupon, the referred to

3          question was read back by the Reporter.)

4          A.    No.

5                MR. CLOPPER:  While we are at it,

6          as I'm thinking about this, because I am

7          trying to be as cooperative as possible,

8          if you want to re-ask, we can go back to

9          the question, I think there was a

10         question about authorship on the memo,

11         if you want to re-ask that.

12               MR. OKOLI:  I may come back to

13         that.  Let me just finish with --

14               MR. CLOPPER:  Sure.

15               MR. OKOLI:  --  with the other

16         questions I have.

17    CONTINUED BY MR. OKOLI:

18         Q.    Since you worked with Ms. Akinyemi,

19    did you know that she is Nigerian national

20    origin?

21         A.    Yes.

22         Q.    Could you briefly tell us under

23    what circumstances you learned that

24    Ms. Akinyemi was of Nigerian national origin?

25         A.    I think she told me.

1                          McPHAIL

2          Q.     As you sit here today, do you know

3     who else she told she was of Nigerian national

4     origin?

5          A.     Excuse me?

6          Q.     As you sit here today, do you know

7     who else she may have told she is of Nigerian

8     national origin?

9          A.     No, I don't know.

10                I have no knowledge of that.

11         Q.     And when she told you this, she

12    didn't tell you that as a secret, it wasn't

13    something you could keep to yourself, correct?

14         A.     No.

15                I mean, her voice and her accent, I

16    guess, people would assume she is from.

17         Q.     But what I'm trying to get at, when

18    she said she was born in Nigeria, told you of

19    Nigerian national origin, it wasn't information

20    that was she imparting to you as a secret,

21    don't let anyone else know?

22         A.     No.

23         Q.     It was something in the open?

24         A.     Yes.

25                MR. OKOLI:   Could we go back to the