UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YEMISI AKINYEMI,

        Plaintiff,

        v.

MICHAEL CHERTOFF, Secretary,
Department of Homeland Security,

        Defendant.

07 Civ. 4048 (AJP)

ECF CASE

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
Attorney for Defendant
86 Chambers Street, 5th Floor
New York, New York 10007
Tel.: (212) 637-2716

JOHN D. CLOPPER
Assistant United States Attorney
--Of Counsel--

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ..............................................................................................................................2

    I.    AKINYEMI FAILS TO DEMONSTRATE THAT SHE WAS TREATED
        DIFFERENTLY FROM OTHERS WITH WHOM SHE IS SIMILARLY
        SITUATED .................................................................................................................2

        A.  Officer Patrick Murphy ...................................................................................2

        B.  Officer Sharmila Zaman ..................................................................................5

        C.  Officer Elba Riley ..........................................................................................6

        D.  Officer Jolanta Gluba.......................................................................................8

        E.  Employees #1-#10 .........................................................................................10

    II.    NONE OF THE OTHER EVIDENCE OFFERED BY AKINYEMI
        SUPPORTS A FINDING OF INTENTIONAL DISCRIMINATION ...........................11

        A.  CBP Did Not Fail To Observe Its Own Rules and Regulations ...................11

        B.  CBP Does Not Discriminatorily Profile Nigerians....................................12

        C.  CBP Did Not Discriminate Against Akinyemi's Husband.........................14

        D.  Akinyemi Has Failed to Identify Any "Inconsistencies" That Would Support
            An Inference of Discrimination ...................................................................14

CONCLUSION...........................................................................................................................15

## PRELIMINARY STATEMENT

Defendant Michael E. Chertoff, Secretary, Department of Homeland Security (the "Government"), respectfully submits this reply memorandum in further support of his motion for summary judgment.

As set forth below, and in the Government's moving papers, plaintiff Yemisi Akinyemi ("Akinyemi") cannot identify evidence from which a reasonable factfinder could infer that she was the victim of intentional discrimination. Akinyemi's claim fails in two respects. First, she has not set forth sufficient evidence to support a *prima facie* case. Second, even if Akinyemi had made out a *prima facie* case, she has not set forth evidence showing that CBP's legitimate non-discriminatory reason for terminating her was pretextual, and that the real reason for her termination was discrimination. Put simply, Customs and Border Protection ("CBP") fired Akinyemi during her probationary period of employment because, while off-duty and for solely personal reasons, she used the trappings of her office to bypass Transportation Security Administration security screening at Newark Liberty International Airport.

Akinyemi's attempts to demonstrate a reasonable inference of discrimination – either at the *prima facie* stage or in attempting to satisfy her ultimate burden of proof – fall well short of the mark. Akinyemi argues that she is similarly situated to 14 other CBP officers that were not disciplined for similar conduct. But none of those 14 comparators is similarly situated as a matter of law. Akinyemi also attempts to draw an inference of discrimination from other circumstances – such as allegations of profiling and the assertion that CBP violated its own rules in terminating her – but the undisputed facts show that none of these allegations are supportable.

<u>**ARGUMENT**</u>

**I.    AKINYEMI FAILS TO DEMONSTRATE THAT SHE WAS TREATED DIFFERENTLY FROM OTHERS WITH WHOM SHE IS SIMILARLY SITUATED**

In her opposition papers, Akinyemi fails to identify any evidence demonstrating that CBP terminated her under circumstances giving rise to an inference of discrimination.  Akinyemi presents no direct evidence of discrimination.  Rather, she attempts to make out a circumstantial case by pointing to 14 employees that she says engaged in similar misconduct, but were treated more favorably than her because they were not African-American or Nigerian.  The undisputed evidence shows, however, that Akinyemi's 14 comparators are not similarly situated to her.  Because Akinyemi cannot show that any similarly situated employee was treated more favorably, the Government is entitled to summary judgment.  *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258 (1981) ("[I]t is the plaintiff's task to demonstrate that similarly situated employees were not treated equally.").

