UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| YEMISI AKINYEMI, | : | |
| Plaintiff, | : | 07 Civ. 4048 (AJP) |
| -against- | : | **OPINION AND ORDER** |
| MICHAEL CHERTOFF, Secretary, Department of Homeland Security, | : | |
| Defendant. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

Plaintiff Yemisi Akinyemi brought this Title VII action against the Department of Homeland Security alleging discriminatory termination of her employment on the basis of race, national origin and color. (See Dkt. No. 1: Compl.) The parties have consented to decision of this case by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. No. 10.) Presently before the Court is defendant Department of Homeland Security's summary judgment motion. (Dkt. No. 25: Notice of Motion.)

For the reasons set forth below, defendant's summary judgment motion is DENIED.

## FACTS

### Akinyemi and Her Termination

Plaintiff Yemisi Akinyemi began working as a probationary Customs and Border Protection ("CBP") Officer on December 29, 2003 as part of a two-year Federal Career Intern

H:\OPIN\AKINYEMI

2

Program.[1] (See Dkt. No. 29: Def. Rule 56.1 Stmt. ¶¶ 1, 2; Dkt. No. 43: Akinyemi Rule 56.1 Stmt. ¶¶ 1, 2.) On December 2, 2005, while off-duty, Akinyemi escorted her husband to the departure area of Newark International Airport, bypassing the Transportation Security Administration security screening area through an access area reserved for those possessing an "Access to Operations Area" card ("AOA card"). (See Def. & Akinyemi Rule 56.1 Stmts. ¶¶ 3-4.) Akinyemi wore her work uniform, and her weapon and AOA card were visible. (Def. & Akinyemi Rule 56.1 Stmts. ¶ 4.)

By letter dated December 20, 2005, Director of Field Operations Susan Mitchell terminated Akinyemi's employment for using her position and authority to gain access to a restricted area of Newark Airport while off-duty and not conducting official business.[2] (Clopper Aff. Ex. 3: Akinyemi Termination Letter; see Def. Rule 56.1 Stmt. ¶ 5.) Mitchell terminated Akinyemi during her two-year probationary period. (See Def. & Akinyemi Rule 56.1 Stmts. ¶ 7.) As Director of Field

---

[1] Akinyemi's "Employment Agreement" provides: "Career Interns serve a trial period of 2 years. During this time, the Intern's performance, development, conduct, and general suitability for continued employment will be assessed. Employment may be terminated during this time due to work performance or conduct reasons." (Dkt. No. 27: Clopper Aff. Ex. 1: Akinyemi Fed. Career Intern Program Employment Agmt.; see Dkt. No. 26: Def. Br. at 3.) Probationary employees may be terminated for misconduct that would not necessarily result in termination for permanent, non-probationary employees. (Clopper Aff. Ex. 1; Dkt. No. 28: Mitchell Aff. ¶ 11; Def. Br. at 3.)

[2] Akinyemi admits she used her AOA card to bypass security and gain access to the departure gate area (see Def. & Akinyemi Rule 56.1 Stmts. ¶ 6), but disputes that she was terminated for this reason (see Akinyemi Rule 56.1 Stmt. ¶ 5). Akinyemi also disputes Mitchell's assertion that Akinyemi violated CBP Standard of Conduct 6.3.5. (Compare Def. Rule 56.1 Stmt. ¶ 5 with Akinyemi Rule 56.1 Stmt. ¶ 5.)

Operations, Mitchell was "six supervisory levels above the position of CBP Officer." (Dkt. No. 28: Mitchell Aff. ¶ 4.) Immediately below Mitchell were two Area Directors. (Id.)

Mitchell never made any racially derogatory comments to Akinyemi, who is an African-American born in Nigeria. (See Def. & Akinyemi Rule 56.1 Stmts. ¶ 8; see also Dkt. No. 42: Akinyemi Br. at 5.) Akinyemi claims that Mitchell discriminatorily fired Akinyemi because CBP treated non-African-American, non-Nigerian employees more leniently when they engaged in similar misconduct.[3/] (See Akinyemi Rule 56.1 Stmt. ¶ 8.) As Akinyemi has conceded: "This is not a case which is based upon the use of racial epithets. The case is based on the contention that other CBP officers who are similarly situated were treated differently from Akinyemi." (Akinyemi Rule 56.1 Stmt. ¶ 8.)

