UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YEMISI AKINYEMI,

          Plaintiff,

          v.

MICHAEL CHERTOFF, Secretary,
Department of Homeland Security,

          Defendant.

07 Civ. 4048 (AJP)

ECF CASE


# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE TO EXCLUDE CERTAIN EVIDENCE


MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
Attorney for Defendant
86 Chambers Street, 5th Floor
New York, New York 10007
Tel.: (212) 637-2716

JOHN D. CLOPPER
SARAH E. LIGHT
Assistant United States Attorneys
—Of Counsel—

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................................1

BACKGROUND ...............................................................................................................................2

ARGUMENT .....................................................................................................................................4

    I.    Pursuant to the Court's April 25, 2008 Order and Opinion, Any Evidence Related to Jolanta Gluba and the 10 Unnamed Comparators Has Been Excluded ..................................................................................................................5

    II.   Pursuant to the Court's April 25, 2008 Order and Opinion, Evidence of "Racial Profiling" and Discrimination Against Plaintiff's Husband Has Been Excluded ..................................................................................................................5

    III.  The Court Should Exclude Evidence Alleging Bias By Subordinate Employees Who Played No Meaningful Role in the Decision to Terminate Plaintiff's Employment ..............................................................................................6

    IV.  The Court Should Exclude Evidence of Alleged Discrimination Complaints Brought By CBP Employees Other Than Plaintiff ...........................9

    V.   The Court Should Exclude Evidence Regarding Backpay, Frontpay, and Reinstatement ...........................................................................................................12

    VI.  The Court Should Exclude Lay Testimony Regarding Plaintiff's Mental Condition .................................................................................................................13

CONCLUSION ................................................................................................................................14

**PRELIMINARY STATEMENT**

Defendant Michael E. Chertoff, Secretary, Department of Homeland Security (the "Government"), respectfully submits this pretrial memorandum of law in support of his motion *in limine* to exclude certain evidence that he expects plaintiff will offer at the trial of this action.

Plaintiff Yemisi Akinyemi claims that U.S. Customs and Border Protection ("CBP") discriminated against her on the basis of her race and national origin when it terminated her probationary employment. CBP contends that discrimination played no role in its termination decision.

CBP anticipates that plaintiff may seek to offer a wide variety of inadmissible evidence at trial, including, but not limited to evidence purportedly demonstrating (1) misconduct by other CBP employees that the Court previously ruled inadmissible; (2) "racial profiling" and discrimination against plaintiff's husband that the Court previously ruled inadmissible; (3) bias against plaintiff by subordinate employees who played no meaningful role in CBP's decision to terminate plaintiff; (4) claims of discrimination brought by CBP employees other than plaintiff; (5) plaintiff's entitlement to backpay, frontpay and reinstatement, which are equitable matters that the Court, not the jury, is to decide; and (6) plaintiff's mental state by non-expert witnesses. CBP moves *in limine* to preclude plaintiff from offering this evidence. As set forth below, the Court should preclude plaintiff from seeking to introduce this evidence at trial.

## BACKGROUND

A.   **Allegations of Plaintiff's Complaint**

Plaintiff's complaint in this case asserts a claim of discrimination on the basis of race, color, and national origin under Title VII. Plaintiff's probationary employment was terminated in December 2005 after she admitted that, while accompanying her husband to an international departure gate of Newark Liberty International Airport, she by-passed Transportation Security Administration ("TSA") screeners and entered a restricted area while off-duty. Plaintiff claims that, notwithstanding her admitted misconduct, her termination was based on her race (African-American) and national origin (Nigerian).

B.   **The Court's Summary Judgment Decision**

On April 25, 2008, the Court issued its decision denying the Government's motion for summary judgment. As part of that decision, the Court ruled that certain evidence offered by plaintiff was inadmissible at trial.