**A.    Officer Patrick Murphy**

Akinyemi effectively concedes that Officer Patrick Murphy is not similarly situated to her.  Akinyemi admits that Officer Murphy is a permanent employee now (*see* Government's 56.1 Statement ¶ 9; Plaintiff's 56.1 Statement ¶ 9), and does not dispute that Officer Murphy was a permanent employee at the time of his alleged misconduct.  *See* Plaintiff's Memorandum of Law in Opposition to Government's Motion for Summary Judgment ("Pl. Br.") at 10-11, 21-22 (discussing Officer Murphy); Government's Memorandum of Law in Support of Motion for Summary Judgment ("Gov. Br.") at 8-9, 16-18 (discussing allegations against Officer Murphy).  As both this Court and the Court of Appeals have held, probationary employees are not similarly situated with non-probationary employees.  *See Williams v. City of New York*, 04 Civ. 1993,

2

2005 WL 839103, at *10 (S.D.N.Y. Apr. 12, 2005); *see also Feingold v. New York,* 366 F.3d

138, 153 (2d Cir. 2004); *Jones v. Yonkers Pub. Sch.*, 326 F. Supp. 2d 536, 545 (S.D.N.Y. 2004).

Akinyemi argues, however, that no one ever investigated her allegations against Officer

Murphy, and that this failure to investigate supports an inference that Akinyemi was the victim

of discrimination. There are several problems with this argument. First, it is irrelevant whether

any investigation of Officer Murphy was conducted because, as stated above, he is not similarly

situated. Second, the undisputed evidence shows that Director Mitchell ordered an investigation

of the allegation. *See* Declaration of Susan T. Mitchell, Director of Field Operations, Customs

and Border Protection, dated January 24, 2008 ("Mitchell Decl."), at ¶ 16; Transcript of

Deposition of Susan T. Mitchell ("Mitchell Dep."), at 55 (attached as Exhibit 5 to Supplemental

Declaration of John D. Clopper, dated March 14, 2008 ("Supp. Clopper Decl.").[1]  While

Akinyemi may not believe the testimony of Director Mitchell, she has not submitted any

affirmative evidence that Director Mitchell did not order an appropriate investigation. It is well-

established that "the possibility that defendants' proffered evidence will be discredited at trial

cannot, by itself, permit a plaintiff to avoid summary judgment."  *Woodman v. WWOR-TV, Inc.*,

411 F.3d 69, 86 (2d Cir. 2005); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57

---

[1]     Akinyemi speculates that no investigation could have occurred because no one ever
questioned Officer Murphy about her allegations that Officer Murphy had bypassed security
while off-duty. Pl. Br. at 11. Akinyemi's speculation that no investigation occurred, however, is
directly contradicted by Director Mitchell. Mitchell Decl. ¶ 16. *See Tai-Sun Plastic Novelties,
Ltd. v. Haschel Export Corp.*, 03 Civ. 1414, 2003 WL 22966285 (S.D.N.Y. Dec. 16, 2003) ("The
Court need not . . . credit unsupported factual allegations and innuendos.").

In addition, there is undisputed evidence in the record that other permanent employees
have been disciplined for accessing restricted areas of Newark airport while off-duty. *See*
Mitchell Dep. at 75-78, 81, Supp. Clopper Decl., Exh. 5 (discussing discipline of permanent
employee for accessing restricted area of Newark airport while off-duty).

(1986) ("[D]iscredited testimony is not normally considered a sufficient basis for drawing a contrary conclusion.") (internal quotation marks omitted). "Instead, the plaintiff must present *affirmative evidence* in order to defeat a properly supported motion for summary judgment." *Anderson,* 477 U.S. at 256-57; *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 101 (2d Cir. 1997) ("The litigant opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forward some *affirmative indication* that his version of relevant events in not fanciful.") (emphasis added); *Van Zandt v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996) (holding that in order to defeat motion for summary judgment in Title VII case, plaintiff must produce "not simply *some* evidence, but sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proferred by [the Government] were false, and that more likely than not, discrimination was the real reason for the discharge") (internal quotation marks omitted)(emphasis added); *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) ("Unless the nonmoving party offers some hard evidence showing that its version of events is no wholly fanciful, summary judgment is granted to the moving party.") (internal quotation marks omitted).[2]

---

[2]    Akinyemi also speculates that Director Mitchell could not have ordered an investigation because she admitted that she did not follow up to determine the results of the investigation. Pl. Br. at 11. This argument is unavailing. Director Mitchell does not need to know the result of every investigation that occurs under her command. Given her responsibilities and the delegations of authority she has made, *see, e.g.,* Mitchell Decl. ¶¶ 3-4, 6-7, it is perfectly ordinary for Director Mitchell to be unaware of the results of an investigation into the allegations of a disgruntled former employee. No reasonable inference of discrimination can be drawn from Director Mitchell's delegation of the investigation to a subordinate. *See Taylor v. Potter*, 99 Civ. 4941, 2004 WL 1811423, at *10 (S.D.N.Y. Aug. 16, 2004) (Peck, M.J.) (holding that Court draws all inferences in favor of the non-moving party, "only after determining that such inferences are reasonable, considering all the evidence presented"); *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1318 (2d Cir. 1990) (holding that a plaintiff "is not entitled to the benefit of unreasonable inferences, or inferences at war with undisputed facts").