**Akinyemi's Claimed Comparators**

Akinyemi lists four named and ten un-named CBP officers as similarly situated comparators. (See generally Dkt. No. 29: Def. Rule 56.1 Stmt. ¶¶ 9-18; Dkt. No. 43: Akinyemi Rule 56.1 Stmt. ¶¶ 9-18; Dkt. No. 42: Akinyemi Br. at 10-18.)

---

[3/]  Akinyemi also asserts that CBP employees profile Nigerian-born persons, and that Akinyemi's husband's brief examination by a CBP officer on December 2, 2005 constituted profiling that precipitated his wife's termination through "'guilt by association.'" (Akinyemi Br. at 24-25.)  Akinyemi submits no admissible evidence, however, that CBP employees illegitimately profile Nigerian passengers, much less any evidence that CBP profiles its own employees, or that Mitchell terminated Akinyemi because of discrimination toward Akinyemi's husband or Nigerian-born persons generally. (See Dkt. No. 47: Def. Reply Br. at 12-14.)

4

**The Unnamed Comparators**

The ten unnamed comparators actually comprise nine persons: seven were terminated by Mitchell for misconduct and two were suspended or reprimanded, both of whom were permanent non-probationary employees at the time of their misconduct. (See Dkt. No. 42: Akinyemi Br. at 15-18; Dkt. No. 47: Def. Reply Br. at 10-11.) Akinyemi provides no evidence regarding the unnamed conspirators' race, color or national origin, without which Akinyemi cannot raise an inference of discrimination. See, e.g., Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000) ("A plaintiff may raise such an inference [of discrimination] by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group.") (emphasis added).[4/] Accordingly, evidence regarding the unnamed comparators will not be further considered in this motion, and such evidence will be precluded at trial.

**The Four Named Comparators**

**Patrick Murphy**

Patrick Murphy is a white non-probationary CBP employee who "began working for CBP's predecessor agency in 1971"; Akinyemi alleges that Murphy engaged in misconduct very similar to her own. (See Dkt. No. 29: Def. Rule 56.1 Stmt. ¶¶ 9-10; Dkt. No. 43: Akinyemi Rule 56.1 Stmt. ¶¶ 9-10; Dkt. No. 42: Akinyemi Br. at 10-11; Dkt. No. 26: Def. Br. at 8.) Akinyemi was

---

[4/] See also e.g., Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003); Lee v. Poughkeepsie City School Dist., 06 Civ. 4660, 2008 WL 852790 at *7 (S.D.N.Y. Mar. 31, 2008); Griffin v. TNT Int'l Express, 05 Civ. 10475, 2008 WL 697680 at *7 (S.D.N.Y. Mar. 12, 2008); Delgado v. Triborough Bridge & Tunnel Auth., 485 F. Supp. 2d 453, 463 (S.D.N.Y. Apr. 26, 2007).

on duty at Cape Liberty Cruise Terminal when Murphy used his AOA card to gain access to the cruise terminal, which is a restricted area. (Akinyemi Br. at 10.)[5/] After Akinyemi brought Murphy's alleged misconduct to Mitchell's attention during the course of this litigation, Mitchell referred the matter to CBP Area Director Kathleen Haage-Gaynor for investigation.[6/] (Def. Rule 56.1 Stmt. ¶ 10.) The summary judgment record is silent as to whether Murphy was disciplined for his conduct.

### Sharmila Zaman

Sharmila Zaman is an Asian, Bangladeshi CBP employee who left her weapon in a Newark airport restroom in April 2004 while a probationary employee. (See Dkt. No. 29: Def. Rule 56.1 Stmt. ¶ 11; Dkt. No. 43: Akinyemi Rule 56.1 Stmt. ¶ 11; Dkt. No. 26: Def. Br. at 9; Dkt. No. 42: Akinyemi Br. at 11.) Defendant claims the restroom was not open to the public, while Akinyemi claims it was a public restroom. (Compare Def. Rule 56.1 Stmt. ¶ 11; Def. Br. at 9 with Akinyemi Rule 56.1 Stmt. ¶ 11; Akinyemi Br. at 12.) When Mitchell learned of the incident from Akinyemi during the course of this litigation, Zaman was a probationary employee; Mitchell referred the matter to Haage-Gaynor for investigation. (See Def. Rule 56.1 Stmt. ¶ 11; Akinyemi Rule 56.1 Stmt. ¶ 11; Def. Br. at 9; Akinyemi Br. at 12.) By the time Mitchell disciplined Zaman (with a two day

---

[5/]   While Akinyemi claims Murphy was off-duty, defendant asserts that he was on-duty. (Compare Akinyemi Br. at 10 with Def. Br. at 8 n.2.)