First, the Court ruled that certain evidence of misconduct by other CBP employees – plaintiff's so-called "comparators" – was inadmissible. Specifically, the Court ruled that evidence of misconduct by CBP Officer Jolanta Gluba and ten other unnamed comparators was inadmissible because none of these individuals was similarly situated with plaintiff for purposes of Title VII analysis. *See* Opinion and Order, dated April 25, 2008, at 11-12 ("[T]he Court finds that Akinyemi and Gluba are not similarly situated . . . . Accordingly, the Court will preclude the introduction at trial of evidence concerning Gluba."); *id.* at 4 ("[E]vidence regarding the unnamed comparators . . . will be precluded at trial."). On May 8, 2008, the Court denied plaintiff's motion for reconsideration of its order precluding this evidence. *See* Order, dated May 8, 2008, at 1-2.

Second, the Court ruled that plaintiff's evidence of alleged "racial profiling" of passengers and purported discrimination against plaintiff's husband, was inadmissible. In opposition to the Government's motion for summary judgment, plaintiff attempted to show that CBP officers routinely "profiled" Nigerian passengers, and that plaintiff's husband was singled out for discriminatory treatment when he was questioned by CBP officers at Newark airport on December 5, 2005. Specifically, plaintiff relied on the statement of CBP Officer Brendan McPhail, contained in an unsworn declaration executed as part of CBP's Equal Employment Opportunity Commission ("EEOC") investigation, that CBP officers "profile" Nigerians. *See* Plaintiff's Memorandum of Law in Opposition to the Government's Motion for Summary Judgment ("Pl. Opp."), dated February 28, 2008, at 24.[1] In addition, plaintiff relied on the deposition testimony of her husband, who testified that he believed CBP officers singled him out because of his race and national origin. *See* Pl. Opp. at 24-25.

The Court held that the evidence relied upon by plaintiff was inadmissible:

> Akinyemi also asserts that CBP employees profile Nigerian-born persons, and that Akinyemi's husband's brief examination by a CBP officer on December 2, 2005 constituted profiling that precipitated his wife's termination through "guilt by association." Akinyemi submits no admissible evidence, however, that CBP employees illegitimately profile Nigerian passengers, much less any evidence that CBP profiled its own employees, or that Mitchell terminated Akinyemi because of discrimination toward Akinyemi's husband or Nigerian-born persons generally.

Opinion and Order, dated April 25, 2008, at 3 n. 3 (internal citations omitted).

---

[1] Officer McPhail clarified that statement in his declaration, and also during his deposition in this case. He stated that by "profiling," he meant that CBP uses legitimate law enforcement techniques in conducting its operations, but does not engage in or condone discriminatory treatment of Nigerians. *See* Government's Reply Memorandum in Further Support of Its Motion for Summary Judgment, dated March 14, 2008, at 12-13. He also stated any "profiling" of Nigerians (as he used the term) did not result in bias against fellow CBP officers of Nigerian origin. *See id.*

3

**ARGUMENT**

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996); *Highland Capital Management, L.P. v. Schneider*, 379 F. Supp. 2d 461, 467 (S.D.N.Y. 2005); *see generally* Fed. R. Evid. 104. *In limine* motions therefore serve the salutary goal of "streamlin[ing] trials and settl[ing] evidentiary disputes in advance." *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002).

The Court may rely on the Federal Rules of Evidence and its own broad discretion in determining whether or not to exclude certain evidence at trial. *United States v. Corr*, 543 F.2d 1042, 1051 (2d Cir. 1976); *Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202, 207 (2d Cir. 1984). Ordinarily, evidence is admissible so long as it is relevant, *see* Fed. R. Evid. 401-402, and not otherwise barred under the Federal Rules of Evidence. The proponent of the evidence, however, bears the burden of proving that is admissible. *See Evans v. Port Authority of New York and New Jersey*, 192 F. Supp. 2d 247, 263 n. 121 (S.D.N.Y. 2002) ("The burden of establishing admissibility, of course, is with the proponent of the evidence.").

**I.      Pursuant to the Court's April 25, 2008 Order and Opinion, Any Evidence Related to Jolanta Gluba and the 10 Unnamed Comparators Has Been Excluded**

In its April 25, 2008 Order and Opinion, and again in its May 8, 2008 Order denying plaintiff's motion for reconsideration, the Court excluded evidence relating to CBP Officer Jolanta Gluba and ten unnamed alleged comparators. *See* Opinion and Order, dated April 25, 2008, at 11-12 ("[T]he Court finds that Akinyemi and Gluba are not similarly situated . . . .