### B.    Officer Sharmila Zaman

Akinyemi also cannot show that Officer Sharmila Zaman is similarly situated. Akinyemi does not dispute that, at the time Officer Zaman was disciplined, she was a permanent employee, and thus not similarly situated as a matter of law. *Compare* Government's 56.1 Statement ¶ 12 *with* Plaintiff's 56.1 Statement ¶ 12; *see Feingold*, 366 F.3d at 153. Similarly, Akinyemi does not dispute that Director Mitchell was not aware of the alleged misconduct by Officer Zaman until Akinyemi raised it during the course of her administrative EEO complaint. *Compare* Government's 56.1 Statement ¶ 11 *with* Plaintiff's 56.1 Statement ¶ 11. As explained in the Government's opening brief, although Officer Zaman was a probationary employee when she committed the misconduct, lower level supervisors chose not to report Officer Zaman's misconduct up the chain of command to Director Mitchell contemporaneously with the offense, effectively deciding that Officer Zaman should not be disciplined at the time of the misconduct. *See* Gov. Br. at 9-10, 18-19 (discussing allegations against Officer Zaman). Thus, it was those officers, not Director Mitchell, who initially determined how to address Officer Zaman's misconduct. Because the initial decision on how to handle Officer Zaman's discipline was made by these subordinate officers, and not by the supervisor who disciplined Akinyemi (*i.e.,* Director

---

Akinyemi also argues that by ordering Kathleen Haage-Gaynor to conduct an investigation into Akinyemi's allegations of misconduct by other CBP officers, Director Mitchell "predetermined" that any discipline would not exceed a 14 day suspension. Pl. Br. at 22-23. This argument conflates two separate delegations of authority from Director Mitchell to Haage-Gaynor. Director Mitchell's referral of a matter for investigation is separate from her delegation of authority to Area Directors to impose suspensions of 14 days or less. *See* Mitchell Decl. ¶ 7. Director Mitchell does not conduct investigations herself, she refers them for investigation by subordinates. *See* Mitchell Decl. ¶¶ 16-17, 19; Supp. Mitchell Decl. ¶ 4. Once the investigation is complete, the appropriate official decides the appropriate punishment. The deciding official may or may not be Director Mitchell, depending on the results of the investigation. *See* Supp. Mitchell Decl. ¶¶ 3-9.

5

Mitchell), Zaman and Akinyemi are not similarly situated. *See* Gov. Br. at 15 (citing cases

holding that employees subject to discipline by different supervisors are not similarly situated).

Akinyemi attempts to create a triable issue of fact by pointing out that her allegation

regarding Officer Zaman was brought to Director Mitchell's attention on January 3, 2006 – two

days before the end of Officer Zaman's probationary period. *See* Pl. Br. at 12. Akinyemi argues

that Director Mitchell's failure to initiate an investigation, corroborate the allegations, and

impose discipline – all within that two-day window – is evidence that Director Mitchell

intentionally discriminated against Akinyemi. *See id.*

On the undisputed record, Akinyemi's argument cannot withstand serious scrutiny.

Akinyemi admitted to her misconduct only four days after it occurred, and yet it took 15 days

from the date of the incident to complete the discipline. *See* Statement of Yemisi Akinyemi,

dated December 9, 2005, at 1 (attached as Exhibit 1 to Supp. Clopper Decl.). The allegations

against Officer Zaman and the other supervisory officers involved in the Zaman incident, in

contrast, needed to be investigated and corroborated. No reasonable inference of discrimination

can be drawn from the fact that CBP did not complete the Zaman investigation in two days,

when it took 15 days to complete the Akinyemi investigation. Akinyemi's attempt to infer

discrimination from these circumstances is wholly unreasonable. *See County of Suffolk*, 907

F.2d at 1318; *Taylor,* 2004 WL 1811423, at *10.