[6/]   Akinyemi claims that "[t]here is no credible evidence that Mitchell ever" referred the matter for investigation. (Akinyemi Rule 56.1 Stmt. ¶ 10(a).) Akinyemi's claim is not supported by the record: Mitchell testified that she verbally requested Haage-Gaynor to investigate the allegations. (See Def. Reply Br. at 3 & n.1; Dkt. No. 48: Clopper Supp. Aff. Ex. 5: Mitchell Dep. at 55.)

suspension), Zaman was no longer a a probationary employee. (Def. & Akinyemi Rule 56.1 Stmts. ¶ 12; Def. Br. at 9-10.)

### Elba Riley

Elba Riley is an Hispanic CBP employee whom Akinyemi alleged engaged in misconduct similar to Akinyemi's while Riley was still a probationary employee. (See Dkt. No. 29: Def. Rule 56.1 Stmt. ¶¶ 13-14; Dkt. No. 43: Akinyemi Rule 56.1 Stmt. ¶ 14; Dkt. No. 26: Def. Br. at 10; Dkt. No. 42: Akinyemi Br. at 13.)[7/] Mitchell was not aware of the alleged misconduct until Akinyemi brought the incident to Mitchell's attention during the course of this litigation; Mitchell then referred the matter to Haage-Gaynor for investigation. (See Def. Rule 56.1 Stmt. ¶ 14; Akinyemi Rule 56.1 Stmt. ¶ 14; Def. Br. at 10.) Shortly after Mitchell referred the matter for investigation, Riley became a non-probationary employee. (See Def. Rule 56.1 Stmt. ¶ 14; Def. Br. at 11.) The summary judgment record is silent as to whether Riley was disciplined. (See Def. Br. at 19.)

### Jolanta Gluba

Jolanta Gluba is a white CBP employee who, on January 2, 2005, inadvertently allowed a passenger at Newark International airport to view his own personal information on Gluba's computer screen when Gluba left her computer terminal without properly locking it. (See Dkt. No. 29: Def. Rule 56.1 Stmt. ¶ 16; Dkt. No. 43: Akinyemi Rule 56.1 Stmt. ¶ 16; Dkt. No. 26: Def. Br.

---

[7/]  When asked at her deposition whether she had ever seen a relative off at the gate area at the airport, Riley asserted her rights under the Fifth Amendment. (See Def. Br. at 10 n.3.)

at 11.) Haage-Gaynor disciplined Gluba by placing a disciplinary letter in her file indicating that Gluba would be terminated if any further incidents occurred within the next year. (See Def. Rule 56.1 Stmt. ¶¶ 17, 18; Akinyemi Rule 56.1 Stmt. ¶ 18; Def. Br. at 12.) Gluba completed her "initial two-year probationary period" in March 2004, but was still in the midst of an "additional one-year period of probation" because of her promotion to CBP officer when the incident occurred and when she was disciplined. (Def. Br. at 20 n.7; see also Def. Rule 56.1 Stmt. ¶ 15; Akinyemi Rule 56.1 Stmt. ¶ 15.)

## ANALYSIS

The summary judgment standard is well-known and will not be set out in full herein. See, e.g., Suarato v. Bldg. Servs. 32BJ Pension Fund, 06 Civ. 5031, 2008 WL 819745 at *11-12 (S.D.N.Y. Mar. 27, 2008) (Peck, M.J.) (& cases cited therein). Similarly, the legal principles governing Title VII actions are well-known and will not be set out in full herein. See, e.g., Pozo v. J & J Hotel Co., 06 Civ. 2004, 2007 WL 1376403 at *12-14 (S.D.N.Y. May 10, 2007) (Peck, M.J.) (& cases cited therein); Williams v. City of New York, 04 Civ. 1993, 2005 WL 839103 at *8 (S.D.N.Y. Apr. 12, 2005) (Peck, M.J.) (& cases cited therein). In this disparate impact case, the issue is whether "similarly situated" employees were treated differently (better) than Akinyemi, giving rise to an inference of employment discrimination.