4

Accordingly, the Court will preclude the introduction at trial of evidence concerning Gluba."); *id.* at 4 ("[E]vidence regarding the unnamed comparators . . . will be precluded at trial.").

In apparent disregard of these rulings, plaintiff has listed Jolanta Gluba as a witness that she intends to call at trial, has described evidence regarding Jolanta Gluba and the ten unnamed comparators as within the subjects on which other witnesses will testify, and has listed as trial exhibits documents related to Jolanta Gluba and the ten unnamed comparators.  *See* Proposed Joint Pretrial Order, Schedules E-1 and G-1.

The Court should reaffirm its earlier ruling that evidence relating to Jolanta Gluba and the ten unnamed comparators is inadmissible, thereby limiting plaintiff's evidence regarding comparator employees to the three identified comparators – Patrick Murphy, Sharmila Zaman, and Elba Riley.

II.     **The Court Should Exclude Evidence of "Racial Profiling" and Discrimination Against Plaintiff's Husband**

The Court previously held that evidence of "racial profiling" and discrimination against plaintiff's husband was inadmissible.  *See* Opinion and Order, dated April 25, 2008, at 3 n. 3 ("Akinyemi submits no admissible evidence, however, that CBP employees illegitimately profile Nigerian passengers, much less any evidence that CBP profiled its own employees, or that Mitchell terminated Akinyemi because of discrimination toward Akinyemi's husband or Nigerian-born persons generally.").  In spite of this ruling, plaintiff has listed witnesses and documentary evidence regarding these matters that plaintiff intends to introduce at trial.  *See* Proposed Joint Pretrial Order, Schedule E-1 (testimony of Akintunde Akinyemi, Brendan McPhail, Gregory Jurczak) and G-1 (statement of Brendan McPhail contained in EEO investigative file).  It appears that the evidence that plaintiff intends to introduce is the same

5

evidence that the Court ruled inadmissible – specifically, a statement from Brendan McPhail that CBP "profiles" Nigerians, and testimony regarding the treatment of plaintiff's husband by CBP officers on December 5, 2005 at the Newark airport. *See id.* Because this evidence has already been excluded, the Government requests that the Court reaffirm its earlier ruling that this evidence is inadmissible.[2]

### III. The Court Should Exclude Evidence Alleging Bias By Subordinate Employees Who Played No Meaningful Role in CBP's Decision to Terminate Plaintiff

Plaintiff apparently will seek to introduce evidence that subordinate CBP employees (that is, employees subordinate to the deciding official in plaintiff's termination, Susan Mitchell) were biased against plaintiff on account of her race and national origin. In particular, it appears that plaintiff intends to argue that subordinate employees who reported her misconduct were biased, and that the manner in which the investigation into her misconduct was conducted reflects unlawful discrimination. *See, e.g.,* Proposed Joint Pretrial Order, Schedule C-1 ("Plaintiff contends that not only was her termination discriminatory, the very *initiation* of the investigation into her said conduct and the *manner* in which that investigation was conducted, were discriminatory as well." (emphasis in original)), Schedule E-1 (testimony of Akintunde Akinyemi, Gregory Jurczak, and Herbert Herter). The Court should exclude all evidence of bias by employees other than the official who terminated plaintiff's employment, Susan Mitchell.

There is no evidence – aside from plaintiff's conjecture – that any of the CBP employees involved in the events surrounding plaintiff's termination was biased against her on account of

---

[2] The evidence that plaintiff intends to introduce through Brendan McPhail appears limited to evidence of "racial profiling." *See* Proposed Joint Pretrial Order, Schedule E-1, at 1. Because this Court has already excluded evidence of racial profiling, the testimony of Brendan McPhail can be excluded in its entirety.