### C. Officer Elba Riley

Akinyemi also offers Officer Elba Riley as a comparator. Again, Akinyemi does not

dispute that Officer Riley is a permanent non-probationary employee. *Compare* Government's

56.1 Statement ¶ 13 *with* Plaintiff's 56.1 Statement ¶ 13. Akinyemi also does not dispute that

Director Mitchell was not aware of Akinyemi's allegations of misconduct by Officer Riley until

6

they were brought to her attention during the course of this litigation, at which time she referred the matter for investigation. *Compare* Government's 56.1 Statement ¶ 13 *with* Plaintiff's 56.1 Statement ¶ 13. Consequently, Akinyemi has admitted all the necessary predicate facts for a legal determination that Officer Riley is not similarly situated. *See* Gov. Br. at 10-11, 19-20 (discussing allegations against Officer Riley).

As with Officer Zaman, Akinyemi attempts to create a genuine issue of material fact regarding Officer Riley by questioning why Director Mitchell did not complete an investigation into the alleged misconduct prior to Officer Riley's conversion to a permanent employee. But, just as with Officer Zaman, no reasonable inference of discrimination can be drawn from the adduced facts. *See County of Suffolk*, 907 F.2d at 1318 (holding that non-moving party "is not entitled to benefit of unreasonable inferences or inferences at war with undisputed facts"). It took 15 days for Director Mitchell to terminate Akinyemi, who had fully admitted the facts underlying the misconduct charge against her. In contrast, Officer Riley converted to permanent status a mere eight days after Director Mitchell learned of Akinyemi's vague and uncorroborated allegations against Officer Riley.

Moreover, it cannot be ignored that the allegations against Officer Riley were made by a disgruntled former employee who was attempting to prove discrimination in the context of ongoing litigation. Akinyemi had an obvious motive to level unsubstantiated allegations against her former colleagues, and CBP had an equally obvious responsibility to proceed cautiously. In light of these undisputed facts, the amount of time it took to complete the Akinyemi investigation and the pace of the Riley investigation are simply not comparable, and it is not reasonable to infer that Director Mitchell intentionally delayed a determination regarding the Riley matter because she wanted to favor Officer Riley over Akinyemi. *See Graham v. Long Island R.R.*, 230

7

F.3d 34, 40 (2d Cir. 2000) ("[T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases.").[3]

### D.    Officer Jolanta Gluba

Akinyemi also does not dispute the material facts surrounding the discipline of Officer Jolanta Gluba. Akinyemi admits that it was Haage-Gaynor who disciplined Officer Gluba, not Director Mitchell. *Compare* Government's 56.1 Statement ¶ 18 *with* Plaintiff's 56.1 Statement ¶ 18. By itself, this is enough for the Court to determine that Akinyemi and Officer Gluba are not similarly situated. *See Shumway v. United Parcel Servs., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997); *Conway v. Microsoft Corp.*, 414 F. Supp. 2d 450, 466 (S.D.N.Y. 2006); *Gambrell v. Nat'l R.R. Passenger Corp.*, 01 Civ. 6433, 2003 WL 282182, at *7 (S.D.N.Y. Feb. 3, 2003); *Khan v. Costco Wholesale Inc.*, 99 Civ. 3944, 2001 WL 1602168, at *7 (E.D.N.Y. Dec. 13, 2001).

Moreover, Akinyemi admits that there were important differences between Officer Gluba's conduct and Akinyemi's conduct. With respect to the incident discussed in the Government's opening brief involving Officer Gluba's unlocked computer screen, Akinyemi admits that Officer Gluba's conduct was "inadvertent[]". *Compare* Government's 56.1 Statement ¶ 16 *with* Plaintiff's 56.1 Statement ¶ 16; *see also* Gov. Br. at 11-12, 20-21. The

---

[3] Akinyemi also questions why Director Mitchell did not ensure that a statement was not obtained from Officer Riley within four days, as was done with Akinyemi. Pl. Br. at 22. The problem with this argument is that it incorrectly assumes that Director Mitchell was the official responsible for determining when a statement is to be obtained during the course of an investigation. As discussed above, *supra* at 4 n. 2, Director Mitchell does not personally conduct investigations. *See* Supp. Mitchell Decl. ¶ 4. Akinyemi has put forth no evidence that Director Mitchell had any involvement as to when Akinyemi's statement was taken, and Director Mitchell has stated that she did not. *See* Supp. Mitchell Decl. ¶ 6. Thus, there is no genuine issue of material fact as to whether Director Mitchell treated Akinyemi different from Officer Riley with respect to the timing of a statement.