### I.    PROBATIONARY VERSUS PERMANENT EMPLOYMENT STATUS

Defendant claims that two of the four named comparators – Zaman and Riley – are not similarly situated to Akinyemi because they were permanent, non-probationary employees at the

time they were disciplined for their misconduct.  (Dkt. No. 26: Def. Br. at 15-16; see pages 5-6 above.)  As a general rule, probationary employees and non-probationary employees (especially in the civil service context) are subject to different procedures and requirements for termination or other disciplinary purposes, and therefore generally are not considered to be similarly situated.  See, e.g., Jones v. Yonkers Pub. Schs., 326 F. Supp. 2d 536, 545 (S.D.N.Y. 2004) ("[A] probationary civil service employee generally is not situated similarly to a non-probationary employee as a matter of law."); see also e.g., Steinhauer v. DeGolier, 359 F.3d 481, 484-85 (7th Cir. 2004) ("Purifoy and Steinhauer were not similarly situated because Steinhauer was still on probation while Purifoy was not."); Bogren v. Minnesota, 236 F.3d 399, 405 (8th Cir. 2000) ("We agree with the premise underlying the district court's conclusion; troopers beyond the probationary period are not similarly situated to a probationary trooper.  Consequently, assuming nonprobationary troopers were treated more favorably than [plaintiff], we do not find that fact probative of whether the state's explanation is pretextual.") (citations omitted), cert. denied, 534 U.S. 816, 122 S. Ct. 44 (2001).

Under Second Circuit case law, however, while an important factor in Title VII disparate treatment analysis, the difference between probationary and permanent employees does not, by itself, eliminate the possibility that a comparator is similarly situated.  See Feingold v. New York, 366 F.3d 138, 153-54 (2d Cir. 2004) ("[T]he mere fact that [a probationary ALJ] was fired for his adjudications, while [non-probationary ALJs] were not, would not by itself support an inference of discrimination.  However, evidence that [non-probationary] African-American ALJs were not disciplined at all for their alleged erroneous adjudications-and, indeed, that in at least one case such

an adjudication was actually condoned by [the supervisor]-does support the conclusion that a discriminatory motive underlay [plaintiff's] dismissal. . . . Accordingly, we find that whether or not the non-disciplined ALJs were similarly situated is a matter of factual dispute which is best resolved by a finder-of-fact, and not on summary judgment."); see also, e.g., Jones v. Yonkers Pub. Sch., 326 F. Supp. 2d at 545 ("[T]he Second Circuit recently held that a court is not precluded from inferring a discriminatory motive if an employer severely disciplines a probationary employee for an offense for which a non-probationary employee is not disciplined 'at all', . . . .") (citing Feingold).

       Both Zaman and Riley were permanent employees when disciplined, but were probationary employees when their alleged misconduct occurred and when it was reported to supervisory personnel. (See pages 5-6 above.) There is no evidence in the record as to whether CBP could have completed its investigations before Zaman's and Riley's probationary period ended or whether CBP had the ability to extend the probationary period because of the investigation. This Court is unwilling to hold, as a matter of law at the summary judgment stage, that Zaman's and Riley's probationary status at the time of misconduct but permanent status before discipline was imposed precludes finding them to be similarly situated to Akinyemi. Furthermore, the summary judgment record is silent as to whether Riley ever was disciplined (Zaman received only a two day suspension, close to not being disciplined at all). (See page 6 above.) Thus, as in Feingold v. New

10

York, whether Akinyemi was similarly situated to Zaman and Riley is a factual issue best resolved by the jury, not on summary judgment.[8/]