6

race or national origin.  But even if there were evidence of bias by subordinate employees, it would not be admissible in this case because such bias was not the cause of plaintiff's termination.  *See Williams v. R.H. Donnelley Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) (requiring causal link between impermissible bias and adverse employment action); *Galabya v. New York City Bd. of Education*, 202 F.3d 636, 640 (2d Cir. 2000) (same).  In cases alleging discriminatory discharge, bias by subordinate employees is relevant and admissible only if the subordinate played a "meaningful role" in the decision to terminate.  *See Bickerstaff v. Vassar College*, 196 F.3d 435, 450 (2d Cir. 1999) (holding that bias by subordinate employee is not attributable to employer unless employee played a "meaningful role" in the adverse employment decision).  As one court has explained:

> The discriminatory animus of intermediate supervisors who have input in the decision-making process will not give rise to liability if the supervisor with final authority bases an adverse employment action exclusively on an independent evaluation.  But the employer will be liable where the decision-maker 'rubber stamps' the recommendation of the subordinates; in such cases, . . . the decision-maker acts as a conduit of the subordinates' improper motive.

*Fullard v. City of New York*, 274 F. Supp. 2d 347, 357 (S.D.N.Y. 2003) (internal quotation marks omitted); *Knight v. New York City Housing Authority*, No. 03 Civ. 2746 (DAB), 2007 WL 313435, at *9 (S.D.N.Y. 2007) (quoting *Fullard*).

Here, none of the subordinate employees whom plaintiff intends to accuse of discrimination played a "meaningful role," *Bickerstaff*, 196 F.3d at 450, in her termination, much less acted as a "conduit" for discrimination, *Fullard*, 274 F. Supp. 2d at 357.  For example, the subordinate employees who are listed as witnesses by plaintiff – Gregory Jurczak and Herbert Herter – merely reported their understanding of Akinyemi's conduct at the Newark airport on December 5, 2005 and undertook some minimal inquiry to determine whether Akinyemi was on-duty at Newark airport on that day.  Other individuals not identified on plaintiff's witness list,

7

such as Supervisory Customs and Border Protection Officer ("SCBPO") Lorraine Spina, SCBPO Edward Fox, and SCBPO Domenic Calise, interviewed plaintiff subsequent to December 5, 2005, at which time plaintiff admitted that she entered a restricted area while off-duty.  Plaintiff has not adduced any evidence that any of these employees made any recommendation to Susan Mitchell regarding termination.  Moreover, the facts reported to Susan Mitchell were independently corroborated by plaintiff's own admission that she by-passed TSA security to enter a restricted departure gate area of Newark airport while off-duty.  None of the relevant facts reported to Susan Mitchell were false.

In these circumstances, where the reports of misconduct were factually accurate and were independently corroborated, the Court should conclude as a matter of law that none of the subordinate employees played a "meaningful role" in the decision to terminate plaintiff.  *See EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 485 (10th Cir. 2006) (holding that employer cannot be held liable for bias of subordinate employee if misconduct was established independent of biased report of subordinate); *see also Back v. Hastings on Hudson Union Free School District*, 365 F.3d 107, 126 (2d Cir. 2004) (finding that defendant could be held liable based on biased report of subordinate based, in part, on ultimate decisionmaker's failure to independently corroborate subordinate's report); *Maarouf v. Walker Mfg. Co.*, 210 F.3d 750, 754 (7th Cir. 2000) (stating that a subordinate's bias may not be imputed to employer unless the subordinate, "by concealing relevant information from the decisionmaking employee or by feeding false information to him, is able to influence the decision").  Evidence of bias by all CBP

8

employees other than Susan Mitchell, therefore, is irrelevant to the facts at issue and should be excluded.[3]

## IV. The Court Should Exclude Evidence of Alleged Discrimination Complaints Brought By CBP Employees Other Than Plaintiff

Plaintiff lists two individuals – Timothy Sonuga and Nathaniel Lewis – on her witness list whom she proposes to have testify regarding discriminatory treatment they allegedly were subjected to by CBP. Both Sonuga and Lewis (represented by plaintiff Akinyemi's counsel) filed Title VII complaints against Customs and Border Protection. *See Sonuga v. Chertoff*, 06 Civ. 1751 (AKH) (dismissed on summary judgment on August 9, 2007); *Lewis v. Chertoff*, 08