undisputed evidence is that Officer Gluba made an honest effort to lock her computer screen before walking away from her desk, and failed to do so only because the computer was not functioning properly.  *See* Gluba Dep. 45:17-46:23, Clopper Decl., Exh. 8.  In contrast, Akinyemi's misconduct was clearly anything but inadvertent.  She intentionally misused the trappings of her office to bypass security at Newark airport while off-duty.  For this reason as well, Akinyemi and Officer Gluba are not similarly situated.  *See Brown v. Middaugh*, 41 F. Supp. 2d 172, 184 (N.D.N.Y. 1999) (where "differentiating or mitigating circumstances" between two employees exist, they are not similarly situated); *McKinney v. Lanier Worldwide, Inc.*, 94 Civ. 8139, 1998 WL 677544, at **4-5 (S.D.N.Y. Sept. 29, 1998).[4]

In her opposition to the Government's motion for summary judgment, Akinyemi makes a second allegation of misconduct by Officer Gluba.  Akinyemi alleges that, while working as a cashier on June 26, 2002, Officer Gluba was short $297 at the end of her shift, and that Officer Gluba was absent from work the following day.  *See* Pl. Br. at 14-15.

The undisputed evidence shows that this incident was materially different from Akinyemi's misconduct.  Contrary to Akinyemi's allegation, Officer Gluba was not short $297. Rather, Officer Riley simply placed the money in the wrong container.  *See* Memorandum from Santiago Villa to Terry Opiola, at 1 (attached as Exhibit 8 to Supp. Clopper Decl. (filed under seal)).  Akinyemi has adduced absolutely no evidence to support the conclusion that Officer

---

[4] Akinyemi also complains that this incident was investigated by a "panel of three managers," Akinyemi Br. at 15, while hers was not.  The undisputed evidence shows, however, that other supervisors were involved in investigating and verifying Akinyemi's misconduct, including, at a minimum, Supervisory Customs Border Protection Officer ("SCBPO") Lorraine Spina, SCBPO Edward Fox, and SCBPO Domenic Calise.  *See* Declaration of Yemisi Akinyemi, dated February 25, 2008, at ¶ 29-34 (accompanying Plaintiff's Opposition to Government's Motion for Summary Judgment); Akinyemi Dep. 80-87, Supp. Clopper Decl., Exh. 2.

Gluba engaged in any misconduct, let alone misconduct sufficiently similar to Akinyemi's to demonstrate discrimination.  *See Brown*, 41 F. Supp. 2d at 184 (N.D.N.Y. 1999); *McKinney*, 1998 WL 677544, at **4-5.[5]

Moreover, Akinyemi concedes that Director Mitchell was not the official that decided whether or not to discipline Officer Gluba with respect to the cash drawer incident.  *See* Pl. Br. at 14.  For this reason as well, Officer Gluba and Akinyemi are not similarly situated.  *See Shumway*, 118 F.3d at 64; *Conway*, 414 F. Supp. 2d at 466; *Gambrell*, 2003 WL 282182, at *7; *Khan*, 2001 WL 1602168, at *7.

### E.    Employees #1-#10

Akinyemi also identifies nine other employees as comparators.  (Akinyemi lists the employees as Employees #1 thru #10, but acknowledges – correctly – that Employee #6 is the same individual as Employee #7.  *See* Pl. Br. at 17.)  The undisputed evidence, however, shows that none of these employees is similarly situated to Akinyemi.  Like Akinyemi, Employees #1 thru #5, and Employees #9 and #10, were all terminated for misconduct.  Thus, this evidence does not support an inference that Akinyemi was "treated . . . *less favorably* than a similarly situated employee outside [her] protected group."  *Graham*, 230 F.3d at 39 (emphasis added).

The remaining two employees, Employee #6/#7 and Employee #8, are conceded by Akinyemi to have been permanent non-probationary employees at the time of their misconduct.

---

[5] Similarly, Akinyemi's assertion that Officer Gluba did not appear for work on the following day is not supported by the evidence.  The document relied on by Akinyemi simply states that, on June 27, 2002, Officer Gluba had not "yet" reported for duty.  Given that CBP officers work varying shifts (Officer Gluba herself worked from noon to 8 pm the day before, *see* Report of Investigation, dated June 28, 2002, at 1 (attached as Exhibit 7 to Supp. Clopper Decl. (filed under seal)), no inference of absenteeism can be drawn from this statement as to Officer Gluba's absence from work on the following day.