## II.   DIFFERING MISCONDUCT BY COMPARATOR GLUBA

Defendant admits that the fourth named comparator, Jolanta Gluba, was a probationary employee when disciplined for misconduct, but claims that Akinyemi's and Gluba's misconduct are not alike, and that Gluba therefore is not similarly situated to Akinyemi. (Dkt. No. 26: Def. Br. at 20-21; see pages 2, 6 above.) "To be 'similarly situated,' the individuals with whom [plaintiff] attempts to compare herself must be similarly situated in all material respects." Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997). "Whether two employees are similarly situated ordinarily presents a question of fact for the jury." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000); accord e.g., Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2d Cir. 2001); Albury v. J.P. Morgan Chase, 03 Civ. 2007, 2005 WL 746440 at *10 (S.D.N.Y. Mar. 31, 2005). An important factor in evaluating "all material respects" includes "whether the conduct for which the employer imposed discipline was of comparable seriousness. . . . Hence, the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." Graham v. Long Island

---

[8/]   While Murphy was a permanent employee at the time of his alleged misconduct, there is a factual dispute about whether he engaged in misconduct (see pages 4-5 above), and, as with Riley, there is no evidence that Murphy ever was disciplined. Under Feingold v. New York, this (apparent) lack of any discipline to the non-probationary employee supports a possible inference of discrimination that needs to be resolved by the jury, not by the Court on summary judgment.

R.R., 230 F.3d at 40.[9/] Such a comparison requires examination of the "comparable seriousness" of the two acts, as well as "the context and surrounding circumstances in which those acts are evaluated." Graham v. Long Island R.R., 230 F.3d at 40; see also, e.g., Watson v. Arts & Entm't Television Network, 04 Civ.1932, 2008 WL 793596 at *16 (S.D.N.Y. Mar. 26, 2008); Lucibello v. Yale-New Haven Hosp., No. 03 CV 0814, 2005 WL 578324 at *6 (D. Conn. Mar. 10, 2005) ("In cases involving disparate treatment with regard to discipline, the plaintiff must show that the conduct of the other employee was of comparable seriousness.").

Akinyemi and Gluba engaged in very different conduct: Akinyemi committed an intentional act when she bypassed a security screening area while off-duty, while Gluba merely was negligent when she failed to lock her computer screen in front of a passenger. (See pages 2, 6 above.) Their conduct varied sufficiently, in motivation and seriousness, that the Court finds that Akinyemi and Gluba are not similarly situated. See, e.g. Cruz v. Coach Stores, Inc., 202 F.3d 560, 567-68 (2d Cir. 2000) (Affirming summary judgment for employer; terminated employee who engaged in physical assault was not similarly situated to employee who only used racial slurs.); Conway v. Microsoft Corp., 414 F. Supp. 2d 450, 464, 466 (S.D.N.Y. 2006) ("When a plaintiff's misconduct is objectively more serious than that of a proposed comparator, differential treatment by

---

[9/]   See, e.g., Lizardo v. Denny's, Inc., 270 F.3d at 101 ("What is key is that they [i.e.,plaintiff and her comparator] be similar in significant respects."); see also, e.g., McGuinness v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir. 2001) ("A plaintiff is not obligated to show disparate treatment of an identically situated employee.... [I]t is sufficient that the employee to whom plaintiff points be similarly situated in all material respects. . . . In other words, . . . those employees must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination.").

12

the employer does not create an issue of fact that will defeat a motion for summary judgment." The court granted summary judgment for employer, finding "no 'objectively identifiable bases for comparison'" between plaintiff, who had a sexual relationship with a subordinate in violation of company policy, and a co-worker who made inappropriate sexual remarks to the same subordinate.); Albury v. J.P. Morgan Chase, 2005 WL 746440 at *10 (Summary judgment for employer; proposed comparator was not similarly situated where plaintiff was fired for sexual harassment and comparator was fired for "accessing confidential account information," a "qualitatively different" offense.). Accordingly, the Court will preclude the introduction at trial of evidence concerning Gluba.

### III.   DEFENDANT'S DIFFERENT SUPERVISOR ARGUMENT

Finally, defendant claims that the named comparators are not similarly situated to Akinyemi because a different supervisor disciplined Zaman (and Gluba), and because Mitchell, the supervisor who terminated Akinyemi, has not yet involved herself in any decision to discipline Murphy or Riley. (Dkt. No. 26: Def. Br. at 18; see pages 2, 5-7 above.) Director of Field Operations Mitchell directly terminated Akinyemi, while her immediate subordinate, Area Director Haage-Gaynor, disciplined Zaman (and Gluba). (See pages 2, 5, 7 above.) Mitchell also referred investigations concerning Murphy and Riley to Haage-Gaynor. (See pages 5, 6 above.) Whether or not a plaintiff reports to the same supervisor as her comparator is an important factor in finding that plaintiff and the comparator are similarly situated. E.g., Shumway v. United Parcel Serv., Inc., 118 F.3d at 64; see, e.g., Murray v. Visiting Nurse Servs., 528 F. Supp. 2d 257, 275 n.12 (S.D.N.Y. 2007); McDowell v. T-Mobile USA, Inc., No. 04-CV-2909, 2007 WL 2816194 at *9 (E.D.N.Y.