---

[3] To the extent that plaintiff intends to argue that the investigation into her misconduct is itself an adverse employment action, that argument is foreclosed in this circuit. The Second Circuit has held that a disciplinary investigation is not an adverse employment action because "the terms and conditions of employment ordinarily include the possibility that an employee will be subject to an employer's disciplinary policies in appropriate circumstances." *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006) (holding that placing an employee on administrative leave during pendency of investigation into misconduct is not an adverse employment action cognizable under Title VII); *see also Von Gunten v. Maryland*, 243 F.3d 858, 869 (4th Cir. 2001) (The "terms, conditions, or benefits of a person's employment do not typically, if ever, include general immunity from the application of basic employment policies or exemption from [an employer's] disciplinary procedures"); *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 889-892 (8th Cir. 2005) (89-day suspension pending investigation not an adverse employment action); *Peltier v. United States*, 388 F.3d 984-88 (6th Cir. 2004) (administrative leave pending internal investigation not adverse employment action); *Breaux v. City of Garland*, 205 F.3d 150-58 (5th Cir. 2000) (administrative leave pending internal affairs investigation not adverse employment action). "To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya v. New York City Board of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citation and internal quotation marks omitted). In this case, while plaintiff was placed on administrative leave during the investigation into her misconduct, she apparently intends to argue that the investigation into her misconduct, by itself, was an adverse employment action. *See* Proposed Joint Pretrial Order, Schedule C-1, at 1. There is no authority, however, for plaintiff's theory that merely conducting an investigation – particularly an investigation that was driven, in large part, by plaintiff's admission of misconduct – amounts to an adverse employment action.

9

Civ. 1322 (JGK) (pending, complaint filed February 8, 2008). As explained below, plaintiff's attempt to put these allegations before the jury is improper, and the Court should preclude testimony from these witnesses, as well as any other evidence of alleged discrimination complaints brought by CBP employees other than plaintiff. *See Sprint/United Management Co. v. Mendelsohn*, __ U.S. __, 128 S. Ct. 1140, 1147 (2008) (holding that decision to exclude testimony of discrimination against persons other than plaintiff under Federal Rules of Evidence 402 and 403 is discretionary and remanding to district court for application of discretion); *Haskell v. Kaman Corp.*, 743 F.2d 113, 121 (2d Cir. 1984) (holding that probative value of other witnesses' testimony about claims of discrimination is outweighed by danger of unfair prejudice and should be excluded).

Timothy Sonuga's lawsuit was dismissed by Judge Hellerstein on summary judgment on the ground that plaintiff failed to show genuine issue of material fact regarding whether CBP's asserted justification for the claimed adverse employment action was pretextual. *See Sonuga v. Chertoff,* 06 Civ. 1751 (AKH), Transcript of Argument and Decision, dated August 9, 2007, at 20 (attached as Exhibit 1 to Declaration of John D. Clopper, dated June 1, 2008). In his lawsuit, Sonuga alleged that CBP retaliated against him for prior EEO activity. In the prior EEO case, Sonuga alleged that he was discriminated against when CBP failed to promote him to supervisory position as a customs entry specialist in 2003. He filed an EEO complaint, which was denied. *See id.* at 4. Subsequently, after Sonuga was passed over for another promotion in 2005, he filed a complaint alleging retaliation by Susan Mitchell for his earlier EEO activity. *See id.* at 8.

Lewis alleges that a CBP supervisor, Richard Swierupski, discriminated against him in regard to a promotion opportunity, and that CBP retaliated against him for filing an EEO

complaint. *See Lewis v. Chertoff*, *Lewis v. Chertoff*, 08 Civ. 1322 (JGK), complaint, dated February 8, 2008, at ¶¶ 31-39. In his complaint, he alleges that Swierupski's failure to recommend him for a position as a National Import Specialist was the result of discrimination. *See id.* He also alleges that he was retaliated against when, after filing a EEO complaint based on his allegation that he was discriminatorily deprived of a recommendation, CBP refused to promote him to the position of National Import Specialist. *See id.*