Pl. Br. at 18.  As a result, they too are not similarly situated as a matter of law.[6]  *See Williams*,

2005 WL 839103, at *10; *Feingold,* 366 F.3d at 153; *Jones*, 326 F. Supp. 2d at 545.

## II.    NONE OF THE OTHER EVIDENCE OFFERED BY AKINYEMI SUPPORTS A FINDING OF INTENTIONAL DISCRIMINATION

None of the other arguments contained in Akinyemi's brief demonstrate a genuine issue

of material fact.

### A.    CBP Did Not Fail To Observe Its Own Rules and Regulations

Akinyemi argues that CBP failed to observe its own rules and regulations in terminating

plaintiff.  Akinyemi alleges that, contrary to regulation, the staff of Labor and Employment

Relations ("LER") did not prepare Akinyemi's termination letter, and that Akinyemi was not

provided with a copy of Merit Systems Protection Board ("MSPB") regulations when she was

terminated.  It is difficult to see how these assertions, even if true, would be probative of

discrimination.  *See Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the

outcome of the suit under governing law will properly preclude the entry of summary

judgment.").  In any event, Akinyemi has failed to identify any evidence demonstrating the

veracity of the allegations.  The undisputed evidence shows the allegations to be false.  The LER

staff did prepare the initial draft of Akinyemi's termination letter.  *See* Declaration of Lucia

Baez, dated March 11, 2008 ("Baez Decl."), at ¶ 2.  Further, the requirement that a CBP

employee be provided a copy of MSPB regulations applies for some CBP probationary

---

[6] In addition, Akinyemi presents no evidence regarding the race or national origin of these other employees.  Under Title VII, an inference of discrimination can only arise from admissible evidence that Director Mitchell "treated [Akinyemi] less favorably than a similarly situated employee *outside [her] protected group*."  *Graham*, 230 F.3d at 39 (emphasis added).  It was Akinyemi's burden to offer evidence that Employees #1 through #10 were non-African American and non-Nigerian.  She has not met her burden.

employees hired into competitive service positions under 5 C.F.R. § 315, Subpart H, who may

appeal to the MSPB under the limited circumstances enumerated in 5 C.F.R. § 315.806.

Employees such as Akinyemi, however, who were hired into an excepted service appointment

under the Federal Career Intern Program pursuant to Schedule B, 5 C.F.R. § 213.3202(O), do not

have MSPB appeal rights. *See id.* ¶¶ 3-7. Thus, LER did not err in failing to inform Akinyemi

of the MSPB regulations.

**B.    CBP Does Not Discriminatorily Profile Nigerians**

Akinyemi argues that CBP officers "profile" Nigerian passengers. But aside from her

self-serving accusations, there is no evidence of discriminatory profiling. *See Kennebrew v. New*

*York City Hous. Auth.*, 01 Civ. 1654, 2002 WL 265120, at *15 (S.D.N.Y. Feb. 26, 2002) (Peck,

M.J.) ("Conclusory allegations made by the Plaintiff of (alleged) discriminatory conduct are

insufficient to avoid summary judgment.") (internal quotation marks omitted); *see also Meiri v.*

*Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) ("[C]onclusory allegations of discrimination are

insufficient to satisfy the requirements of Rule 56(e)."). Akinyemi points to a single comment

by Officer Brendan McPhail that "profiling" occurs. *See* Pl. Br. at 24. But Akinyemi fails to

note that Officer McPhail also testified that he lacked personal knowledge of CBP's investigative

techniques. *See* Transcript of Deposition of Brendan McPhail ("McPhail Dep."), at 23-24

(attached as Exhibit 4 to Supp. Clopper Decl.). Thus, his testimony on this topic is inadmissible.

*See* Fed. R. Evid. 602; *see also Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (non-moving

party must oppose summary judgment with admissible evidence).