Sept. 26, 2007) ("'In the Second Circuit, whether or not co-employees report to the same supervisor is an important factor in determining whether two employees are subject to the same workplace standards for purposes of finding them similarly situated.'") (quoting Conway v. Microsoft Corp., 414 F. Supp. 2d at 465); Woods v. Enlarged City Sch. Dist., 473 F. Supp. 2d 498, 525 n.38 (S.D.N.Y. 2007); Downes v. Potter, No. 04-CV-3876, 2006 WL 2092479 at *11 n.4 (E.D.N.Y. July 26, 2006) ("Although the existence of different supervisors is not necessarily dispositive under the Second Circuit case law in determining whether two employees are similarly situated, it is obviously a very important factor.").[10]

      Akinyemi and her comparators, however, were not disciplined by their immediate supervisors, but by two high-level CBP administrators way up the chain of command. (See Def. Br. at 5.) Mitchell served in the highest administrative and operational position in the New York area CBP, and Haage-Gaynor served in one of two administrative positions immediately subordinate to Mitchell. (See pages 2-3 above.) At the summary judgment stage, Mitchell's decision to terminate Akinyemi cannot be easily separated for "similarly situated" purposes from Mitchell's decision to delegate to Hagge-Gaynor the investigations and possible discipline of Akinyemi's comparators. The jury will have to decide whether Akinyemi and the relevant comparators are similarly situated.[11]

---

[10] See also, e.g., Hnot v. Willis Group Holdings Ltd., 01 Civ. 6558, 2005 WL 831664 at *7 (S.D.N.Y. Apr. 8, 2005); Spiegler v. Israel Discount Bank, 01 Civ. 6364, 2003 WL 21983018 at *2 (S.D.N.Y. Aug. 19, 2003); Gambrell v. Nat'l R.R. Passenger Corp., 01 Civ. 6433, 2003 WL 282182 at *7 n.12 (S.D.N.Y. Feb. 3, 2003); Ramos v. Marriott Int'l, Inc., 134 F. Supp. 2d 328, 340 (S.D.N.Y. 2001).

[11] The parties focused their disparate impact argument on the first McDonnell Douglas stage, (continued...)

## CONCLUSION & SCHEDULING ORDER

For the reasons set forth above, defendant's summary judgment motion (Dkt. No. 25) is DENIED (although certain evidence is precluded from introduction at trial, as discussed above).

The parties are to submit the Joint Proposed Pretrial Order ("PTO") by May 27, 2008. Plaintiff is to provide defendant with plaintiff's portion of the PTO (including the first draft of proposed jury instructions) by May 7, 2008; defendant is to provide its portion of the PTO (including its objections to plaintiff's portions) by May 19, 2008; the parties shall confer and plaintiff put together and submit the Joint PTO by May 27, 2008.

The Court encourages the parties to settle this case and orders them to engage in settlement discussions.

SO ORDERED.

DATED:   New York, New York
         April 25, 2008

_____
Andrew J. Peck
United States Magistrate Judge

Copies to:   K.C. Okoli, Esq.
             John D. Clopper, Esq.

---

[11]/ (...continued)
Akinyemi's prima facie case. Defendant has offered a non-pretextual reason for Akinyemi's termination at the second stage, i.e., Akinyemi's misconduct. (See Dkt. No. 26: Def. Br. at 1-2, 6-7, 21-22.) The disparate treatment of "comparable" employees also serves as Akinyemi's proof of discrimination at the third McDonnell Douglas stage. It is very weak proof at that third stage, but barely sufficient to withstand summary judgment. Akinyemi would be wise to try to settle this case.

H:\OPIN\AKINYEMI