This evidence of discrimination against persons other than plaintiff has no probative value standing on its own, and could properly be contested by the Government only by holding a series of "mini-trials" addressing each such claim. *See Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 357 (5th Cir. 1995). Such proceedings would take the Court far afield from plaintiff's claims.[4] Neither Sonuga nor Lewis were involved in the events surrounding Akinyemi's termination. Nor did any of the salient issues in Akinyemi's case – such as the discipline of probationary employees or the entry of off-duty officers into restricted areas – arise in Sonuga's or Lewis's cases. And, of course, the legal theories pursued by Sonuga, Lewis, and Akinyemi are divergent; both Sonuga's and Lewis's case involved failure to promote and retaliation, while Akinyemi alleges discriminatory discharge. Moreover, Sonuga's claim was *dismissed* on summary judgment because there was no evidence to support a finding of pretext. Finally, Lewis's case does not even involve the same actors – none of the individuals involved in Akinyemi's case is even mentioned in Lewis's complaint. Thus, the evidence has no probative value.

---

[4] The Government's current witness list does not include witnesses who will be necessary to call in the event that the Court permits testimony by Timothy Sonuga or Nathaniel Lewis. If the testimony of Sonuga or Lewis is permitted, the Government will seek leave to amend its witness list to include additional witnesses.

But even assuming that Sonuga's and Lewis's claims have some marginal probative value, the evidence has the substantial potential to confuse and mislead the jury. It is also obviously calculated to arouse unfairly prejudicial sympathy designed to cause the jury to punish defendant for alleged acts that are not the subject of the trial. Indeed, the Second Circuit has expressly held: "[T]he probative value of the [other employees'] testimony [would be] so substantially outweighed by the danger of unfair prejudice that it *definitely should [be] excluded* by the district court . . . [because] even the strongest jury instruction could not [] dull [] the impact of a parade of witnesses, each recounting his contention that the defendant [discriminated against him]." *Haskell v. Kaman Corp.*, 743 F.2d at 121 (emphasis added and internal quotation marks omitted).

Also, the two additional mini-trials that would necessarily follow from allowing Sonuga and Lewis's testimony would amount to needless waste of judicial resources and undue delay. The analysis employed in *Moorhouse v. Boeing Co.*, 501 F. Supp. 390, 393 (E.D. Pa.), *aff'd,* 639 F.2d 774 (3d Cir. 1980), and specifically adopted by the Second Circuit in *Haskell*, 743 F.2d at 122, is instructive:

> Had the Court permitted each of the proposed witnesses to testify about the circumstances surrounding his own [adverse employment action], . . . [d]efendants then would have been placed in the position of either presenting the justification for each witnesses' [adverse employment action], or of allowing the testimony to stand unrebutted. This latter alternative, of course, would have had an obvious prejudicial impact upon the jury's consideration of [plaintiff's] case. To have pursued the former option, defendants would have been forced, in effect, to try all six cases together with the attendant confusion and prejudice inherent in that situation.
>
> ***
>
> In the Court's view, each of the factors set forth in [Federal Rule of Evidence 403], danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, and needless presentation of cumulative evidence,

12

>would have resulted had [each of the witnesses alleging discrimination] testified about his [adverse employment action].

*Moorhouse v. Boeing Co.*, 501 F. Supp. at 393; *Haskell*, 743 F.2d at 122.

The Court should reach the same result here. Plaintiff should be precluded under Federal Rule of Evidence 403 from introducing any documents or testimony by any witness (including plaintiff, Timothy Sonuga and Nathaniel Lewis) regarding discrimination alleged by other CBP employees.