Akinyemi also takes Officer McPhail's use of the word "profiling" completely out of

context. Officer McPhail made clear that, when he used the term "profiling," he meant to

convey his understanding that CBP uses legitimate law enforcement techniques, including the

12

targeting of known source countries of criminal activity, in conducting its operations.  *See* McPhail Dep. 15-28.  *See also* Mitchell Dep. 109-21, Supp. Clopper Decl., Exh. 5 (stating CBP does not condone discriminatory profiling).  Officer McPhail himself stated that, when he used the term "profiling," he did not mean that he thought every Nigerian was involved in drug trafficking.  *See* McPhail Dep. 25-26, Supp. Clopper Decl., Exh. 4.  Moreover, even assuming that discriminatory profiling of passengers had occurred, Akinyemi has adduced no evidence showing that discriminatory profiling was used against CBP employees.  In fact, Officer McPhail specifically denied that any "profiling" of passengers caused CBP personnel to assume that Nigerian CBP officers were engaged in drug trafficking.  *See* Statement of Brendan McPhail, at 2 (attached as Exhibit 3 to Supp. Clopper Decl.).

Finally, even assuming that racially-biased "profiling" could be shown to occur somewhere within CBP, Akinyemi adduced no evidence that that discriminatory attitude was shared by Director Mitchell.  Under these circumstances, no reasonable factfinder could conclude that discriminatory profiling occurs, or that – if it did occur – it supported a reasonable inference that Akinyemi's termination by Director Mitchell was based on Akinyemi's race or national origin.

### C.    CBP Did Not Discriminate Against Akinyemi's Husband

Akinyemi also argues that she is entitled to a trial because CBP Officers discriminated against her Nigerian husband, and that she was therefore assumed "guilt[y] by association."  *See* Pl. Br. at 25.  Preliminarily, Akinyemi has presented no evidence – aside from her and her husband's speculation – that CBP officers treated her husband in a discriminatory manner when they interviewed him on December 5, 2005.  By his own admission, he was permitted to board his flight without incident.  *See* Transcript of Deposition of Akintunde Akinyemi ("Akintunde

13

Akinyemi Dep."), at 23-33 (attached as Exhibit 6 to Supp. Clopper Decl.).  Akinyemi's

husband's conclusion that he was discriminated against is pure speculation.  There is no

evidence, for example, that he was treated any differently than any other traveling passenger that

day.  *See D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) ("The non-moving

party may not rely on mere conclusory allegations nor speculation[.]"); *see also* Gov. Br. at 24

(citing cases).

 But more important than the lack of support for the assertion that the CBP officers

discriminated against Akinyemi's husband, Akinyemi has offered no evidence that the CBP

officers' conduct – even assuming it to be discriminatory – played any role in Director Mitchell's

decision to terminate her.  The evidence offered by Akinyemi is simply not probative of whether

Director Mitchell decision was motivated by discrimination.  *See Anderson*, 477 U.S. at 248-50

("Factual disputes that are irrelevant or unnecessary will not be counted . . . If evidence is merely

colorable, or is not sufficiently probative, summary judgment may be granted.").

  **D.** **Akinyemi Has Failed To Identify Any "Inconsistencies" That Would Support An Inference Of Discrimination**

 Finally, Akinyemi argues that contradictions in the statements of CBP officers in this

case "should have caused a reasonable person of caution to rethink how they were proceeding

against Akinyemi."  *See* Pl. Br. at 26.  Akinyemi does not identify in her opposition brief the

statements she believes are contradictory.  But aside from Akinyemi's failure to identify the

purported contradictory statements, there is no contradictory evidence about the essential facts of

the case.  Akinyemi admits that she bypassed TSA security using her AOA card while off duty.

*Compare* Government's 56.1 Statement ¶ 4 *with* Plaintiff's 56.1 Statement ¶ 4.  Because none of

the alleged inconsistencies – whatever they are – change that basic fact, there was never any

need for Director Mitchell to change her mind regarding the appropriate sanction for Akinyemi's

misconduct.  *See* Mitchell Dep. 64-70, Supp. Clopper Decl., Exh. 5 (describing why Director

Mitchell terminated Akinyemi).

## **CONCLUSION**

For the foregoing reasons, and the reasons stated in the Government's opening brief, the

Court should grant defendant's motion for summary judgment.

Dated:  New York, New York
        March 14, 2008

                                Respectfully submitted,

                                MICHAEL J. GARCIA
                                United States Attorney

                By:      /s/ John D. Clopper
                        JOHN D. CLOPPER
                        Assistant United States Attorney
                        86 Chambers Street
                        New York, New York 10007
                        Telephone: (212) 637-2716
                        Facsimile: (212) 637-0033
                        john.clopper@usdoj.gov