### V.  The Court Should Exclude Evidence Regarding Backpay, Frontpay, and Reinstatement

The Court should preclude any testimony or evidence offered during the trial regarding plaintiff's claims, if any, for backpay, frontpay, or reinstatement. These are equitable matters that the Court, not the jury, decides and should be reserved unless and until there is a liability determination. Plaintiff's right to a jury trial under Title VII is limited to the appropriateness of "compensatory damages," 42 U.S.C. § 1981a(c), which, by statute, "shall not include backpay," 42 U.S.C. § 1981a(b)(2). Accordingly, courts in this Circuit have routinely held that backpay, like frontpay, is to be determined by the court, not by the jury. *See, e.g., Gilbert v. Hotline Delivery*, 00 Civ. 0160 (MBM), 2001 WL 799576, at *2 (S.D.N.Y. July 10, 2001) ("The choice of whether to award backpay is left to the equitable discretion of the district court. Once a plaintiff has been deemed eligible for the remedy, the method of assessing backpay is also a matter for the court's discretion." (citation omitted)); *Zerilli v. New York City Transit Auth.*, 973 F. Supp. 311, 314 n.1 (E.D.N.Y. 1997) (backpay award under Title VII is for court to decide, where backpay awards are expressly excluded from ambit of "compensatory damages" pursuant to 42 U.S.C. §§ 1981a(a)(1), (b)(2) and (c)(1)), *aff'd in part, rev'd in part on other grounds*, 162 F.3d 1149 (2d Cir. 1998); *see also Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 851

(2001) (frontpay is equitable in nature); *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 952 (7th Cir. 1998) (same); *Fernandez v. North Shore Orthopedic Surgery & Sports Medicine*, P.C., 79 F. Supp. 2d 197, 202-04 (E.D.N.Y. 2000) (frontpay award in Title VII case is equitable remedy to be determined by court, rather than legal remedy to be determined by jury). The Court should therefore preclude plaintiff from introducing any evidence before the jury regarding backpay, front pay, or reinstatment in this case.

## VI.     The Court Should Exclude Lay Testimony Regarding Plaintiff's Mental Condition

The Court should also exclude lay testimony by plaintiff's pastor, Bishop Joseph Adedeji, or any other lay witness, regarding plaintiff's mental condition. *See* Proposed Joint Pretrial Order, Schedule E-1 (listing, as topics for testimony by Joseph Adedeji, "his relationship with plaintiff as her spiritual guide," and "his observation of plaintiff in the aftermath of the loss of her CBP job"). Plaintiff has not identified any expert witness to testify at trial regarding her mental condition. Any testimony regarding plaintiff's mental condition (other than factual observations by witnesses with personal knowledge) should be precluded as unsupported by any expert medical testimony. Subsection (c) of Federal Rule of Evidence 701 explicitly bars the admission of lay opinions that are "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). *Williams v. Muhammad's Holy Temple of Islam, Inc.*, No. 00 Civ. 1251 (RML), 2006 WL 297448, at *2 (E.D.N.Y. Feb. 8, 2006) (prohibiting lay opinion of mental state, stating that "[t]he witness may describe what she observed, but may not provide an opinion regarding plaintiff's mental state"); *Frank v. Plaza Construction Corp.*, 186 F. Supp. 2d 420, 423 (S.D.N.Y. 2002) (plaintiff claiming discrimination under the Americans with Disabilities Act was not qualified to testify about her alleged diagnosis of dyslexia); *Maietta v. United Parcel Service, Inc.*, 749 F. Supp. 1344, 1369 (D. N.J. 1990),

14

*aff'd*, 932 F.2d 960 (3d Cir. 1991) (finding that plaintiff was not competent to testify about cause of his elevated blood pressure in support of his intentional infliction of emotional distress claim); *cf. O'Connor v. Pierson*, 426 F.3d 187, 202 (2d Cir. 2005) ("Lay people are not qualified to determine . . . medical fitness, whether physical or mental; that is what independent medical experts are for."). Testimony about plaintiff's mental condition, as well as the cause and severity of the condition, is clearly the type of testimony barred by Rule 701(c). Accordingly, plaintiff should be precluded from offering any such testimony.

## CONCLUSION

For the foregoing reasons, the Court should grant defendant's motion *in limine* in its entirety.

Dated:  New York, New York
        June 2, 2008

                                    Respectfully submitted,

                                    MICHAEL J. GARCIA
                                    United States Attorney

                            By:     /s/ John D. Clopper
                                    JOHN D. CLOPPER
                                    SARAH E. LIGHT
                                    Assistant United States Attorneys
                                    86 Chambers Street
                                    New York, New York 10007
                                    Telephone: (212) 637-2716/2774
                                    Facsimile: (212) 637-0033
                                    john.clopper@usdoj.gov
                                    sarah.light@usdoj.gov